# EXHIBIT B

# File&Servexpress

Loveless, Linda L | Richards Layton & Finger PA-Wilmington

| HOME | FILING & SERVICE | ALERTS | SEARCH |
|------|------------------|--------|--------|

Case History    Cases Search    Daily Docket    Transaction Status    Advanced Search

Home > **Results**

### Case History Search

Search Created:
11/8/2024 14:13:19 GMT-0500 (Eastern
Standard Time)

Printable Version

---

| | | | |
|--|--|--|--|
| **Court:** | DE Court of Chancery **Judge:** Civil Action | Cook, Nathan A | **File & ServeXpress Live Date:** 10/31/2024 |
| **Division:** | N/A | **Case Number:** 2024-1127-NAC | **Document(s) Filed:** 11 |
| **Case Type:** | Injunctive Relief | **Case Name:** Realtek Semiconductor Corporation v. Avago Technologies International Sales Pte. Ltd., et al. | **Date Range:** All |

Choose an action: `-- Select --` [Go]   Show `1000` records

---

⬇ Export          1-2 of 2 transactions   <<Prev   Page 1 of 1   Next>>

| ☐ | Transaction | ▲Date/Time | Option | Case Number Case Name | Authorizer Organization | # | ☐ | Document Type | Document Title | Review Status | Size |
|---|-------------|-----------|--------|----------------------|-----------------------|---|---|---------------|----------------|---------------|------|
| ☐ | 74924134 | 10/31/2024 11:26 PM EDT | File Only | 2024-1127-NAC Realtek Semiconductor Corporation v. Avago Technologies International Sales Pte. Ltd., et al. | Megan Hunt, K & L Gates LLP-Wilmington | 1 | ☐ | Complaint with 3 or More Defendants | [CONFIDENTIAL FILING] Verified Complaint [view] • Linked from (1) | Accepted | 0.1MB |
| | | | | | | | ☐ | Verification to Complaint | Declaration of Hsieh-Hsing Kuo Pursuant to 10 Del. C. § 5356 to Verified Complaint [view] | Accepted | 0.1MB |
| | | | | | | | ☐ | Exhibits | [CONFIDENTIAL FILING] Exhibit 1 to Verified Complaint [view] | Accepted | 2.3MB |
| | | | | | | | ☐ | Exhibits | Exhibits 2-10 to Verified Complaint [view] | Accepted | 6.4MB |
| | | | | | | | ☐ | Exhibits | Exhibits 11-21 to Verified Complaint [view] | Accepted | 2.8MB |
| | | | | | | | ☐ | Motion to Expedite | [CONFIDENTIAL FILING] | Accepted | 0.3MB |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Plaintiff's Motion for Expedited Proceedings [view]<br>• Linked from (1) | |
| | | | | | | ☐ | Proposed Order | [Proposed] Order Granting Plaintiff's Motion for Expedited Proceedings [view] | Accepted | 0.1MB |
| | | | | | | ☐ | Summons Instructions | Letter to Register in Chancery from Steven L. Caponi providing summons instructions [view] | Accepted | 0.1MB |
| | | | | | | ☐ | Supplemental Information Sheet | Supplemental Information Statement with Statement of Good Cause [view] | Accepted | 0.1MB |
| ☐ | 74967542 | 11/7/2024 4:30 PM EST | File Only | 2024-1127-NAC Realtek Semiconductor Corporation v. Avago Technologies International Sales Pte. Ltd., et al. | Megan Hunt, K & L Gates LLP-Wilmington | 2 | Public Version | [Public Version] Verified Complaint [view]<br>• Linked to (1) | Accepted | 1.2MB |
| | | | | | | 3 | Public Version | [Public Version] Plaintiff's Motion for Expedited Proceedings [view]<br>• Linked to (1) | Accepted | 0.4MB |

1-2 of 2 transactions    <<Prev   Page 1 of 1   Next>>

---

**About File & ServeXpress** | **Resource Center** | **FAQs** | **Terms & Conditions** | **Privacy**

© 2024 File & ServeXpress, LLC. All rights reserved

**Client Support**

☎ 1-888-529-7587

✉ support@fileandserve.com

💬 Chat Online

EFiled: Oct 31 2024 11:26PM EDT
Transaction ID 74924134
Case No. 2024-1127-

# Exhibit 2

## LETTER OF ASSURANCE FOR ESSENTIAL PATENTS

| | |
|---|---|
| Please return via mail, e-mail (.pdf), or FAX to: | Secretary, IEEE-SA Standards Board Patent Committee<br>Institute of Electrical and Electronics Engineers, Inc.<br>445 Hoes Lane<br>Piscataway, NJ   08854   USA<br>FAX (+1 732-875-0524)   e-mail: patcom@ieee.org |

> ### *No license is implied by submission of this Letter of Assurance*

### A. PATENT HOLDER/ORGANIZATION:

Legal Name of Organization:  Broadcom Corporation_____

### B. PATENT HOLDER'S CONTACT FOR LICENSE APPLICATION:

Name & Department:     H. Shannon Tyson, Legal Department_____
Address:                      8303 Mopac Expressway North, Suite A410, Austin, TX 78759_____
Telephone: 512.651.9542_____  Fax:  512.651.9537_____  E-mail:  styson@broadcom.com_____
URL: _____

*Note: The IEEE takes no position with respect to the reasonableness of rates, terms, and conditions of the license agreements offered by patent holders or patent applicants. To that end, the IEEE will not review and does not endorse the contents nor confirm the continuing accuracy or consistency of any web sites listed above.*

### C. IEEE STANDARD or PROPOSED IEEE STANDARD:

Number:  IEEE 802.3ap_____
Title: Backplane Ethernet_____

### D. PATENT HOLDER'S POSITION REGARDING LICENSING ESSENTIAL PATENT RIGHTS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Patent Holder hereby declares that its licensing position with respect to any patent(s) and/or patent application(s) that it may hold or control, the use of which would be essential to create a compliant implementation of either mandatory or optional portions of the [Proposed] IEEE Standard identified above, is as follows *(check one box only)*:

☐   1. The Patent Holder will grant a license without compensation to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions to comply with the [Proposed] IEEE Standard.

☒   2. The Patent Holder will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions to comply with the [Proposed] IEEE Standard.

☐   3. The Patent Holder is unwilling to grant licenses according to the provisions of either 1 or 2 above.

☐   4. The Patent Holder states that, without conditions, it will not enforce any of its present or future patent(s) against any person or entity creating a compliant implementation of the [Proposed] IEEE Standard.

☐   5. I am not aware of any patent(s) and/or patent application(s) that my company may hold or control that would be essential to create a compliant implementation of the [Proposed] IEEE Standard.

*[Note: Completion of the following section is optional. Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search.]*

If the Patent Holder owns or controls patent(s) and/or application(s) that it believes may be essential to create a compliant implementation of the [Proposed] IEEE Standard, please specify the following:

Patent/Application Number: _____
Title: _____

Copyright © 2006 IEEE
Approved by IEEE-SA Standards Board Patent Committee – 27 March 2006

Patent/Application Number: _____
Title: _____

Patent/Application Number: _____
Title: _____

*Use additional pages, as necessary.*

**E. SIGNATURE:**

Print name of authorized person: H. Shannon Tyson, Jr._____

Title of authorized person: Director of Intellectual Property, Standards_____

Signature of authorized person: _____ Date: April 30, 2007_____

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA Standards Board Patent Committee.*

<div style="border:1px solid">
*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. These documents must be read and understood before completing and submitting this form.*
</div>

Copyright © 2006 IEEE
Approved by IEEE-SA Standards Board Patent Committee – 27 March 2006

# Exhibit 3

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ   08854   USA
FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

---

*No license is implied by submission of this Letter of Assurance*

---

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                           ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:  H. Shannon Tyson, Jr.
Department:  Legal Department
Address:     8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.
             Austin, Texas 78759, U.S.A.
Telephone: +1 512-651-9542        Fax:  +1 512-651-9537   E-mail: standardslicensing@broadcom.com
URL:

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:   IEEE P802.3at
Title: DTE Power via the MDI Enhancements

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒ 1.   The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

    ☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

    ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

**E. SCOPE OF ASSURANCE:**

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

Copyright © 2008 IEEE    17 January 2008

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| | |
| Address | Address |
| | |
| Contact person | Contact person |

*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person:  H. Shannon Tyson, Jr.

Title of authorized person:  Managing Director, Standards & Intellectual Property

Signature of authorized person:  *H. Shannon Tyson, Jr.*   Date: August 8, 2008

Address: 8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.

Phone: +1 512-651-9542          E-mail:  styson@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA.*

---

*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

---

Copyright © 2008 IEEE                17 January 2008

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

"*Affiliate*" shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

"*Blanket Letter of Assurance*" shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

"*Essential Patent Claim*" shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

"*Letter of Assurance*" and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

"*Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

"*Reasonable and Good Faith Inquiry*" includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

Copyright © 2008 IEEE          17 January 2008

# Exhibit 4

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ   08854   USA
FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

---

*No license is implied by submission of this Letter of Assurance*

---

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                          ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:   H. Shannon Tyson, Jr.
Department:  Legal Department
Address:      8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.
                  Austin, Texas 78759, U.S.A.
Telephone: +1 512-651-9542          Fax:   +1 512-651-9537   E-mail: standardslicensing@broadcom.com
URL:

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:    IEEE P802.3az
Title:  Media Access Control Parameters, Physical Layers and Management Parameters for Energy-
        Efficient Ethernet

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒ 1.  The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

    ☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

    ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

Copyright © 2008 IEEE    17 January 2008

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| Address | Address |
| Contact person | Contact person |

*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person:  H. Shannon Tyson, Jr.

Title of authorized person:  Managing Director, Standards & Intellectual Property

Signature of authorized person: *H. Shannon Tyson, Jr.*   Date: August 8, 2008

Address: 8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.

Phone: +1 512-651-9542          E-mail:  styson@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA.*

> *The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2008 IEEE          17 January 2008

## DEFINITIONS

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Blanket Letter of Assurance"* shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

---

# Exhibit 5

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ   08854   USA
FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

---

*No license is implied by submission of this Letter of Assurance*

---

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                           ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:  H. Shannon Tyson, Jr.
Department:  Legal Department
Address:     8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.
             Austin, Texas 78759, U.S.A.
Telephone: +1 512-651-9542          Fax:  +1 512-651-9537   E-mail:  standardslicensing@broadcom.com
URL:

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or
web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is
limited to the following:

Standard/Project Number:   IEEE 802.3aq
Title: 10GBASE-LRM

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following
*(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search.
The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of
rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any
license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance
Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or
1.b. below, the terms of the Letter of Assurance Form shall control.*

☒ 1.   The Submitter may own, control, or have the ability to license Patent Claims that might be or become
        Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is
        as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

   ☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on
        a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair
        discrimination.

        ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar
           to what the Submitter would offer is attached.

Copyright © 2008 IEEE                    17 January 2008

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

### E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. ***(Submitter must check box 1 or box 2 below)***

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

_____                    _____
Organization's Name                            Organization's Name


Address                                         Address


Contact person                                  Contact person


*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person:  H. Shannon Tyson, Jr.

Title of authorized person:  Managing Director, Standards & Intellectual Property

Signature of authorized person: *H. Shannon Tyson, Jr.*  Date: March 11, 2009

Address: 8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.

Phone: +1 512-651-9542                    E-mail: styson@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA.*

---

*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2008 IEEE                    17 January 2008

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

"*Affiliate*" shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

"*Blanket Letter of Assurance*" shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

"*Essential Patent Claim*" shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

"*Letter of Assurance*" and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

"*Patent Claim(s)*" shall mean one or more claims in issued patent(s) or pending patent application(s).

"*Reasonable and Good Faith Inquiry*" includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

---

Copyright © 2008 IEEE                17 January 2008

# Exhibit 6

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ   08854   USA
FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

---

*No license is implied by submission of this Letter of Assurance*

---

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                                ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:  H. Shannon Tyson, Jr.
Department:  Legal Department
Address:     8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.
             Austin, Texas 78759, U.S.A.
Telephone: +1 512-651-9542        Fax:  +1 512-651-9537   E-mail: standardslicensing@broadcom.com
URL:

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or
web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is
limited to the following:

Standard/Project Number:    IEEE P802.3av
Title:  Amendment to IEEE 802.3-2008: Physical Layer Specifications and Management Parameters
        for 10Gb/s Passive Optical Networks

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following
*(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search.
The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of
rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any
license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance
Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or
1.b. below, the terms of the Letter of Assurance Form shall control.*

☒ 1.   The Submitter may own, control, or have the ability to license Patent Claims that might be or become
        Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is
        as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

    ☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on
         a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair
         discrimination.

        ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar
           to what the Submitter would offer is attached.

Copyright © 2008 IEEE              17 January 2008

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

Copyright © 2008 IEEE                17 January 2008

## F. APPLICATION TO AFFILIATES:

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| Address | Address |
| Contact person | Contact person |

*For additional Affiliates, use additional pages as necessary.*

## G. SIGNATURE:

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person:  H. Shannon Tyson, Jr.

Title of authorized person:  Managing Director, Standards & Intellectual Property

Signature of authorized person:  *H. Shannon Tyson, Jr.* - Date: May 15, 2009

Address: 8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.

Phone: +1 512-651-9542          E-mail: styson@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2008 IEEE          17 January 2008

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

**"Blanket Letter of Assurance"** shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

# Exhibit 7

**LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS**

| Please return via mail, e-mail (as a PDF), or fax: | PatCom Administrator, IEEE-SA Standards Board Patent Committee Institute of Electrical and Electronics Engineers, Inc. 445 Hoes Lane Piscataway, NJ 08854 USA FAX (+1 732-875-0524) e-mail: patcom@ieee.org |
|---|---|

*No license is implied by submission of this Letter of Assurance*

#### A. SUBMITTER:

Legal Name: Broadcom Corporation                                    ("Submitter")

#### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:  H. Shannon Tyson, Jr.
Department:  Legal Department
Address:      8303 Mopac Expressway North, Suite A410
                   Austin, Texas 78759, U.S.A.
Telephone: +1 512-651-9542        Fax:   +1 512-651-9537   E-mail:  standardslicensing@broadcom.com
URL:

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

#### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:   IEEE P802.3bf
Title:  Media Access Control (MAC) service interface and management parameters to support time
           synchronization protocols

#### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒ 1.    The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

☐  a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

Copyright © 2008 IEEE                17 January 2008

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

   ☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

   ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

**E. SCOPE OF ASSURANCE:**

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. ***(Submitter must check box 1 or box 2 below)***

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

Copyright © 2008 IEEE                17 January 2008

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| | |
| Address | Address |
| | |
| Contact person | Contact person |

*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: H. Shannon Tyson, Jr.

Title of authorized person: Senior Director, Standards & Intellectual Property

Signature of authorized person: *H. Shannon Tyson, Jr.*  . Date: September 26, 2010

Address: 8303 Mopac Expressway North, Suite A410, Austin, Texas 78759, U.S.A.

Phone: +1 512-651-9542          E-mail: styson@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA.*

> The IEEE Patent Policy and the procedures used to execute that policy are documented in the *IEEE-SA Standards Board Bylaws* and the *IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2008 IEEE                    17 January 2008

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

**"**Blanket Letter of Assurance*"* shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual*) have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

---

Copyright © 2008 IEEE                    17 January 2008

# Exhibit 8

**LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS**

| | |
|---|---|
| Please return via mail, e-mail (as a PDF), or fax: | PatCom Administrator, IEEE-SA Standards Board Patent Committee Institute of Electrical and Electronics Engineers, Inc. 445 Hoes Lane Piscataway, NJ   08854   USA FAX (+1 732-875-0524)   e-mail: patcom@ieee.org |

> *No license is implied by submission of this Letter of Assurance*

## A. SUBMITTER:

Legal Name: Broadcom Corporation                                                                              ("Submitter")

## B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:   Joseph Lee / Assistant General Counsel
Department: Legal Department
Address:      5300 California Ave, Irvine, CA 92617

Telephone: (949) 926-9000              Fax:                          E-mail:  sso-support-list@broadcom.com
URL:

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

## C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:   IEEE P802.3bn
Title:  IEEE Standard for Ethernet Amendment: Physical Layer Specifications and Management
        Parameters  for Ethernet Passive Optical Networks Protocol over Coax

## D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒ 1.   The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

Copyright © 2012 IEEE                    January 2012

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

    ☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

    ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. ***(Submitter must check box 1 or box 2 below)***

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| Organization's Name | Organization's Name |
|---|---|
| Address | Address |
| Contact person | Contact person |

*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person:  Joseph Lee

Title of authorized person:  Assistant General Counsel

Signature of authorized person: _____  Date: February 6, 2013

Address: 5300 California Ave, Irvine, CA 92617

Phone: (949) 926-9000          E-mail: sso-support-list@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

---

*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2012 IEEE          January 2012

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Blanket Letter of Assurance"* shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

---

Copyright © 2012 IEEE

# Exhibit 9

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

| | |
|---|---|
| Please return via mail, e-mail (as a PDF), or fax: | PatCom Administrator, IEEE-SA Standards Board Patent Committee<br>Institute of Electrical and Electronics Engineers, Inc.<br>445 Hoes Lane<br>Piscataway, NJ   08854   USA<br>FAX (+1 732-875-0524)   e-mail: patcom@ieee.org |

| *No license is implied by submission of this Letter of Assurance* |
|---|

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                                                ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:  Joseph Lee
Department:  Legal Department
Address:       5300 California Ave
                    Irvine, CA 92617
Telephone: 949-926-9000          Fax:   1-949-926-6226      E-mail: sso-support-list@broadcom.com
URL:       www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:   802.3.1
Title:  Management Information Base (MIB) Definitions for Ethernet

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒  1.   The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

  ☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

    ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

Copyright © 2008 IEEE                        17 January 2008

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

　　☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

　　☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

**E. SCOPE OF ASSURANCE:**

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

## F. APPLICATION TO AFFILIATES:

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| Address | Address |
| Contact person | Contact person |

*For additional Affiliates, use additional pages as necessary.*

## G. SIGNATURE:

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Joseph Lee

Title of authorized person: Assistant General Counsel

Signature of authorized person: _____    Date: 8-7-13

Address: 5300 California Ave, Irvine, CA 92617

Phone: 949-926-9000                          E-mail: sso-support-list@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA.*

---

*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2008 IEEE                17 January 2008

## DEFINITIONS

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Blanket Letter of Assurance"* shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual*) have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

---

Copyright © 2008 IEEE          17 January 2008

# Exhibit 10

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ   08854   USA
FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

> *No license is implied by submission of this Letter of Assurance*

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                    ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:  Joseph Lee
Department: Legal Department
Address:       5300 California Ave
                    Irvine, CA 92617
Telephone: 949-926-9000          Fax:   1-949-926-6226    E-mail: sso-support-list@broadcom.com
URL:     www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:   802.3bm
Title: Physical Layer Specifications and Management Parameters
       for 40 Gb/s and 100 Gb/s Operation Over Fiber Optic Cables

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒  1.  The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

Copyright © 2008 IEEE                17 January 2008

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

　　　☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

　　　☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

**E. SCOPE OF ASSURANCE:**

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

Copyright © 2008 IEEE                    17 January 2008

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

_____                    _____
Organization's Name                          Organization's Name


Address                                      Address


Contact person                               Contact person


*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying on or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Joseph Lee

Title of authorized person:  Assistant General Counsel

Signature of authorized person: _Joseph Lee_    Date: 8-7-13

Address: 5300 California Ave, Irvine, CA 92617

Phone: 949-926-9000              E-mail: sso-support-list@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA.*

---

*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

---

Copyright © 2008 IEEE                    17 January 2008

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Blanket Letter of Assurance"* shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual*) have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

Copyright © 2008 IEEE                17 January 2008

EFiled:  Oct 31 2024 11:26PM EDT
Transaction ID 74924134
Case No. 2024-1127-

# Exhibit 11

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ    08854    USA
FAX (+1 732-875-0524)    e-mail: patcom@ieee.org

| *No license is implied by submission of this Letter of Assurance* |

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:  Joseph Lee
Department:  Legal Department
Address:    5300 California Ave
            Irvine, CA 92617
Telephone: 949-926-9000        Fax:  1-949-926-6226    E-mail: sso-support-list@broadcom.com
URL:    www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:    802.3-2012
Title: IEEE Standard for Ethernet

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒  1.    The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

Copyright © 2008 IEEE            17 January 2008

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

    ☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

    ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

**E. SCOPE OF ASSURANCE:**

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

Copyright © 2008 IEEE        17 January 2008

## F. APPLICATION TO AFFILIATES:

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| | |
| Address | Address |
| | |
| Contact person | Contact person |

*For additional Affiliates, use additional pages as necessary.*

## G. SIGNATURE:

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Joseph Lee

Title of authorized person:  Assistant General Counsel

Signature of authorized person:  _____    Date:  8-7-13

Address: 5300 California Ave, Irvine, CA 92617

Phone: 949-926-9000           E-mail: sso-support-list@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's withdrawal and is irrevocable upon acceptance by the IEEE-SA.*

> *The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/resources/index.html#guides. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2008 IEEE                17 January 2008

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Blanket Letter of Assurance"* shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

---

Copyright © 2008 IEEE            17 January 2008

# Exhibit 12

**LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS**

| Please return via mail, e-mail (as a PDF), or fax: | PatCom Administrator, IEEE-SA Standards Board Patent Committee |
|---|---|
| | Institute of Electrical and Electronics Engineers, Inc. |
| | 445 Hoes Lane |
| | Piscataway, NJ  08854   USA |
| | FAX (+1 732-875-0524)   e-mail: patcom@ieee.org |

---

| *No license is implied by submission of this Letter of Assurance* |
|---|

**A. SUBMITTER:**

Legal Name: Broadcom Corporation                                                     ("Submitter")

**B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):**

Contact Name/Title:  Jeyhan Karaoguz, Vice President, IP & Standards
Department: Legal Department
Address:     5300 California Ave.
                   Irvine, CA 92617
Telephone: (949) 926-9000           Fax: (949) 926-6226          E-mail: sso-support-list@broadcom.com
URL:    www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

**C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):**

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:    802.3bw
Title:  Standard for Ethernet Amendment Physical Layer Specfications and Management Parameters
          for 100 Mb/s Operation Over a Single Balanced Twisted Pair Cable (100Base-T1)

**D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:**

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒  1.    The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes):*

   ☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

      ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

Copyright © 2012 IEEE                January 2012

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

    ☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

    ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

**E. SCOPE OF ASSURANCE:**

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

Copyright © 2012 IEEE      January 2012

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

Organization's Name _____

Organization's Name _____

Address

Address

Contact person

Contact person

*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Jeyhan Karaoguz

Title of authorized person: Vice President, IP & Standards

Signature of authorized person: _____  Date: 9/10/14

Address: 5300 California Ave., Irvine, CA 92617

Phone: (949) 926-6000          E-mail: sso-support-list@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

---

*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2012 IEEE          January 2012

## DEFINITIONS

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

**"Affiliate"** shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

**"Blanket Letter of Assurance"** shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual*) have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

**"Submitter"** when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

> *Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

Copyright © 2012 IEEE          January 2012

# Exhibit 13

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ   08854   USA
FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

> *No license is implied by submission of this Letter of Assurance*

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                    ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:   Jeyhan Karaoguz, Vice President, IP & Standards
Department: Legal Department
Address:      5300 California Ave.
              Irvine, CA 92617
Telephone: (949) 926-9000        Fax: (949) 926-6226      E-mail:  sso-support-list@broadcom.com
URL:   www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:   802.3br
Title:  Standard for Ethernet Amendment Specfications and Management Parameters
        for Interspersing Express Traffic

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒ 1.  The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes):*

☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

Copyright © 2012 IEEE           January 2012

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

　　☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

　　☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

**E. SCOPE OF ASSURANCE:**

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

Copyright © 2012 IEEE          January 2012

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

Organization's Name                          Organization's Name

Address                                      Address

Contact person                               Contact person

*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person:  Jeyhan Karaoguz

Title of authorized person:  Vice President, IP & Standards

Signature of authorized person: _____ Date: 11 - 5 - 2014

Address: 5300 California Ave., Irvine, CA 92617

Phone: (949) 926-6000                    E-mail: sso-support-list@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2012 IEEE          January 2012

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Blanket Letter of Assurance"* shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

> *Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

Exhibit 14

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ   08854   USA
FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

---

### *No license is implied by submission of this Letter of Assurance*

---

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                                    ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):

Contact Name/Title:  Jeyhan Karaoguz, Vice President, IP & Standards
Department:  Legal Department
Address:      5300 California Ave.
                   Irvine, CA 92617
Telephone: (949) 926-9000          Fax: (949) 926-6226          E-mail:  sso-support-list@broadcom.com
URL:    www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:   802.3by
Title:  Standard for Ethernet Amendment:  Media Access Control Parameters, Physical Layers and Management Parameters for 25 Gb/s Operation

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a. or 1.b. below, the terms of the Letter of Assurance Form shall control.*

☒ 1.  The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

☐ a. The Submitter will grant a license without compensation to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

Copyright © 2012 IEEE                    January 2012

☒ b. The Submitter will grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination.

    ☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of product price, flat fee, per unit).

    ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, using, selling, offering to sell, importing, distributing, or implementing such a compliant implementation.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

**E. SCOPE OF ASSURANCE:**

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

Patent/Application/Docket Number:
Description/Title (optional):

Claim (optional):

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D above apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| | |
| Address | Address |
| | |
| Contact person | Contact person |

*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the [Proposed] IEEE Standard identified in part C above are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an existing Letter of Assurance that are owned, controlled, or licensable by the Submitter that may be or become Essential Patent Claims with respect to the standard identified in C above, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person:  Jeyhan Karaoguz

Title of authorized person:  Vice President, IP & Standards

Signature of authorized person: _____  Date: 1/21/2015

Address: 5300 California Ave., Irvine, CA 92617

Phone: (949) 926-6000          E-mail: sso-support-list@broadcom.com

*Note: This assurance applies from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

> *The IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

Copyright © 2012 IEEE          January 2012

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter, is controlled by the Submitter, or is under common control with the Submitter. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Blanket Letter of Assurance"* shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual*) have the ability to license.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the [Proposed] IEEE Standard but is neither explicitly required by nor expressly set forth in the [Proposed] IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the use of which was necessary to create a compliant implementation of either mandatory or optional portions of the normative clauses of the [Proposed] IEEE Standard when, at the time of the [Proposed] IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

*"Statement of Encumbrance"* shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

*"Submitter"* when used in reference to a Letter of Assurance shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

---

Copyright © 2012 IEEE                 January 2012

# Exhibit 15

**LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS**

Please return via mail,
e-mail (as a PDF), or fax:

PatCom Administrator, IEEE-SA Standards Board Patent Committee
Institute of Electrical and Electronics Engineers, Inc.
445 Hoes Lane
Piscataway, NJ   08854   USA
FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

---
*No license is implied by submission of this Letter of Assurance*
---

**A. SUBMITTER:**

Legal Name: Broadcom Corporation                                    ("Submitter")

**B. SUBMITTER'S CONTACT INFORMATION (for the purpose of licensing information):**

Contact Name/Title: Jeyhan Karaoguz, Vice President, IP & Standards
Department: Legal Department
Address: 5300 California Ave.
Irvine, CA 92617
Telephone: (949) 926-9000      Fax: (949) 926-6226      E-mail: sso-support-list@broadcom.com
URL: www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

**C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):**

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws* and Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number: 802.3bp
Title: Standard for Ethernet Amendment Physical Layer Specifications and Management Parameters for 1 Gb/s Operation over a Single Twisted Pair Copper Cable

**D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:**

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims, determining whether an implementation is a Compliant Implementation or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a or 1.b below, the terms of Clause 6 of the IEEE-SA Standards Board Bylaws and this Letter of Assurance Form shall control.*

☒ 1. The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

☐ a. The Submitter will make available a license for Essential Patent Claims without compensation to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ (Optional) Such a license will include a Reciprocal Licensing requirement.

☒ b. The Submitter will make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

   ☐ (Optional) These reasonable rates will not exceed ████████████████ (e.g., percent of unit price, flat fee, per unit).

   ☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

   ☒ (Optional) Such a license will include a Reciprocal Licensing requirement.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, having made, using, selling, offering to sell, or importing any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. **(Submitter must check box 1 or box 2 below)**

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number: ████████████████████████
Description/Title (optional): ████████████████████████

Claim (optional): ████████████████████████

Patent/Application/Docket Number: ████████████████████████
Description/Title (optional): ████████████████████████

Claim (optional): ████████████████████████

Patent/Application/Docket Number: ████████████████████████
Description/Title (optional): ████████████████████████

Claim (optional): ████████████████████████

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| Address | Address |
| Contact person | Contact person |

*Affiliates may not be excluded if the Reciprocal Licensing box is checked in part D.1.a or D.1.b.*
*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates permissibly excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the IEEE Standard identified in part C are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates permissibly excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of an Accepted Letter of Assurance either through a Statement of Encumbrance or by binding its assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If D.1.a or D.1.b is checked, the Submitter shall not condition a license on the Applicant's agreeing (a) to grant a license to any of the Applicant's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C, or (b) to take a license for any of the Submitter's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C.

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an Accepted Letter of Assurance that are owned, controlled, or licensable by the Submitter and that may be or become Essential Patent Claims with respect to the IEEE Standard identified in part C, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Jeyhan Karaoguz

Title of authorized person: Vice President, IP & Standards

Signature of authorized person: _____ Date: 3/20/15

Address: 5300 California Ave., Irvine, CA 92617

Phone: (949) 926-6000        E-mail: sso-support-list@broadcom.com

*Note that this assurance applies, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE-SA Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE-SA Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter or Applicant, is controlled by the Submitter or Applicant, or is under common control with the Submitter or Applicant. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Applicant"* shall mean any prospective licensee for Essential Patent Claims. *"Applicant"* shall include all of its Affiliates.

**"***Blanket Letter of Assurance***"** shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Compliant Implementation"* shall mean any product (e.g., component, sub-assembly, or end-product) or service that conforms to any mandatory or optional portion of a normative clause of an IEEE Standard.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the IEEE Standard but is neither explicitly required by nor expressly set forth in the IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the practice of which was necessary to implement either a mandatory or optional portion of a normative clause of the IEEE Standard when, at the time of the IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative implementation method for such mandatory or optional portion of the normative clause. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Prohibitive Order"* shall mean an interim or permanent injunction, exclusion order, or similar adjudicative directive that limits or prevents making, having made, using, selling, offering to sell, or importing a Compliant Implementation.

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

"*Reasonable Rate*" shall mean appropriate compensation to the patent holder for the practice of an Essential Patent Claim excluding the value, if any, resulting from the inclusion of that Essential Patent Claim's technology in the IEEE Standard. In addition, determination of such Reasonable Rates should include, but need not be limited to, the consideration of:

• The value that the functionality of the claimed invention or inventive feature within the Essential Patent Claim contributes to the value of the relevant functionality of the smallest saleable Compliant Implementation that practices the Essential Patent Claim.

• The value that the Essential Patent Claim contributes to the smallest saleable Compliant Implementation that practices that claim, in light of the value contributed by all Essential Patent Claims for the same IEEE Standard practiced in that Compliant Implementation.

• Existing licenses covering use of the Essential Patent Claim, where such licenses were not obtained under the explicit or implicit threat of a Prohibitive Order, and where the circumstances and resulting licenses are otherwise sufficiently comparable to the circumstances of the contemplated license.

"*Reciprocal Licensing*" shall mean that the Submitter of an LOA has conditioned its granting of a license for its Essential Patent Claims upon the Applicant's agreement to grant a license to the Submitter with Reasonable Rates and other reasonable licensing terms and conditions to the Applicant's Essential Patent Claims, if any, for the referenced IEEE Standard, including any amendments, corrigenda, editions, and revisions. If an LOA references an amendment or corrigendum, the scope of reciprocity includes the base IEEE Standard and its amendments, corrigenda, editions, and revisions.

"*Statement of Encumbrance*" shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims. "*Submitter*" shall include all of its Affiliates unless specifically and permissibly excluded.

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

# Exhibit 16

### LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

Please return via mail,          PatCom Administrator, IEEE-SA Standards Board Patent Committee
e-mail (as a PDF), or fax:       Institute of Electrical and Electronics Engineers, Inc.
                                 445 Hoes Lane
                                 Piscataway, NJ   08854   USA
                                 FAX (+1 732-875-0524)   e-mail: patcom@ieee.org

> *No license is implied by submission of this Letter of Assurance*

## A. SUBMITTER:

Legal Name: Broadcom Corporation                                        ("Submitter")

## B. SUBMITTER'S CONTACT INFORMATION:

Contact Name/Title:   Jeyhan Karaoguz, Ph.D. / Vice President & General Manager
Department:   Intellectual Property
Address:   5300 California Ave.
           Irvine, CA 92617
Telephone: (949) 926-6000          Fax: (949) 926-6226          E-mail: sso-support-list@broadcom.com
URL:   www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

## C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws* and Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number:   802.3bu
Title:   IEEE Standard for Ethernet–Amendment 8:  Physical Layer and Management Parameters for Power over Data Lines (PoDL) of Single Balanced Twisted-Pair Ethernet

## D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following *(Check box 1 or box 2 below)*:

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims, determining whether an implementation is a Compliant Implementation or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a or 1.b below, the terms of Clause 6 of the IEEE-SA Standards Board Bylaws and this Letter of Assurance Form shall control.*

[X] 1.   The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows *(must check a, b, c, or d and any applicable subordinate boxes)*:

  [ ] a. The Submitter will make available a license for Essential Patent Claims without compensation to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

    [ ] (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

    [ ] (Optional) Such a license will include a Reciprocal Licensing requirement.

☒ b. The Submitter will make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) These reasonable rates will not exceed ............................... (e.g., percent of unit price, flat fee, per unit).

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☒ (Optional) Such a license will include a Reciprocal Licensing requirement.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, having made, using, selling, offering to sell, or importing any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. *(Submitter must check box 1 or box 2 below)*

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number: ...........................................................................................
Description/Title (optional): ......................................................................................................

Claim (optional): .............................................................................

Patent/Application/Docket Number: ...........................................................................................
Description/Title (optional): ......................................................................................................

Claim (optional): .............................................................................

Patent/Application/Docket Number: _____
Description/Title (optional): _____

Claim (optional): _____

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

## F. APPLICATION TO AFFILIATES:

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| | |
|---|---|
| Organization's Name | Organization's Name |
| Address | Address |
| Contact person | Contact person |

*Affiliates may not be excluded if the Reciprocal Licensing box is checked in part D.1.a or D.1.b.*
*For additional Affiliates, use additional pages as necessary.*

## G. SIGNATURE:

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates permissibly excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the IEEE Standard identified in part C are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates permissibly excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of an Accepted Letter of Assurance either through a Statement of Encumbrance or by binding its assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If D.1.a or D.1.b is checked, the Submitter shall not condition a license on the Applicant's agreeing (a) to grant a license to any of the Applicant's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C, or (b) to take a license for any of the Submitter's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C.

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an Accepted Letter of Assurance that are owned, controlled, or licensable by the Submitter and that may be or become Essential Patent Claims with respect to the IEEE Standard identified in part C, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Jeyhan Karaoguz, Ph.D.

Title of authorized person: Vice President & General Manager, Intellectual Property

Signature of authorized person: _[signature]_    Date: 2/28/2017

Address: 5300 California Ave. Irvine, CA 92617

Phone: (949) 926-6000    E-mail: sso-support-list@broadcom.com

*Note that this assurance applies, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE-SA Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE-SA Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

**DEFINITIONS**

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

*"Affiliate"* shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter or Applicant, is controlled by the Submitter or Applicant, or is under common control with the Submitter or Applicant. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

*"Applicant"* shall mean any prospective licensee for Essential Patent Claims. *"Applicant"* shall include all of its Affiliates.

**"***Blanket Letter of Assurance***"** shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

*"Compliant Implementation"* shall mean any product (e.g., component, sub-assembly, or end-product) or service that conforms to any mandatory or optional portion of a normative clause of an IEEE Standard.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the IEEE Standard but is neither explicitly required by nor expressly set forth in the IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

*"Essential Patent Claim"* shall mean any Patent Claim the practice of which was necessary to implement either a mandatory or optional portion of a normative clause of the IEEE Standard when, at the time of the IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative implementation method for such mandatory or optional portion of the normative clause. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

*"Letter of Assurance"* and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

*"Patent Claim(s)"* shall mean one or more claims in issued patent(s) or pending patent application(s).

*"Prohibitive Order"* shall mean an interim or permanent injunction, exclusion order, or similar adjudicative directive that limits or prevents making, having made, using, selling, offering to sell, or importing a Compliant Implementation.

*"Reasonable and Good Faith Inquiry"* includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

"*Reasonable Rate*" shall mean appropriate compensation to the patent holder for the practice of an Essential Patent Claim excluding the value, if any, resulting from the inclusion of that Essential Patent Claim's technology in the IEEE Standard. In addition, determination of such Reasonable Rates should include, but need not be limited to, the consideration of:

• The value that the functionality of the claimed invention or inventive feature within the Essential Patent Claim contributes to the value of the relevant functionality of the smallest saleable Compliant Implementation that practices the Essential Patent Claim.

• The value that the Essential Patent Claim contributes to the smallest saleable Compliant Implementation that practices that claim, in light of the value contributed by all Essential Patent Claims for the same IEEE Standard practiced in that Compliant Implementation.

• Existing licenses covering use of the Essential Patent Claim, where such licenses were not obtained under the explicit or implicit threat of a Prohibitive Order, and where the circumstances and resulting licenses are otherwise sufficiently comparable to the circumstances of the contemplated license.

"*Reciprocal Licensing*" shall mean that the Submitter of an LOA has conditioned its granting of a license for its Essential Patent Claims upon the Applicant's agreement to grant a license to the Submitter with Reasonable Rates and other reasonable licensing terms and conditions to the Applicant's Essential Patent Claims, if any, for the referenced IEEE Standard, including any amendments, corrigenda, editions, and revisions. If an LOA references an amendment or corrigendum, the scope of reciprocity includes the base IEEE Standard and its amendments, corrigenda, editions, and revisions.

"*Statement of Encumbrance*" shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims. "*Submitter*" shall include all of its Affiliates unless specifically and permissibly excluded.

> *Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

# Exhibit 17

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

| | |
|---|---|
| Please return via mail, | PatCom Administrator, IEEE-SA Standards Board Patent Committee |
| e-mail (as a PDF), or fax: | Institute of Electrical and Electronics Engineers, Inc. |
| | 445 Hoes Lane |
| | Piscataway, NJ    08854    USA |
| | FAX (+1 732-875-0524)    e-mail: patcom@ieee.org |

---

> *No license is implied by submission of this Letter of Assurance*

---

### A. SUBMITTER:

Legal Name: Broadcom Corporation                                         ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION:

| | |
|---|---|
| Contact Name/Title: | Peter P. Scott |
| Department: | IP Licensing and Standards |
| Address: | 4380 Ziegler Rd |
| | Fort Collins, CO 80525 |
| Telephone: (970)288-4075 | Fax: N/A    E-mail: sso-support-list@broadcom.com |
| URL: www.broadcom.com | |

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws* and Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number: P802.3ca

Title: Approved Draft Standard for Ethernet Amendment: Physical Layer Specifications and Management Parameters for 25 Gb/s. 50 Gb/s. and 100 Gb/s Passive Optical Networks

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following (**Check box 1 or box 2 below**):

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims, determining whether an implementation is a Compliant Implementation or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a or 1.b below, the terms of Clause 6 of the IEEE-SA Standards Board Bylaws and this Letter of Assurance Form shall control.*

[X] 1.  The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows (**must check a, b, c, or d and any applicable subordinate boxes**):

    [ ] a. The Submitter will make available a license for Essential Patent Claims without compensation to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

        [ ] (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

        [ ] (Optional) Such a license will include a Reciprocal Licensing requirement.

Copyright © 2015 IEEE                    December 2015

DocuSign Envelope ID: EDA83B8O-2D2C-4631-900C-E7A5E18FCA55

☒ b. The Submitter will make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) These reasonable rates will not exceed ▓▓▓▓▓▓▓▓▓▓ (e.g., percent of unit price, flat fee, per unit).

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☒ (Optional) Such a license will include a Reciprocal Licensing requirement.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, having made, using, selling, offering to sell, or importing any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. (***Submitter must check box 1 or box 2 below***)

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Description/Title (optional): ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Claim (optional): ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Patent/Application/Docket Number: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Description/Title (optional): ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Claim (optional): ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Patent/Application/Docket Number: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Description/Title (optional): ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Claim (optional): ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

## F. APPLICATION TO AFFILIATES:

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| Organization's Name | Organization's Name |
| --- | --- |
| Address | Address |
| Contact person | Contact person |

*Affiliates may not be excluded if the Reciprocal Licensing box is checked in part D.1.a or D.1.b.*
*For additional Affiliates, use additional pages as necessary.*

## G. SIGNATURE:

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates permissibly excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the IEEE Standard identified in part C are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates permissibly excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of an Accepted Letter of Assurance either through a Statement of Encumbrance or by binding its assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If D.1.a or D.1.b is checked, the Submitter shall not condition a license on the Applicant's agreeing (a) to grant a license to any of the Applicant's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C, or (b) to take a license for any of the Submitter's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C.

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an Accepted Letter of Assurance that are owned, controlled, or licensable by the Submitter and that may be or become Essential Patent Claims with respect to the IEEE Standard identified in part C, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Thomas H. Krause, Jr.

Title of authorized person: Vice President, Chief Financial Officer & Secretary

Signature of authorized person: *Thomas Krause Jr.* DocuSigned by: 6E6EC25F056C47A... Date: Mar-30-2018

Address: 5300 California Avenue, Irvine, CA 92617 USA

Phone: (408) 433-4396     E-mail: tom.krause@broadcom.com

*Note that this assurance applies, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE-SA Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE-SA Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

# DEFINITIONS

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

"*Affiliate*" shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter or Applicant, is controlled by the Submitter or Applicant, or is under common control with the Submitter or Applicant. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

"*Applicant*" shall mean any prospective licensee for Essential Patent Claims. "*Applicant*" shall include all of its Affiliates.

"*Blanket Letter of Assurance*" shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

"*Compliant Implementation*" shall mean any product (e.g., component, sub-assembly, or end-product) or service that conforms to any mandatory or optional portion of a normative clause of an IEEE Standard.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the IEEE Standard but is neither explicitly required by nor expressly set forth in the IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

"*Essential Patent Claim*" shall mean any Patent Claim the practice of which was necessary to implement either a mandatory or optional portion of a normative clause of the IEEE Standard when, at the time of the IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative implementation method for such mandatory or optional portion of the normative clause. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

"*Letter of Assurance*" and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

"*Patent Claim(s)*" shall mean one or more claims in issued patent(s) or pending patent application(s).

"*Prohibitive Order*" shall mean an interim or permanent injunction, exclusion order, or similar adjudicative directive that limits or prevents making, having made, using, selling, offering to sell, or importing a Compliant Implementation.

"*Reasonable and Good Faith Inquiry*" includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

DocuSign Envelope ID: EDA83B23-2D2C-4631-900C-E7A5E18FCA55

"*Reasonable Rate*" shall mean appropriate compensation to the patent holder for the practice of an Essential Patent Claim excluding the value, if any, resulting from the inclusion of that Essential Patent Claim's technology in the IEEE Standard. In addition, determination of such Reasonable Rates should include, but need not be limited to, the consideration of:

> • The value that the functionality of the claimed invention or inventive feature within the Essential Patent Claim contributes to the value of the relevant functionality of the smallest saleable Compliant Implementation that practices the Essential Patent Claim.

> • The value that the Essential Patent Claim contributes to the smallest saleable Compliant Implementation that practices that claim, in light of the value contributed by all Essential Patent Claims for the same IEEE Standard practiced in that Compliant Implementation.

> • Existing licenses covering use of the Essential Patent Claim, where such licenses were not obtained under the explicit or implicit threat of a Prohibitive Order, and where the circumstances and resulting licenses are otherwise sufficiently comparable to the circumstances of the contemplated license.

"*Reciprocal Licensing*" shall mean that the Submitter of an LOA has conditioned its granting of a license for its Essential Patent Claims upon the Applicant's agreement to grant a license to the Submitter with Reasonable Rates and other reasonable licensing terms and conditions to the Applicant's Essential Patent Claims, if any, for the referenced IEEE Standard, including any amendments, corrigenda, editions, and revisions. If an LOA references an amendment or corrigendum, the scope of reciprocity includes the base IEEE Standard and its amendments, corrigenda, editions, and revisions.

"*Statement of Encumbrance*" shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims. "*Submitter*" shall include all of its Affiliates unless specifically and permissibly excluded.

---

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

---

Exhibit 18

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

| | |
|---|---|
| Please return via mail, | PatCom Administrator, IEEE-SA Standards Board Patent Committee |
| e-mail (as a PDF), or fax: | Institute of Electrical and Electronics Engineers, Inc. |
| | 445 Hoes Lane |
| | Piscataway, NJ   08854   USA |
| | FAX (+1 732-875-0524)   e-mail: patcom@ieee.org |

---

**No license is implied by submission of this Letter of Assurance**

---

### A. SUBMITTER:

Legal Name: Avago Technologies General IP (Singapore) Pte. Ltd., a wholly owned subsidiary of Broadcom Inc. ("Broadcom")   ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION:

Contact Name/Title: Peter P. Scott
Department: IP Licensing
Address: 4380 Ziegler Rd
Fort Collins, CO 80525
Telephone: (970) 288-4075   Fax:   E-mail: sso-support-list@broadcom.com
URL: www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws* and Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number: IEEE P802.3bs
Title: Media Access Control Parameters, Physical Layers and Management Parameters for 200 Gb/s and 400 Gb/s Operation

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following (***Check box 1 or box 2 below***):

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims, determining whether an implementation is a Compliant Implementation or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a or 1.b below, the terms of Clause 6 of the IEEE-SA Standards Board Bylaws and this Letter of Assurance Form shall control.*

[X] 1. The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows (***must check a, b, c, or d and any applicable subordinate boxes***):

    [ ] a. The Submitter will make available a license for Essential Patent Claims without compensation to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

        [ ] (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

        [ ] (Optional) Such a license will include a Reciprocal Licensing requirement.

DocuSign Envelope ID: 925D7666-8B96-44EE-B61A-3B208CF55F2C

☒ b. The Submitter will make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) These reasonable rates will not exceed [redacted] (e.g., percent of unit price, flat fee, per unit).

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ (Optional) Such a license will include a Reciprocal Licensing requirement.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, having made, using, selling, offering to sell, or importing any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. ***(Submitter must check box 1 or box 2 below)***

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number: [redacted]
Description/Title (optional): [redacted]

Claim (optional): [redacted]

Patent/Application/Docket Number: [redacted]
Description/Title (optional): [redacted]

Claim (optional): [redacted]

Patent/Application/Docket Number: [redacted]
Description/Title (optional): [redacted]

Claim (optional): [redacted]

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| Organization's Name | Organization's Name |
|---|---|
| Address | Address |
| Contact person | Contact person |

*Affiliates may not be excluded if the Reciprocal Licensing box is checked in part D.1.a or D.1.b.*
*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates permissibly excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the IEEE Standard identified in part C are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates permissibly excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of an Accepted Letter of Assurance either through a Statement of Encumbrance or by binding its assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If D.1.a or D.1.b is checked, the Submitter shall not condition a license on the Applicant's agreeing (a) to grant a license to any of the Applicant's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C, or (b) to take a license for any of the Submitter's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C.

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an Accepted Letter of Assurance that are owned, controlled, or licensable by the Submitter and that may be or become Essential Patent Claims with respect to the IEEE Standard identified in part C, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Pe-Wynn Kin

Title of authorized person: Secretary

Signature of authorized person: *Pe Wynn Kin* — ED2280432D9841D...    Date: Apr-24-2018

Address: No. 1 Yishun Avenue 7, Singapore 768923

Phone: (408) 433-8000    E-mail: sso-support-list@broadcom.com

*Note that this assurance applies, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE-SA Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE-SA Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

DocuSign Envelope ID: 925D7666-8B96-44CE-B91A-3B208CF55F2C

# DEFINITIONS

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

"*Affiliate*" shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter or Applicant, is controlled by the Submitter or Applicant, or is under common control with the Submitter or Applicant. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

"*Applicant*" shall mean any prospective licensee for Essential Patent Claims. "*Applicant*" shall include all of its Affiliates.

"**Blanket Letter of Assurance**" shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

"*Compliant Implementation*" shall mean any product (e.g., component, sub-assembly, or end-product) or service that conforms to any mandatory or optional portion of a normative clause of an IEEE Standard.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the IEEE Standard but is neither explicitly required by nor expressly set forth in the IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

"*Essential Patent Claim*" shall mean any Patent Claim the practice of which was necessary to implement either a mandatory or optional portion of a normative clause of the IEEE Standard when, at the time of the IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative implementation method for such mandatory or optional portion of the normative clause. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

"*Letter of Assurance*" and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

"*Patent Claim(s)*" shall mean one or more claims in issued patent(s) or pending patent application(s).

"*Prohibitive Order*" shall mean an interim or permanent injunction, exclusion order, or similar adjudicative directive that limits or prevents making, having made, using, selling, offering to sell, or importing a Compliant Implementation.

"*Reasonable and Good Faith Inquiry*" includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

DocuSign Envelope ID: 225D7666-BB66-44CE-B91A-3BB09CF5F5AC

"*Reasonable Rate*" shall mean appropriate compensation to the patent holder for the practice of an Essential Patent Claim excluding the value, if any, resulting from the inclusion of that Essential Patent Claim's technology in the IEEE Standard. In addition, determination of such Reasonable Rates should include, but need not be limited to, the consideration of:

• The value that the functionality of the claimed invention or inventive feature within the Essential Patent Claim contributes to the value of the relevant functionality of the smallest saleable Compliant Implementation that practices the Essential Patent Claim.

• The value that the Essential Patent Claim contributes to the smallest saleable Compliant Implementation that practices that claim, in light of the value contributed by all Essential Patent Claims for the same IEEE Standard practiced in that Compliant Implementation.

• Existing licenses covering use of the Essential Patent Claim, where such licenses were not obtained under the explicit or implicit threat of a Prohibitive Order, and where the circumstances and resulting licenses are otherwise sufficiently comparable to the circumstances of the contemplated license.

"*Reciprocal Licensing*" shall mean that the Submitter of an LOA has conditioned its granting of a license for its Essential Patent Claims upon the Applicant's agreement to grant a license to the Submitter with Reasonable Rates and other reasonable licensing terms and conditions to the Applicant's Essential Patent Claims, if any, for the referenced IEEE Standard, including any amendments, corrigenda, editions, and revisions. If an LOA references an amendment or corrigendum, the scope of reciprocity includes the base IEEE Standard and its amendments, corrigenda, editions, and revisions.

"*Statement of Encumbrance*" shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims. "*Submitter*" shall include all of its Affiliates unless specifically and permissibly excluded.

> *Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

# Exhibit 19

## LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

| | |
|---|---|
| Please return via mail, e-mail (as a PDF), or fax: | PatCom Administrator, IEEE-SA Standards Board Patent Committee<br>Institute of Electrical and Electronics Engineers, Inc.<br>445 Hoes Lane<br>Piscataway, NJ   08854   USA<br>FAX (+1 732-875-0524)   e-mail: patcom@ieee.org |

---

*No license is implied by submission of this Letter of Assurance*

---

### A. SUBMITTER:

Legal Name: Avago Technologies General IP (Singapore) Pte. Ltd., a wholly owned subsidiary of Broadcom Inc. ("Broadcom)"   ("Submitter")

### B. SUBMITTER'S CONTACT INFORMATION:

Contact Name/Title: Peter P. Scott
Department: IP Licensing
Address: 4380 Ziegler Rd
Fort Collins, CO 80525
Telephone: (970) 288-4075   Fax:    E-mail: sso-support-list@broadcom.com
URL: www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

### C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws* and Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number: IEEE P802.3cd
Title: Media Access Control Parameters for 50 Gb/s and Physical Layers and Management Parameters for 50 Gb/s, 100 Gb/s, and 200 Gb/s Operation

### D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following (***Check box 1 or box 2 below***):

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims, determining whether an implementation is a Compliant Implementation or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a or 1.b below, the terms of Clause 6 of the IEEE-SA Standards Board Bylaws and this Letter of Assurance Form shall control.*

☒ 1.  The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows (***must check a, b, c, or d and any applicable subordinate boxes***):

☐ a. The Submitter will make available a license for Essential Patent Claims without compensation to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ (Optional) Such a license will include a Reciprocal Licensing requirement.

Copyright © 2015 IEEE                    December 2015

☒ b. The Submitter will make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) These reasonable rates will not exceed ▮▮▮▮▮▮▮▮▮▮ (e.g., percent of unit price, flat fee, per unit).

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ (Optional) Such a license will include a Reciprocal Licensing requirement.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, having made, using, selling, offering to sell, or importing any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. ***(Submitter must check box 1 or box 2 below)***

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Description/Title (optional): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Claim (optional): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Patent/Application/Docket Number: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Description/Title (optional): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Claim (optional): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Patent/Application/Docket Number: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
Description/Title (optional): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Claim (optional): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

**F. APPLICATION TO AFFILIATES:**

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

| Organization's Name | Organization's Name |
|---|---|
| Address | Address |
| Contact person | Contact person |

*Affiliates may not be excluded if the Reciprocal Licensing box is checked in part D.1.a or D.1.b.*
*For additional Affiliates, use additional pages as necessary.*

**G. SIGNATURE:**

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates permissibly excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the IEEE Standard identified in part C are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates permissibly excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of an Accepted Letter of Assurance either through a Statement of Encumbrance or by binding its assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If D.1.a or D.1.b is checked, the Submitter shall not condition a license on the Applicant's agreeing (a) to grant a license to any of the Applicant's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C, or (b) to take a license for any of the Submitter's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C.

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an Accepted Letter of Assurance that are owned, controlled, or licensable by the Submitter and that may be or become Essential Patent Claims with respect to the IEEE Standard identified in part C, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Pe-Wynn Kin

Title of authorized person: Secretary

Signature of authorized person: *Pe Wynn Kin* ED2280432D9841D... Date: Apr-24-2018

Address: No. 1 Yishun Avenue 7, Singapore 768923

Phone: (408) 433-8000    E-mail: sso-support-list@broadcom.com

*Note that this assurance applies, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE-SA Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE-SA Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

# DEFINITIONS

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

"*Affiliate*" shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter or Applicant, is controlled by the Submitter or Applicant, or is under common control with the Submitter or Applicant. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

"*Applicant*" shall mean any prospective licensee for Essential Patent Claims. "*Applicant*" shall include all of its Affiliates.

"*Blanket Letter of Assurance*" shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

"*Compliant Implementation*" shall mean any product (e.g., component, sub-assembly, or end-product) or service that conforms to any mandatory or optional portion of a normative clause of an IEEE Standard.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the IEEE Standard but is neither explicitly required by nor expressly set forth in the IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

"*Essential Patent Claim*" shall mean any Patent Claim the practice of which was necessary to implement either a mandatory or optional portion of a normative clause of the IEEE Standard when, at the time of the IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative implementation method for such mandatory or optional portion of the normative clause. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

"*Letter of Assurance*" and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

"*Patent Claim(s)*" shall mean one or more claims in issued patent(s) or pending patent application(s).

"*Prohibitive Order*" shall mean an interim or permanent injunction, exclusion order, or similar adjudicative directive that limits or prevents making, having made, using, selling, offering to sell, or importing a Compliant Implementation.

"*Reasonable and Good Faith Inquiry*" includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

"*Reasonable Rate*" shall mean appropriate compensation to the patent holder for the practice of an Essential Patent Claim excluding the value, if any, resulting from the inclusion of that Essential Patent Claim's technology in the IEEE Standard. In addition, determination of such Reasonable Rates should include, but need not be limited to, the consideration of:

• The value that the functionality of the claimed invention or inventive feature within the Essential Patent Claim contributes to the value of the relevant functionality of the smallest saleable Compliant Implementation that practices the Essential Patent Claim.

• The value that the Essential Patent Claim contributes to the smallest saleable Compliant Implementation that practices that claim, in light of the value contributed by all Essential Patent Claims for the same IEEE Standard practiced in that Compliant Implementation.

• Existing licenses covering use of the Essential Patent Claim, where such licenses were not obtained under the explicit or implicit threat of a Prohibitive Order, and where the circumstances and resulting licenses are otherwise sufficiently comparable to the circumstances of the contemplated license.

"*Reciprocal Licensing*" shall mean that the Submitter of an LOA has conditioned its granting of a license for its Essential Patent Claims upon the Applicant's agreement to grant a license to the Submitter with Reasonable Rates and other reasonable licensing terms and conditions to the Applicant's Essential Patent Claims, if any, for the referenced IEEE Standard, including any amendments, corrigenda, editions, and revisions. If an LOA references an amendment or corrigendum, the scope of reciprocity includes the base IEEE Standard and its amendments, corrigenda, editions, and revisions.

"*Statement of Encumbrance*" shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims. "*Submitter*" shall include all of its Affiliates unless specifically and permissibly excluded.

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

DocuSign Envelope ID: 925B7666-8B66-44E5-BB1A-3B209CF55F2C

# Exhibit 20

# LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS

| | |
|---|---|
| Please return via mail, | PatCom Administrator, IEEE-SA Standards Board Patent Committee |
| e-mail (as a PDF), or fax: | Institute of Electrical and Electronics Engineers, Inc. |
| | 445 Hoes Lane |
| | Piscataway, NJ   08854   USA |
| | FAX (+1 732-875-0524)   e-mail: patcom@ieee.org |

---
### *No license is implied by submission of this Letter of Assurance*
---

## A. SUBMITTER:

Legal Name: Avago Technologies General IP (Singapore) Pte. Ltd., an intellectual property holding and licensing subsidiary of Broadcom Inc. ("Broadcom")   ("Submitter")

## B. SUBMITTER'S CONTACT INFORMATION:

Contact Name/Title: Peter P. Scott
Department: Intellectual Property and Licensing
Address: 4380 Ziegler Rd
Fort Collins, CO 80525
Telephone: (970) 288-4075   Fax:   E-mail: sso-support-list@broadcom.com
URL: www.broadcom.com

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

## C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws* and Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

Standard/Project Number: IEEE P802.3ch
Title: Standard for Ethernet Physical Layer Specifications and Management Parameters for Greater Than 1 Gb/s Automotive Ethernet

## D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following (*Check box 1 or box 2 below*):

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims, determining whether an implementation is a Compliant Implementation or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a or 1.b below, the terms of Clause 6 of the IEEE-SA Standards Board Bylaws and this Letter of Assurance Form shall control.*

☒ 1. The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows (*must check a, b, c, or d and any applicable subordinate boxes*):

☐ a. The Submitter will make available a license for Essential Patent Claims without compensation to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ (Optional) Such a license will include a Reciprocal Licensing requirement.

Copyright © 2015 IEEE            December 2015            1 of 5

☒ b. The Submitter will make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) These reasonable rates will not exceed ▨▨▨▨▨▨ (e.g., percent of unit price, flat fee, per unit).

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ (Optional) Such a license will include a Reciprocal Licensing requirement.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, having made, using, selling, offering to sell, or importing any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. (**Submitter must check box 1 or box 2 below**)

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number: ▨▨▨▨▨▨
Description/Title (optional): ▨▨▨▨▨▨

Claim (optional): ▨▨▨▨▨▨

Patent/Application/Docket Number: ▨▨▨▨▨▨
Description/Title (optional): ▨▨▨▨▨▨

Claim (optional): ▨▨▨▨▨▨

Patent/Application/Docket Number: ▨▨▨▨▨▨
Description/Title (optional): ▨▨▨▨▨▨

Claim (optional): ▨▨▨▨▨▨

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

## F. APPLICATION TO AFFILIATES:

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

Organization's Name

Organization's Name

Address

Address

Contact person

Contact person

*Affiliates may not be excluded if the Reciprocal Licensing box is checked in part D.1.a or D.1.b.*
*For additional Affiliates, use additional pages as necessary.*

## G. SIGNATURE:

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates permissibly excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the IEEE Standard identified in part C are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates permissibly excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of an Accepted Letter of Assurance either through a Statement of Encumbrance or by binding its assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If D.1.a or D.1.b is checked, the Submitter shall not condition a license on the Applicant's agreeing (a) to grant a license to any of the Applicant's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C, or (b) to take a license for any of the Submitter's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C.

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an Accepted Letter of Assurance that are owned, controlled, or licensable by the Submitter and that may be or become Essential Patent Claims with respect to the IEEE Standard identified in part C, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Pe-Wynn Kin

Title of authorized person: Secretary

Signature of authorized person: Pe Wynn Kin    Date: May-01-2018

Address: No. 1 Yishun Avenue 7, Singapore 768923

Phone: (408) 433-8000    E-mail: sso-support-list@broadcom.com

*Note that this assurance applies, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE-SA Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE-SA Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

# DEFINITIONS

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

"*Affiliate*" shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter or Applicant, is controlled by the Submitter or Applicant, or is under common control with the Submitter or Applicant. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

"*Applicant*" shall mean any prospective licensee for Essential Patent Claims. "*Applicant*" shall include all of its Affiliates.

"*Blanket Letter of Assurance*" shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

"*Compliant Implementation*" shall mean any product (e.g., component, sub-assembly, or end-product) or service that conforms to any mandatory or optional portion of a normative clause of an IEEE Standard.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the IEEE Standard but is neither explicitly required by nor expressly set forth in the IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

"*Essential Patent Claim*" shall mean any Patent Claim the practice of which was necessary to implement either a mandatory or optional portion of a normative clause of the IEEE Standard when, at the time of the IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative implementation method for such mandatory or optional portion of the normative clause. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

"*Letter of Assurance*" and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

"*Patent Claim(s)*" shall mean one or more claims in issued patent(s) or pending patent application(s).

"*Prohibitive Order*" shall mean an interim or permanent injunction, exclusion order, or similar adjudicative directive that limits or prevents making, having made, using, selling, offering to sell, or importing a Compliant Implementation.

"*Reasonable and Good Faith Inquiry*" includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

DocuSign Envelope ID: 552FE724-0D5A-4EA8-850A-D449F3383AA5

"*Reasonable Rate*" shall mean appropriate compensation to the patent holder for the practice of an Essential Patent Claim excluding the value, if any, resulting from the inclusion of that Essential Patent Claim's technology in the IEEE Standard. In addition, determination of such Reasonable Rates should include, but need not be limited to, the consideration of:

> • The value that the functionality of the claimed invention or inventive feature within the Essential Patent Claim contributes to the value of the relevant functionality of the smallest saleable Compliant Implementation that practices the Essential Patent Claim.

> • The value that the Essential Patent Claim contributes to the smallest saleable Compliant Implementation that practices that claim, in light of the value contributed by all Essential Patent Claims for the same IEEE Standard practiced in that Compliant Implementation.

> • Existing licenses covering use of the Essential Patent Claim, where such licenses were not obtained under the explicit or implicit threat of a Prohibitive Order, and where the circumstances and resulting licenses are otherwise sufficiently comparable to the circumstances of the contemplated license.

"*Reciprocal Licensing*" shall mean that the Submitter of an LOA has conditioned its granting of a license for its Essential Patent Claims upon the Applicant's agreement to grant a license to the Submitter with Reasonable Rates and other reasonable licensing terms and conditions to the Applicant's Essential Patent Claims, if any, for the referenced IEEE Standard, including any amendments, corrigenda, editions, and revisions. If an LOA references an amendment or corrigendum, the scope of reciprocity includes the base IEEE Standard and its amendments, corrigenda, editions, and revisions.

"*Statement of Encumbrance*" shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims. "*Submitter*" shall include all of its Affiliates unless specifically and permissibly excluded.

> *Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

# Exhibit 21

DocuSign Envelope ID: 552EE724-0D5A-4EA3-859A-D4A9F3383AA3

**LETTER OF ASSURANCE FOR ESSENTIAL PATENT CLAIMS**

| | |
|---|---|
| Please return via mail, | PatCom Administrator, IEEE-SA Standards Board Patent Committee |
| e-mail (as a PDF), or fax: | Institute of Electrical and Electronics Engineers, Inc. |
| | 445 Hoes Lane |
| | Piscataway, NJ    08854    USA |
| | FAX (+1 732-875-0524)    e-mail: patcom@ieee.org |

> *No license is implied by submission of this Letter of Assurance*

## A. SUBMITTER:

Legal Name: Avago Technologies General IP (Singapore) Pte. Ltd., an intellectual property holding and licensing subsidiary of Broadcom Inc. ("Broadcom")   ("Submitter")

## B. SUBMITTER'S CONTACT INFORMATION:

| | |
|---|---|
| Contact Name/Title: | Peter P. Scott |
| Department: | Intellectual Property and Licensing |
| Address: | 4380 Ziegler Rd |
| | Fort Collins, CO 80525 |
| Telephone: (970) 288-4075 | Fax:     E-mail: sso-support-list@broadcom.com |
| URL:  www.broadcom.com | |

*Note: The IEEE does not endorse the content, or confirm the accuracy or consistency of any contact information or web site listed above.*

## C. IEEE STANDARD OR PROJECT (e.g., AMENDMENT, CORRIGENDA, OR REVISION):

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws* and Clause 6.3.5 of the *IEEE-SA Standards Board Operations Manual*, this licensing position is limited to the following:

| | |
|---|---|
| Standard/Project Number: | IEEE P802.3cg |
| Title: | Standard for Ethernet Amendment: Physical Layer Specifications and Management Parameters for 10 Mb/s Operation over Single Balanced Twisted-pair Cabling and Associated Power Delivery |

## D. SUBMITTER'S POSITION REGARDING LICENSING OF ESSENTIAL PATENT CLAIMS:

In accordance with Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter hereby declares the following (***Check box 1 or box 2 below***):

*Note: Nothing in this Letter of Assurance shall be interpreted as giving rise to a duty to conduct a patent search. The IEEE takes no position with respect to the validity or essentiality of Patent Claims, determining whether an implementation is a Compliant Implementation or the reasonableness of rates, terms, and conditions provided in connection with submission of a Letter of Assurance, if any, or in any license agreements offered by the Submitter. To the extent there are inconsistencies between the Letter of Assurance Form and any sample licenses, material licensing terms, or not to exceed rates provided in connection with 1.a or 1.b below, the terms of Clause 6 of the IEEE-SA Standards Board Bylaws and this Letter of Assurance Form shall control.*

☒ 1.  The Submitter may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims. With respect to such Essential Patent Claims, the Submitter's licensing position is as follows (***must check a, b, c, or d and any applicable subordinate boxes***):

☐   a. The Submitter will make available a license for Essential Patent Claims without compensation to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐   (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐   (Optional) Such a license will include a Reciprocal Licensing requirement.

☒ b. The Submitter will make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make, have made, use, sell, offer to sell, or import any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ (Optional) These reasonable rates will not exceed _____ (e.g., percent of unit price, flat fee, per unit).

☐ (Optional) A sample of such a license (or material licensing terms) that is substantially similar to what the Submitter would offer is attached.

☐ (Optional) Such a license will include a Reciprocal Licensing requirement.

☐ c. The Submitter without conditions will not enforce any present or future Essential Patent Claims against any person or entity making, having made, using, selling, offering to sell, or importing any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified in part C.

☐ d. The Submitter is unwilling or unable to grant licenses according to the provisions of either a or b above or to agree that it will not enforce its Essential Patent Claims as described in c above.

☐ 2. After a Reasonable and Good Faith Inquiry, the Submitter is not aware of any Patent Claims that the Submitter may own, control, or have the ability to license that might be or become Essential Patent Claims.

## E. SCOPE OF ASSURANCE:

*Note: The Submitter must complete this section if box 1 in part D above is checked.*

The Submitter may, but is not required to, identify one or more of its Patent Claims that it believes might be or become Essential Patent Claims. **(*Submitter must check box 1 or box 2 below*)**

☐ 1. When checked, this Letter of Assurance only applies to the Patent Claims identified below that are or become Essential Patent Claims. (If no Patent Claim is identified below, then this Letter of Assurance applies to all Essential Patent Claims supported by the disclosure in the patent or patent applications listed below.)

Patent/Application/Docket Number: _____
Description/Title (optional): _____

Claim (optional): _____

Patent/Application/Docket Number: _____
Description/Title (optional): _____

Claim (optional): _____

Patent/Application/Docket Number: _____
Description/Title (optional): _____

Claim (optional): _____

*For additional patents, use additional pages as necessary.*

☒ 2. When checked, this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated in part D.1; however, a Blanket Assurance shall not supersede any pre-existing or simultaneously submitted specific assurance identifying potential Essential Patent Claims.

DocuSign Envelope ID: 5F3EE724-0D5A-4EA8-8E9A-D4F9F8383AA8

## F. APPLICATION TO AFFILIATES:

With respect to any Essential Patent Claims that an Affiliate has the ability to license, the Submitter agrees that (i) the licensing positions described in parts C and D apply to any Essential Patent Claims within the scope of the assurance described in part E; and (ii) the terms of this assurance are binding on each such Affiliate; provided, however, that such representations and commitments shall not apply to Affiliates identified below:

Organization's Name

Address

Contact person

Organization's Name

Address

Contact person

*Affiliates may not be excluded if the Reciprocal Licensing box is checked in part D.1.a or D.1.b.*
*For additional Affiliates, use additional pages as necessary.*

## G. SIGNATURE:

By signing this Letter of Assurance, you represent that you have the authority to bind the Submitter and all Affiliates (other than those Affiliates permissibly excluded above) to the representations and commitments provided in this LOA and acknowledge that users and implementers of the IEEE Standard identified in part C are relying or will rely upon and may seek enforcement of the terms of this LOA. The Submitter and all Affiliates (other than those Affiliates permissibly excluded above) agree not to sell or otherwise transfer any rights in any Essential Patent Claims that they hold, control, or have the ability to license with the intent of circumventing or negating any of the representations and commitments made in this LOA.

The Submitter agrees (a) to provide notice of an Accepted Letter of Assurance either through a Statement of Encumbrance or by binding its assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

If D.1.a or D.1.b is checked, the Submitter shall not condition a license on the Applicant's agreeing (a) to grant a license to any of the Applicant's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C, or (b) to take a license for any of the Submitter's Patent Claims that are not Essential Patent Claims for the IEEE Standard identified in part C.

If, as described in Clause 6 of the *IEEE-SA Standards Board Bylaws*, the Submitter becomes aware of additional Patent Claims not already covered by an Accepted Letter of Assurance that are owned, controlled, or licensable by the Submitter and that may be or become Essential Patent Claims with respect to the IEEE Standard identified in part C, the Submitter agrees to submit a Letter of Assurance stating its position regarding enforcement or licensing of such Patent Claims.

Print name of authorized person: Pe-Wynn Kin

Title of authorized person: Secretary

Signature of authorized person: *Pe Wynn Kin*  ED2280432D9841D...    Date: May-01-2018

Address: No. 1 Yishun Avenue 7, Singapore 768923

Phone: (408) 433-8000    E-mail: sso-support-list@broadcom.com

*Note that this assurance applies, at a minimum, from the date of the standard's approval to the date of the standard's transfer to inactive status and is irrevocable upon acceptance by the IEEE-SA.*

*The IEEE-SA Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual, available at http://standards.ieee.org/develop/policies/. The terms and definitions set forth in the IEEE-SA Patent Policy, IEEE-SA Standards Board Bylaws, and IEEE-SA Standards Board Operations Manual in effect as of the date of this Letter of Assurance are incorporated herein.*

# DEFINITIONS

The following terms, when capitalized, have the following meanings:

*"Accepted Letter of Assurance"* and *"Accepted LOA"* shall mean a Letter of Assurance that the IEEE-SA has determined is complete in all material respects and has been posted to the IEEE-SA web site.

"*Affiliate*" shall mean an entity that directly or indirectly, through one or more intermediaries, controls the Submitter or Applicant, is controlled by the Submitter or Applicant, or is under common control with the Submitter or Applicant. For the purposes of this definition, the term "control" and its derivatives, with respect to for-profit entities, means the legal, beneficial or equitable ownership, directly or indirectly, of more than fifty percent (50%) of the capital stock (or other ownership interest, if not a corporation) of an entity ordinarily having voting rights. "Control" and its derivatives, with respect to nonprofit entities, means the power to elect or appoint more than fifty percent (50%) of the Board of Directors of an entity.

"*Applicant*" shall mean any prospective licensee for Essential Patent Claims. "*Applicant*" shall include all of its Affiliates.

"*Blanket Letter of Assurance*" shall mean a Letter of Assurance that applies to all Essential Patent Claims for which a Submitter may currently or in the future (except as otherwise provided for in these Bylaws and in the *IEEE-SA Standards Board Operations Manual)* have the ability to license.

"*Compliant Implementation*" shall mean any product (e.g., component, sub-assembly, or end-product) or service that conforms to any mandatory or optional portion of a normative clause of an IEEE Standard.

*"Enabling Technology"* shall mean any technology that may be necessary to make or use any product or portion thereof that complies with the IEEE Standard but is neither explicitly required by nor expressly set forth in the IEEE Standard (e.g., semiconductor manufacturing technology, compiler technology, object-oriented technology, basic operating system technology, and the like).

"*Essential Patent Claim*" shall mean any Patent Claim the practice of which was necessary to implement either a mandatory or optional portion of a normative clause of the IEEE Standard when, at the time of the IEEE Standard's approval, there was no commercially and technically feasible non-infringing alternative implementation method for such mandatory or optional portion of the normative clause. An Essential Patent Claim does not include any Patent Claim that was essential only for Enabling Technology or any claim other than that set forth above even if contained in the same patent as the Essential Patent Claim.

"*Letter of Assurance*" and *"LOA"* shall mean a document, including any attachments, stating the Submitter's position regarding ownership, enforcement, or licensing of Essential Patent Claims for a specifically referenced IEEE Standard, submitted in a form acceptable to the IEEE-SA.

"*Patent Claim(s)*" shall mean one or more claims in issued patent(s) or pending patent application(s).

"*Prohibitive Order*" shall mean an interim or permanent injunction, exclusion order, or similar adjudicative directive that limits or prevents making, having made, using, selling, offering to sell, or importing a Compliant Implementation.

"*Reasonable and Good Faith Inquiry*" includes, but is not limited to, a Submitter using reasonable efforts to identify and contact those individuals who are from, employed by, or otherwise represent the Submitter and who are known to the Submitter to be current or past participants in the development process of the [Proposed] IEEE Standard identified in a Letter of Assurance, including, but not limited to, participation in a Sponsor Ballot or Working Group. If the Submitter did not or does not have any participants, then a Reasonable and Good Faith Inquiry may include, but is not limited to, the Submitter using reasonable efforts to contact individuals who are from, employed by, or represent the Submitter and who the Submitter believes are most likely to have knowledge about the technology covered by the [Proposed] IEEE Standard.

Copyright © 2015 IEEE

"*Reasonable Rate*" shall mean appropriate compensation to the patent holder for the practice of an Essential Patent Claim excluding the value, if any, resulting from the inclusion of that Essential Patent Claim's technology in the IEEE Standard. In addition, determination of such Reasonable Rates should include, but need not be limited to, the consideration of:

• The value that the functionality of the claimed invention or inventive feature within the Essential Patent Claim contributes to the value of the relevant functionality of the smallest saleable Compliant Implementation that practices the Essential Patent Claim.

• The value that the Essential Patent Claim contributes to the smallest saleable Compliant Implementation that practices that claim, in light of the value contributed by all Essential Patent Claims for the same IEEE Standard practiced in that Compliant Implementation.

• Existing licenses covering use of the Essential Patent Claim, where such licenses were not obtained under the explicit or implicit threat of a Prohibitive Order, and where the circumstances and resulting licenses are otherwise sufficiently comparable to the circumstances of the contemplated license.

"*Reciprocal Licensing*" shall mean that the Submitter of an LOA has conditioned its granting of a license for its Essential Patent Claims upon the Applicant's agreement to grant a license to the Submitter with Reasonable Rates and other reasonable licensing terms and conditions to the Applicant's Essential Patent Claims, if any, for the referenced IEEE Standard, including any amendments, corrigenda, editions, and revisions. If an LOA references an amendment or corrigendum, the scope of reciprocity includes the base IEEE Standard and its amendments, corrigenda, editions, and revisions.

"*Statement of Encumbrance*" shall mean a specific reference to an Accepted LOA or a general statement in the transfer or assignment agreement that the Patent Claim(s) being transferred or assigned are subject to any encumbrances that may exist as of the effective date of such agreement. An Accepted LOA is an encumbrance.

"*Submitter*" shall mean an individual or an organization that provides a completed Letter of Assurance. A Submitter may or may not hold Essential Patent Claims. "*Submitter*" shall include all of its Affiliates unless specifically and permissibly excluded.

*Should any discrepancy exist between the definitions above and the definitions in the IEEE-SA Standards Board Bylaws clause 6.1, the definitions contained in the Bylaws shall control.*

EFiled: Oct 31 2024 11:26PM EDT
Transaction ID 74924134
Case No. 2024-1127-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION, | |
| Plaintiff, | C.A. No. |
| v. | |
| AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD., BROADCOM CORPORATION, and BROADCOM INC., | |
| Defendants. | |

## DECLARATION OF HSIEH-HSING KUO

In accordance with the Delaware Uniform Unsworn Foreign Declarations Act, 10 *Del. C.* § 5356, I, Hsieh-Hsing Kuo, Senior Chief Officer of Communication Network Business Group BU V, an authorized signatory of Realtek Semiconductor Corporation, Plaintiff in the above-referenced matter, declare under penalty of perjury under the law of Delaware that:

1.    I have read the foregoing Verified Complaint and the statements set forth therein are, to the best of my knowledge, information, and belief, true and correct; and

2.    I am physically located outside the geographic boundaries of the United States, Puerto Rico, the United States Virgin Islands, and any territory or insular

possession subject to the jurisdiction of the United States.


Executed on the 1st day of November, 2024 at HsinChu, Taiwan.


_____ Hsieh-Hsing Kuo_____
Printed name


_Hsieh Hsing Kuo_
Signature

EFiled:  Oct 31 2024 11:26PM EDT
Transaction ID 74924134
Case No. 2024-1127-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

REALTEK SEMICONDUCTOR
CORPORATION,

        Plaintiff,

    v.

AVAGO TECHNOLOGIES
INTERNATIONAL SALES PTE.
LTD., BROADCOM
CORPORATION, and BROADCOM
INC.,

        Defendants.

C.A. No.

## [PROPOSED] ORDER GRANTING
## PLAINTIFF'S MOTION FOR EXPEDITED PROCEEDINGS

The Court having considered Plaintiff's Motion for Expedited Proceedings
(the "Motion"), and having found good cause thereof,

IT IS HEREBY ORDERED this ____ day of _____, 2024:

1.    Plaintiffs' Motion is GRANTED; and

2.    The parties shall meet and confer, and confer with Court staff, regarding
an expedited schedule in this matter and, within seven (7) calendar days, present the
Court with a proposed schedule, or, if the parties cannot agree to a schedule, separate
proposed schedules, culminating in a trial on the merits before February 20, 2025.

 

_____
Chancellor/ Vice Chancellor

EFiled:  Oct 31 2024 11:26PM EDT
Transaction ID 74924134
Case No. 2024-1127-

# K&L GATES

October 31, 2024

Steven L. Caponi, Esq.
steven.caponi@klgates.com
T 302-416-7080

**VIA ELECTRONIC FILING**

Register in Chancery
Court of Chancery
500 North King Street
Wilmington, DE 19801

**Re:** *Realtek Semiconductor Corporation v. Avago Technologies International Sales Pte. Ltd., et al.*

Dear Register in Chancery,

This firm represents plaintiff Realtek Semiconductor Corporation ("Plaintiff") in the above-referenced matter.  Filed concurrently with this letter is Plaintiff's Verified Complaint (the "Complaint") and related documents.  Our office will prepare and submit for your approval a summons for service of the Complaint and related documents on the following Defendant pursuant to 10 *Del. C.* § 3104 to be served by U.S. Certified Mail with return receipt and pursuant to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial documents in Civil or Commercial Matters Article 10(a), November 15, 1965, 20 U.S.T. 361,658 U.N.T.S. 163:

Avago Technologies International Sales Pte. Ltd. as successor to
Avago Technologies General IP (Singapore) Pte. Ltd.
c/o Avago Technologies
Suite F-200
Intellectual Property Licensing Division, Room 10C-231D
Attention:  VP & General Manager, IP Licensing Division
1110 American Parkway NE
Allentown, PA 18109-9137

*and*

Avago Technologies International Sales Pte. Ltd.
1 Yishun Avenue 7
Singapore 768923

Our office will also prepare and submit for your approval summonses for service of the Complaint on the following Defendant pursuant to 10 *Del. C.* § 3104 to be served by U.S. Certified Mail with return receipt:

Broadcom Corporation
3421 Hillview Avenue
Pal Alto, California 94304

Our office will prepare and submit for your approval a summons for service of the Complaint and related documents on the following Defendant pursuant to 8 *Del. C.* § 321 to be served by special process server, Parcels, Inc.:

Broadcom Inc.
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

If you need any additional information or have any questions, please do not hesitate to contact me.

Respectfully submitted,

*/s/ Steven L. Caponi*

Steven L. Caponi (No. 3484)

Words: 266/1,000

EFiled:  Oct 31 2024 11:26PM EDT
Transaction ID 74924134
Case No. 2024-1127-

SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(A)
OF THE RULES OF THE COURT OF CHANCERY

The information contained herein is for the use by the Court for statistical and administrative purposes. Nothing in this document shall be deemed binding for purposes of the merits of the case.

1. Case caption: *Realtek Semiconductor Corporation v. Avago Technologies International Sales Pte. Ltd., Broadcom Corporation, and Broadcom Inc.*

2. Date filed: October 31, 2024

3. Name and address of counsel for plaintiff(s):      K&L GATES LLP
Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
600 King Street, Suite 901
Wilmington, DE 19801

4. Short statement and nature of claim(s) asserted: This case seeks an award of injunctive relief under 10 *Del. C.* § 341 to prevent continuous breaches of a contract and to resolve contractual disputes and tort claims relating to a license agreement with a Delaware forum selection clause.

5. Substantive field of law involved (check one):

| | | |
|---|---|---|
| ____Administrative law | ____Labor law | ____Trusts, Wills and Estates |
| ____ Commercial law | ____Real Property | ____Consent trust petitions |
| ____Constitutional law | ____348 Deed Restriction | ____Partition |
| ____Corporation law | ____Zoning | ____Rapid Arbitration (Rules 96,97) |
| _X_ Trade secrets/trade mark/or other intellectual property | ____Other | |

6. Identify any related cases, including any Register of Wills matter.  This question is intended to promote jurisdiction efficiency by assigning cases involving similar parties or issues to a single judicial officer.  By signing this form, an attorney represents that the attorney has done reasonable diligence sufficient to respond to this question. **n/a**

7.  State all bases for the court's exercise of subject matter jurisdiction by citing to the relevant statute.  Specify if 8 *Del. C.* § 111, 6 *Del. C.* § 17-111, or 6 *Del. C.* § 18-111.  State if the case seeks monetary relief, even if secondarily or in the alternative, under a merger agreement, asset purchase agreement, or equity purchase agreement. 10 *Del. C.* § 341

8. If the complaint initiates a summary proceeding under Sections 8 *Del. C.* §§ 145(k), 205, 211(c), 220, or comparable statutes, check here ___.  (If #8 is checked, you must either (i) file a motion to expedite with a proposed form of order identifying the schedule requested or (ii) submit a letter stating that you do not seek an expedited schedule and the reason(s)—e.g., you have filed to preserve standing and do not seek immediate relief.) **n/a**

9. If the complaint is accompanied by a request for a temporary restraining order, a preliminary injunction, a status quo order, or expedited proceedings other than in a summary proceeding, check here **X**.  (If #9 is checked, a motion to expedite <u>must</u> accompany the transaction with a proposed form of order identifying the schedule requested.)

10.   If counsel believe that the case should not be assigned to a Magistrate in the first instance, check here and attach a statement of good cause. **X**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION, | |
| Plaintiff, | C.A. No. |
| v. | |
| AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD., BROADCOM CORPORATION, and BROADCOM INC., | |
| Defendants. | |

## STATEMENT OF GOOD CAUSE

It is the opinion of counsel for Plaintiff that this action should not be assigned to a Master in the first instance. This is an action relating to breaches of contract, tortious interference with contract, declaratory judgment that should be decided promptly by the Court. Plaintiff has also filed a motion for expedited proceedings concurrently with the complaint. This action, therefore, should proceed directly before the Chancellor or a Vice Chancellor of this Court.

Dated: October 31, 2024

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
600 King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steve.caponi@klgates.com
megan.hunt@klgates.com

*Counsel for Plaintiff*

EFiled:  Nov 07 2024 04:30PM EST
Transaction ID 74967542
Case No. 2024-1127-NAC

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION, | |
| Plaintiff, | C.A. No. 2024-1127-NAC |
| v. | **PUBLIC VERSION FILED NOVEMBER 7, 2024** |
| AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD., BROADCOM CORPORATION, and BROADCOM INC., | |
| Defendants. | |

## VERIFIED COMPLAINT

Plaintiff Realtek Semiconductor Corporation ("Realtek" or "Plaintiff"), by way of its Complaint against defendants, Avago Technologies International Sales Pte. Ltd. ("Avago Sales"), Broadcom Corporation ("Broadcom Corp."), and Broadcom Inc. ("BCI," collectively "Defendants") alleges as follows:

## NATURE OF ACTION

1.    This action involves Defendants' breach of the confidential Settlement and Patent License Agreement ("License Agreement") between Realtek and the predecessor to Avago Sales, Avago Technologies General IP (Singapore) Pte. Ltd. ("Avago General IP").  As discussed in detail below, and as BCI's annual reports confirm, BCI controls and directs all the activities of Broadcom Corp., Avago Sales,

and their affiliates, and all actions that BCI's affiliates (including Avago Sales and Broadcom Corp.) undertake are undertaken jointly and severally with BCI.

2.    Avago Sales—as successor to Avago General IP—brought patent infringement claims in Germany against one of Realtek's customers, ███ alleging that ███ use of Realtek-provided technology infringes Avago Sales' patents. Realtek's products, however, are licensed under the License Agreement, which means that ███ products are authorized under Avago Sales' patents.

3.    Realtek is informed and believes that Defendants deny that the patents they asserted against ███ are licensed to Realtek.

4.    Realtek has tried to obtain judicial clarification regarding the scope of the License Agreement, but its prior efforts ended without a resolution on the merits.

5.    In the meantime, Defendants have developed and are selling large quantities of products that use Realtek's patented technology, as Realtek demonstrated (in part) in recent proceedings before the International Trade Commission.  In other words, Defendants are using Realtek's patented technology and are authorized under Realtek's views of the License Agreement while suing Realtek's customers under Defendants' view that Realtek products are not authorized under the License Agreement.  Defendants cannot have it both ways.

6.    Defendants' duplicity has reached a critical point because Avago Sales is seeking an injunction that will freeze ███ sales in Europe ███████

██████████████████████████.  The German courts are set to issue a ruling by February 20, 2025.  Realtek therefore seeks expedited proceedings aimed at securing an injunction that will prohibit Defendants' from causing irreparable harm to Realtek and its customers.

7.      Defendants' misconduct extends beyond the License Agreement.  Even if Realtek's and its customers' products were not licensed (and Realtek's position is that they are licensed), Defendants have an obligation to license their patents on a "reasonable and non-discriminatory" ("RAND") basis. Defendants have RAND licensing obligations because they identified the patents asserted against█████as essential to the 802.3 standards related to Ethernet, promulgated by the Institute of Electrical and Electronics Engineers Standards Association ("IEEE").  Specifically, they executed "letters of assurance" pledging to provide RAND licenses to all who requested them.  Thus far, they have refused.

8.      Realtek asked for a RAND license to Defendants' patents in 2015, but Defendants failed to offer one.  They have persisted in that failure to the present day.

9.      A company that breaches its RAND obligations cannot seek an injunction against an alleged infringer.  Defendants are aware of this rule because Realtek previously sued LSI Corporation ("LSI") and Agere Systems Inc. ("Agere"), the predecessors and current subsidiaries of BCI, for the same misconduct.  Indeed, a jury in the Northern District of California awarded Realtek nearly $4 million in

3

damages due to their breach, and the court also entered a preliminary injunction prohibiting Defendants' affiliates from enforcing any injunctive relief they might receive. It did so because—as here—Defendants' affiliates brought an infringement action and continued to seek injunctive relief after Defendants' affiliates refused to provide a RAND license. It is inexcusable that Defendants continue to engage in the same misconduct.

10.    Because Defendants are seeking injunctive relief in Germany against Realtek's customers, based on Realtek-supplied technology, Realtek seeks an injunction prohibiting Defendants' ongoing breaches of the License Agreement. Realtek also brings claims for tortious interference, declaratory judgment, and breach of the obligation to offer a RAND license.

## **PARTIES**

11.    Plaintiff Realtek is a corporation organized under the laws of Taiwan with its principal place of business located at No. 2 Innovation Road II, Hsinchu Science Park, Hsinchu 300, Taiwan.

12.    Defendant Avago Sales is a Singapore private limited company with its headquarters located at 1 Yishun Avenue 7, Singapore 768923. Realtek is informed and believes that Avago Sales is a wholly owned subsidiary of defendant BCI and an affiliate of defendant Broadcom Corp. Realtek is informed and believes that Avago Sales is the successor in interest to the counterparty to the License Agreement

4

with Realtek.  Avago Sales represents that it is the owner of various patents, including European Patents 1 903 733 and 1 770 912.

13.    Defendant Broadcom Corp. is a corporation organized under the laws of California with its principal place of business located at 3421 Hillview Avenue, Pal Alto, California 94304.  Realtek is informed and believes, and on that basis alleges, that Broadcom Corp. is a wholly owned subsidiary of defendant BCI and under common ownership with Avago Sales.

14.    Defendant BCI is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 1320 Ridder Park Drive, San Jose, California 95131.

## **JURISDICTION**

15.    This Court has subject matter jurisdiction to enter injunctive relief pursuant to 10 *Del. C.* § 341.

16.    This dispute arises out of a breach of the License Agreement, and the License Agreement ██████████████████████████████ ████████████████████ Specifically, Section 8.07 of the License Agreement provides:

██████████████████
██████████████████
██████████████████
██ ██ ██ ██ ██ ██
██████████████████

5

████████████████
████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

Ex. 1 § 8.07.

17.     This Court has personal jurisdiction over Avago Sales because its predecessor, whose obligations Realtek is informed and believes Avago Sales assumed, agreed to personal jurisdiction in Delaware as a party to the License Agreement. *See id.* In addition, Avago Sales is a Singapore entity that operates abroad but has caused harm to Realtek worldwide. Through the License Agreement, Avago Sales has indicated that it consents to, and is most amenable to, jurisdiction in Delaware. Avago Sales has minimum contacts with Delaware, which is the home of the corporate parent that controls and directs its activities.

18.     This Court has personal jurisdiction over Broadcom Corp. because it is a third-party beneficiary of the License Agreement, upon which it relies to justify using Realtek's technology. Broadcom Corp. also has repeatedly availed itself of this Court's jurisdiction, including by bringing actions in this Court, such as *Broadcom Corp. v. Cox*, No. CA4519 and *Broadcom Corp. v. Edwards*, No. CA4577. Broadcom Corp.'s actions likewise have caused harm to Realtek worldwide.

19.     This Court has general personal jurisdiction over BCI because it is incorporated in Delaware.

6

████████████████████████████████████████

██████████████████████████████████

20.    In addition, BCI represents to the public that it acts collectively with its subsidiaries to bring infringement allegations related to the approximately 17,035 U.S. patents it and its affiliates collectively held as of the end of 2022.  Broadcom Inc. 2022 Annual Report at 10.  BCI, when speaking for itself and the affiliates it controls, says:  "Our success depends in part upon our ability to protect our IP."  It likewise reports that "[a] portion of our revenue comes from IP licensing royalty payments and from litigation settlements relating to such IP."  When enforcing IP rights, BCI controls the actions of the other Defendants, acts in concert with them, aids and abets their activities, and is indistinguishable from the other Defendants, which are instrumentalities of BCI and agents/principals of one another.  As discussed in part in this Complaint, Defendants have assumed all relevant obligations of one another and engaged collectively in the actions recited in this Complaint.

## **FACTS**

### **(The Litigation and Negotiations that Led to the License Agreement)**

21.    The litigation that gave rise to the License Agreement arose in response to a complaint that LSI, and its wholly owned subsidiary Agere, filed in the ITC, on March 11, 2012.  LSI and Agere sued Realtek and 8 other companies, alleging infringement of two patents that LSI identified as essential to the IEEE 802.11 Wi-Fi standards.  On March 7, 2012, LSI/Agere sent a letter alleging that Realtek

products, as incorporated into certain third-party devices, infringed the two patents. Less than a week later, LSI filed a complaint in the ITC alleging that Realtek infringed the two identified patents.  In that litigation, LSI/Agere asked the ITC to award an injunction banning all of Realtek's integrated circuits from the U.S. and prohibiting Realtek from selling any integrated circuit already in the United States.

22.    Realtek responded to LSI/Agere's March 7, 2012 letter on May 24, 2012.  In its response, it asked LSI/Agere to provide a license on RAND terms.  It was not until June 20, 2012, that LSI/Agere purported to provide RAND license terms, but the terms provided exceeded the selling price of Realtek's products. Realtek was informed and believed that LSI/Agere's proposed license was quite different than the license it offered to other component manufacturers.

23.    On June 29, 2012, Realtek sued LSI/Agere alleging that they had failed to license certain patents that were essential to the 802.11 Wi-Fi standards on RAND terms.  *See* Original Complaint, Case No. CV-12-3451 (N.D. Cal. June 29, 2012). Specifically, Realtek sued to obtain an injunction preventing LSI and Agere from enforcing any injunction they obtained in the ITC because they failed to offer Realtek a RAND license to their Wi-Fi essential patents before filing a complaint in the ITC.

24.    On May 20, 2013, the District Court granted partial summary judgment in Realtek's favor, concluding that "defendants breached their contractual

8

obligations to IEEE and to Realtek as a third-party beneficiary of that contract by seeking injunctive relief against Realtek before offering Realtek a license. . . . . This conduct is a clear attempt to gain leverage in future licensing negotiations and is improper." Order Granting Plaintiff Realtek Semiconductor Corp.'s Mot. for Partial Summ. Judg. And Denying Defendants' LSI Corp. and Agere Sys. LLC's Mot. to Stay at 11, D.E. 102 (N.D. Cal. May 20, 2013).

25.    The Court further granted Realtek's request for a preliminary injunction preventing defendants from enforcing any exclusion order or other injunctive relief the ITC might issue. *Id.* at 14.

26.    On May 6, 2014, Avago Technologies Limited announced that it had completed its acquisition of LSI Corp. Thus, the named defendants, LSI and Agere, became part of Avago Technologies Ltd. (Avago Technologies Ltd. is the predecessor in interest to Defendant BCI.)

27.    The litigation continued, and in February 2014, the U.S. District Court for the N.D. California conducted a jury trial to determine damages for LSI/Avago's breach of its obligations to license its patents on RAND terms. The jury awarded Realtek almost $4 million in damages and established the reasonable royalty rates for the two patents. The royalty rates it set for the 802.11 Wi-Fi patents were significantly lower than the rates LSI/Avago requested.

28.    On June 16, 2014, the court granted Realtek's motion for declaratory relief against LSI and Agere, requiring defendants "upon Realtek's request for a license, to be in compliance with its RAND commitment[s]" and, accordingly, to offer a license to the disputed patents "on RAND terms."  Order Den. Permanent Inj. & Granting Decl. Relief at 11-12:21-2 (N.D. Cal. June 16, 2014).   The court identified the specific royalty rates that constituted RAND terms for the two patents, as determined by the jury:  0.12% for one patent and 0.07% for the other.

29.    The jury's verdict, the declaratory judgment, Defendants' failure to prove infringement before the ITC, and the pendency of other disputes between the parties, prompted the parties to explore settlement.  Those discussions substantively began in approximately August 2014.

30.    ██████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████

31.    Realtek's counsel and Defendants' counsel held numerous discussions about the scope of the license and their understanding ████████████████████

███████████████████████████

32.    They ultimately entered into an agreement, which included a License Grant through which the parties licensed—█████████████████████████

█████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████

33.     Defendants' counsel primarily drafted the agreement and was responsible for the language included in the License Agreement designed to reflect the parties' agreement.

34.     Any ambiguities in the License Agreement are a result of language Defendants' counsel selected.  Realtek is informed and believes that Defendants were aware of the complex "scheme" they planned to use—which is discussed in detail below—when combining with Broadcom Corp.  Realtek is informed and believes that Defendants used their "scheme" to avoid taxes.  Realtek was unaware of the structure of the "scheme" when the parties negotiated and signed the License Agreement.

35.     Thus, Defendants alone bear the risk that their "scheme" to avoid taxation would result in Broadcom Corp. being an ██████████under the License Agreement. Defendants chose—without Realtek's knowledge—to execute a "scheme" to avoid taxation rather than undertaking an acquisition with a structure recognized under U.S. corporate law and as contemplated under the License Agreement.

**(The Terms of the License Agreement)**

36.     Under Section 3.01 of the License Agreement ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

11

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ Ex. 1 § 3.01.  The License

Agreement defines ███████████ as:



*Id.* at 13.

37.    Further the License Agreement defines "Licensed Patents" as

*Id.* at 14.

38.     The ███████████████████████████████████████, the date the License Agreement was executed.  Finally, the parties agreed that ████████████████ ████████████████████████████████████ *Id.* § 8.02(a).

**(Avago Technologies "Scheme of Arrangement" Regarding Broadcom Corp. and the Relevant License Agreement)**

39.     About 7 months after the effective date of the License Agreement, the "Scheme of Arrangement" took place.  That "scheme" was a complex set of transactions through which Avago Technologies Ltd. combined with Broadcom Corp.

40.     The provisions in the License Agreement define ███████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████

41.     Defendants have argued that Defendant Broadcom Corp.—despite being under common control with Avago Sales—is not an ████████████

42.     It is Defendants' obligation to demonstrate that ███████████████ ██████████████████████████████████████████████████

*Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).

43.     Defendants will not be able to demonstrate that Broadcom Corp. was ████████████        Instead, Realtek is informed and believes that the complex "Singaporean Scheme of Arrangement" that Defendants' lawyers concocted for tax

13

██████████████████████████████████████████████████
██████████████████████████████████

and regulatory purposes did not result ███████████████████████████████

████████████████████████████████████████████████████████.

Accordingly, Broadcom Corp. is not an ██████████████████████████████

██████████████████.

44.    Defendants have previously argued that Avago Technologies Ltd.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████.

45.    Realtek does not yet have a complete understanding of all facets of the

transaction, and it needs discovery to confirm its present understanding, but based

on the lengthy transaction documents that are publicly available, Realtek

understands that neither Avago General IP, nor any of its affiliates, ████████

█████████████████████████████████████████████ as part of the

"scheme."

46.    To the contrary, those shares (believed to be held by Broadcom Corp.'s

shareholders) were cancelled and replaced with shares of another company, which

was not an ████████████ at the time of the transactions.  Broadcom Corp. only

became affiliated with Avago General IP, and its affiliates, after the "scheme" was

complete, in a transaction that did not involve any separate consideration, which

14

████████████████████████████████████████████████

████████████████████████████████████████

means ████████████████████████████████████████████████████

██████████████████. As a result, Broadcom Corp. is not an █████████████████.

     47.    On May 28, 2015, a group of companies entered into an "Agreement

and Plan of Merger" ("Merger Plan") which detailed a Singaporean "scheme of

arrangement."

     48.    The "scheme of arrangement," among other things, sets forth the timing

of certain future events that comprise the subject combination:

> At the Avago Effective Time . . . all of the issued Avago Ordinary Shares will be transferred from the holders of such issued Avago Ordinary Shares . . . to Finance Holdco. *Id.*, § 2.1.

> At or immediately after the Avago Effective Time, Avago shall cause Holdco to, and Holdco shall, deposit . . . for the account and benefit of the former holders of Avago Ordinary Shares . . . shares representing the full number of Holdco Ordinary Shares issuable pursuant to Section 2.1 in exchange for outstanding Avago Ordinary Shares, *id.*, §2.10(a), thereby providing each former owner of Avago Ordinary Shares with Holdco Ordinary Shares, and immediately cancelling all received shares, *id*.

> At the Cash/Stock Effective Time . . . Cash/Stock Merger Sub shall be merged with and into Broadcom [Corp.] . . . the separate corporate existence of Cash/Stock Merger Sub shall cease and Broadcom [Corp.] shall continue as the surviving corporation and as an indirect wholly-owned Subsidiary of Holdco and a direct, wholly-owned Subsidiary of Lower Holdco." *Id.,* § 2.2.

> At the Unit Effective Time . . . Unit Merger Sub shall be
> merged with and into Broadcom . . . the separate
> corporate existence of Unit Merger Sub shall cease and
> Broadcom shall continue as the surviving corporation and
> as a wholly owned subsidiary of Lower Holdco." *Id.,* §
> 2.3.

49.     After these transactions, Broadcom Corp. existed as the surviving entity of the Cash/Stock and Unit Mergers, and it was to operate "as a wholly owned subsidiary of Lower Holdco." *Id.*, § 2.2.  On information and belief, Broadcom Corp.'s **stockholders** ultimately could elect to receive cash or ordinary shares in Holdco.  Upon information and belief, there are no public records of any exchange of consideration.

50.     Before the Cash/Stock Effective Time (and before there had been any swap of Broadcom Corp. shares), Realtek is informed and believes that the following was the corporate structure of the relevant merger-created entities, with none of those entities ███████████████████████████████████████████

███████████████████████████████████████████



51.    After the Unit Effective Time, which occurred after the ███████

███████████████████ and which is the final event in the merger chain,

Realtek is informed and believes that Unit Merger Sub and Cash/Stock Merger Sub

merged into Broadcom Corp.  Realtek is informed and believes that the corporate

structure was transformed to the following, with Broadcom Corp. becoming a

subsidiary, albeit indirect, of Holdco, i.e., Pavonia Ltd., resulting in the new

corporate structure set forth below:



52.    Again, Realtek is informed and believes that, as of the Unit Effective Time, not one of these companies was an ███████████████████████

53.    The "business combination" addressed above was completed—and thus the various "Effective Time[s]" discussed above—were all completed no earlier than February 1, 2016.  As the merger documents state, the business combination was completed on February 1, 2016.

54.    Realtek is informed and believes that this scheme of arrangement caused shareholders of Avago Technologies Ltd. to have their ordinary shares cancelled, and they received shares of Pavonia (aka Holdco), and there is no

18

evidence that either Avago Technologies Ltd. or Avago General IP ███████████

of any of the entities listed above as of the Unit Effective Time.

55.     Realtek is informed and believes that only ***after*** the completion of all

of the transactions above, including the Unit Effective Time, did Broadcom Limited

become the successor in interest to Avago Technologies Ltd., through an

undisclosed corporate restructuring.

56.     Realtek is informed and believes that such restructuring did not involve

any consideration between Avago Technologies Ltd. and Pavonia (aka Holdco).

Indeed, Realtek is informed and believes that ***no such consideration was reported***

***in any annual report***.  Without any consideration, and as part of a corporate

restructuring, the "scheme of arrangement" ███████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████The transaction that

led to the affiliation between Broadcom Corp., on the one hand, and Avago General

IP and its affiliates, on the other hand, ███████████████████████████████

█████████████████████████████████

19

████████████████████████████████████████████████████

██████████████████████████████████████

57.    Realtek is informed and believes that Pavonia (Holdco) ultimately changed its name to Broadcom Limited, which Realtek is informed and believes became the successor in interest to Avago Technologies Ltd. through the $0 corporate reorganization discussed above.  Realtek is informed and believes that, in 2018, Broadcom Ltd. changed its name to Broadcom Inc., which is Defendant BCI.

58.    In sum, although BCI, as the successor to Avago Technologies Ltd., did indeed become the ultimate parent of Broadcom Corp., it was not via an ███████████ of Broadcom Corp. by Avago Technologies Ltd. (or any ██████████ thereof) as the timeline below shows:



59.    Broadcom Corp. was not ██████████ by Avago General IP or an ██████████ thereof.

60.    Because LSI/Avago/Broadcom chose to utilize a complicated Singaporean "scheme of arrangement" that created a gap in mutual ownership during

the combination, evidently to avoid U.S. and foreign taxes and regulatory requirements, Realtek is informed and believes that ████████████████████

████████████████████████████████████████

████████████████████████ Instead, the License Agreement excludes acquisitions conducted under U.S. corporate procedures rather than a complex transaction executed under a Singaporean "scheme of arrangement" that occurred between shareholders likely to avoid U.S. and international taxes.

61.    Accordingly, Defendants will not be able to show that this complex foreign scheme renders Broadcom Corp. an ████████████████████ ████████████████ between Realtek, on the one hand, and Avago General IP and its affiliates, on the other hand, pursuant to the License Agreement. Broadcom Corp. ████████████████████████████████ ████████████████ after the Unit Effective Time, through a transaction that the ████████████████████████████ to Broadcom Corp.

62.    The negotiation history of the License Agreement confirms this conclusion. ████████████████████████

████████████████████████████████████████

██████████████████████████████████████.

Discovery will reveal the discussions between the parties regarding the various

21

██████████████████████████████████████ Discovery will also

identify the ████████████████████████████████████████████

██████████████████████████████

**(Avago Sales is Created and Accepts Assignment of the License Agreement)**

63.    There is a second, and separate reason that Broadcom Corp. is a

█████████████ under the License Agreement.

64.    Following the Singaporean scheme of arrangement, and the subsequent

transaction through which Broadcom Corp. and Avago Technologies Ltd. (later

BCI) became affiliated, BCI went through another reorganization.

65.    Realtek lacks the details of such reorganization, but on information and

belief, the reorganization involved the creation of a new entity, Avago Sales, as a

wholly owned subsidiary of BCI, and the dissolution of Avago General IP.

66.    Realtek does not know when Avago Sales was created, and when (on

information and belief) BCI chose to dissolve Avago General IP.  But Avago

General IP filed briefs in U.S. District Court in Delaware in late 2017, which

suggests that it was still a going concern at that time.

67.    Upon information and belief, after late 2017, Avago General IP

assigned its rights and obligations, including various patents and—on information

and belief—the License Agreement to the newly created entity, Avago Sales.

22

████████████████████████████████████████

██████████████████████████████████

68.     As part of the reorganization, or sometime afterward, Realtek is informed and believes that BCI caused its other wholly owned subsidiary, Broadcom Corp., to assign its Patents to Avago Sales.  Realtek is informed and believes that ███████████████████████████████████████████

69.     The License Agreement provides ███████████████████████ █████████████████████     Accordingly, all of their (and their ██████████ patents in existence ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████

70.     Thus, even if Broadcom Corp. was an ████████████████ with respect to Avago General IP, it was *not* an ████████████████Avago Sales.  Broadcom Corp. was a ████████████ at the time BCI caused the assignment of the License Agreement to Avago Sales, which means that Avago Sales' patents and Broadcom Corp.'s patents all were licensed to Realtek as of the date BCI caused Avago General IP to assign the License Agreement to Avago Sales.

71.     Realtek is informed and believes that Defendants caused this assignment through a joint, knowing, and concerted decision to have Avago Sales

███████████████████████████████████████
████████████████████████████████████

accept—on all of their behalf—the terms of the License Agreement as of the date of assignment.

72.    As of the time of the assignment, Defendants had actual knowledge of Realtek's position that it holds a license to all patents that Broadcom Corp. originally owned, which now on information and belief, Avago Sales owns.  Realtek explained that position during litigation brought in U.S. District Court for the District of Delaware in 2017, which is discussed below, and in proceedings Realtek initiated before the ITC in 2022, which also are discussed below.

**(Avago Sales Sues██ for Patent Infringement)**

73.    ██is a Realtek customer that uses Realtek's integrated circuits in its ██  In April/May of 2024, Avago Sales sued ██ in the Unified Patent Court ("UPC") in Germany, and in German courts, for patent infringement.  The basis for ██ alleged infringement is ██use of Realtek integrated circuits in ██ vehicles.

74.    Avago Sales has requested injunctions, and the German courts will determine whether to grant the requested injunctions on February 20, 2025.

75.    As indicated, Avago Sales' infringement claims are improper because Realtek has a license to the asserted patents.  Avago Sales inappropriately sued ██ in the UPC despite Realtek's valid license.

76.     Realtek is informed and believes that ███████informed Avago Sales that the allegedly infringing technology comes from Realtek and is licensed.  Realtek is informed and believes that Avago Sales never contacted Realtek to dispute the assertion of a license or—if it believed Realtek's technology was not licensed—to offer a license Realtek a license on RAND terms.

77.     If ███████is found to infringe the patents, the consequences will be severe.  The resulting injunction could likely halt ███████ sales in Europe and decimate ███████ supply chains that involve Realtek's products.  This could likely cause immense harm to ███████and destroy Realtek's relationship with ███████and ███████supply chain.

**(Prior Proceedings Before the U.S. District Court for the District of Delaware Involving the License Agreement)**

78.     Realtek previously attempted to obtain judicial clarification of the scope of the License Agreement when Defendants threatened (as they are again threatening) Realtek's customers.

79.     For example, in May and June 2016, Avago General IP, Avago Sales, and/or Broadcom Corp. communicated with Realtek's customers███████ and ███ and accused them of infringing Broadcom Corp.'s patents by selling and using products that include integrated circuits provided by Realtek.

---

1 ████████████████████████

████████████████████████████████
████████████████████████████

80.    Upon investigation, Realtek learned of the Singaporean "scheme of arrangement" and discovered that it held a license to Broadcom Corp.'s patents pursuant to the terms of the License Agreement.

81.    Accordingly, as of at least August 2016, Realtek began informing its customers that Realtek's products were licensed.

82.    Upon information and belief, Realtek's customers informed Broadcom Corp. (and later Avago Sales) of Realtek's position that its products are licensed. Broadcom Corp. was also aware, due to its discussions directly with Realtek, that Realtek's integrated circuits practiced various 802.3 standards.

83.    Realtek and its customers relied on their understanding that Realtek's products were licensed to the Broadcom Corp. patents pursuant to the License Agreement.  Realtek and its customers made purchase and sales decisions, expended significant resources designing their products to include Realtek integrated circuits, and developed supply chains and product strategies based on those decisions.

84.    On March 7, 2017, Avago General IP and/or Broadcom Corp. initiated an action in the ITC alleging that LG Electronics infringed five patents by using Realtek integrated circuits in its products.

85.    After it learned that Defendants were continuing to threaten Realtek's customers, Realtek contacted Avago General IP and Broadcom Corp. and explained

that the accused products were licensed, and they should drop the asserted infringement claims, but Broadcom Corp. disagreed.

86.    Realtek therefore filed, on August 8, 2017, complaints in the U.S. District Court against, respectively, Avago General IP and Broadcom Corp. to affirm its rights under the License Agreement.  Realtek alleged breach of contract, breach of the implied duty of good faith and fair dealing, tortious interference with contract and business relations, and Realtek also sought declaratory judgment.

87.    In its complaints, Realtek again made clear its belief that its products were licensed to the Broadcom Corp. products pursuant to the License Agreement.

88.    On December 19, 2017, the District Court dismissed both actions for lack of subject matter jurisdiction without resolving the substantive dispute on Realtek's rights under the License Agreement.  Regardless, Defendants were again on notice of Realtek's belief that its products were licensed, that it was informing its customers that its products were licensed, and that Realtek and its customers were acting accordingly.

89.    Neither Broadcom Corp. nor Avago Sales took any legal action to contest Realtek's assertion until filing suit against ██████ 7 years later in 2024, even though they knew that Realtek's products practiced the IEEE 802.3 standards, and Realtek's position was that its products were licensed to Defendants' patents, and Realtek and its customers had invested, and would continue to invest, immense

27

resources developing products that practiced the standard and working with customers to allow Realtek's integrated circuits to be used in their products.

**(Prior Proceedings Before the International Trade Commission Involving the License Agreement)**

90.    On December 12, 2022, Realtek filed a complaint with the ITC against Advanced Micro Devices Inc. ("AMD"). The complaint alleged that AMD infringed three of Realtek's patents.

91.    Realtek's complaint also contained allegations regarding the License Agreement because Realtek relied on Defendants' licensed use of Realtek's technology to satisfy the "Domestic Industry" requirement. In particular, Defendants alleged that BCI, as Realtek's licensee, was using Realtek's patented technology pursuant to its rights under the License Agreement.

92.    An Administrative Law Judge ("ALJ") ultimately determined that Broadcom Corp. *was* using Realtek's patented technology. For example, in the public version of the Initial Determination issued on January 19, 2024, the ALJ found (on pages 43-45) that Broadcom Corp.'s BCM4387 and BCM4389 chips practice claims 1, 2, and 8 of Realtek's U.S. Patent No. 7,935,245 ("the '245 patent"). He likewise found (on pages 115-22) that those products practice claims 12, 13, and 15-18 of Realtek's U.S. Patent No. 8,006,218 ("the'218 patent"). In addition, he found (on pages 193-197) that Broadcom Corp.'s products practice claims 1-3 of Realtek's U.S. Patent No. 9,590,582 ("the '582 patent").

93.    On information and belief, Defendants use not only the patented technology in the '245, '218, and '582 patents, but also make, use, and sell a wide range of products that use Realtek's technology protected by other Realtek patents.

94.    Realtek has consistently taken the position that Defendants' products are licensed pursuant to the License Agreement.

95.    The ALJ adopted Realtek's arguments in part, concluding that some of Broadcom Corp.'s products are licensed, and others are not.  Specifically, the ALJ ruled that BCI and Broadcom Corp. do not have licenses to Realtek's patents, but Avago Sales does have a license.  Thus, when Avago Sales' sells products that BCI and Broadcom Corp. design, make, or use, those sales are licensed.

96.    Upon information and belief, that conclusion is contrary to Defendants' views regarding the scope of the License Agreement.  Realtek is informed and believes, and on that basis alleges, that Defendants do not agree with the ALJ's conclusions about the scope of the License Agreement.

97.    Realtek likewise disagrees with the ALJ's conclusions.  For example, the ALJ's conclusions could create the untenable and irrational situation in which BCI and Broadcom Corp.—if not █████████████—are infringing Realtek's patents but can circumvent that infringement by using ████████████
██████████████████████████████
████████████████

98.    The ALJ's interpretation of the License Agreement has no preclusive effect because the ITC determined that it would review the ALJ's conclusions and holdings regarding the scope of the License Agreement.  And while the review process was ongoing, AMD and Realtek reached a settlement.  The ITC therefore terminated the Investigation.

99.    In an abundance of caution, however, Realtek intends to appeal the ALJ's rulings regarding the scope of the license, among other issues.

100.    The dispute between Realtek and Broadcom Corp. regarding the scope of the License Agreement remains unresolved despite repeated efforts to address it. The pending litigation against ▇▇▇ is at least the third occasion in which Realtek and Defendants have been involved in a dispute regarding the scope of the parties' rights under the License Agreement.

101.    As outlined above, since at least 2016, Realtek has repeatedly asserted its rights to the Broadcom Corp. patents pursuant to the License Agreement both in communications to Realtek's' customers, which are believed to have been communicated to Broadcom Corp., and in its 2017 lawsuit. For at least 7 years, neither Broadcom Corp. nor Avago Sales had taken any legal action to contest Realtek's assertion, even as they encouraged (through their inaction) Realtek to expend resources working with customers to incorporate Realtek's integrated

circuits that conform to IEEE standards into their products and to create a supply chain that would satisfy their customers' needs.

102.    This Court's assistance is needed to bring clarity because (on information and belief) Defendants, Realtek, and the ITC ALJ have all reached different conclusions regarding the scope of the License Agreement.

103.    Resolution is urgent because Realtek and its customers, including ██████ are threatened with irreparable harm in the form of disruptions to their supply chains, elimination of their ability to sell products in Europe, and Realtek's loss of a beneficial relationship with ██████

**(Broadcom Corp.'s and Avago Sales's Refusal to Comply with its RAND Obligations – Overview of Standards Setting Organizations, the IEEE and the 802.3 Standards)**

104.    Defendants made contractual commitments to license their patents that are essential to the IEEE's 802.3 standards on RAND terms.

105.    The IEEE is a standards setting organization (also known as a standards development organization) for a broad range of technologies, including electric power and energy, telecommunications, and consumer electronics.  It "is the world's largest technical professional organization dedicated to advancing technology for the benefit of humanity" and its "core purpose is to foster technological innovation

and excellence for the benefit of humanity."  The IEEE "has a global presence with seven offices internationally."[2]

106.   Standards, such as the 802.3 standards at issue here, are essential to guarantying interoperability across different companies' products, while also enabling product differentiation and industry competition.

107.   The IEEE's 802.3 standards relate to Ethernet, which is a family of wired, as opposed to wireless, computer networking technologies commonly used in local area networks, metropolitan area networks and wide area networks.  The 802.3 standards define the physical layer and data link layer's media access control ("MAC") of wired Ethernet.  Wired technologies are generally considered less valuable than wireless standards under 802.11, but they are nonetheless important in several industries.

108.   As discussed below, Ethernet has become an important technology in the automotive industry as it offers various benefits compared to traditional automotive networking protocols.

109.   The original 802.3 standards were released in 1983, with numerous subsequent updated versions (denoted alphanumerically as 802.3a, 802.3b, 802.3c, etc.) up to the most recent version, 802.3df in 2024.

---

[2] https://www.ieee.org/about/vision-mission.html.

110.    On the importance of standards, such as the 802.3 standards, the IEEE has explained:

> Providing a common global language for product development, standards make it possible for cell phones to communicate with each other anywhere in the world, for bank cards to fit into any cash machine, for consumers to buy a light bulb for just about any lamp in any store, and for them to be able to plug that lamp into an electrical outlet.[3]

111.    However, standards often require the use of patented intellectual property to implement.  Those patents are referred to as "essential" patents because the patented technology is essential to implementing the standard.  There is a risk, then, that the holders of those essential patents can engage in what is known as "patent holdup."

112.    Patent holdup occurs where, after a standard is adopted and compliant products are produced, a patent holder asserts rights over technology covered by the standard.  Generally, the royalties a patent holder can charge are constrained by the availability of alternative technical solutions for performing the same function.  However, once a standard mandates the use of a particular patented technology, other technical options are no longer feasible alternatives, giving the patent holder

---

[3]                        https://innovationatwork.ieee.org/why-technical-standards-are-essential-in-productdevelopment/.

near monopolistic leverage to demand excessive royalties that do not reflect the true value of the technology.

113.   This issue is compounded for companies like Realtek that invest heavily in creating innovative products that align with the technical standard. Even if an alternative standard were available, the expense and disruption of transitioning to it often make switching impractical, leading to "lock-in," where companies are bound to produce and sell products that meet the existing standard. The public's reliance on standards-compliant products further solidifies this lock-in effect, as moving to alternative, non-infringing options becomes costly and difficult. This high switching cost applies across all elements of the standard, even for those components with minimal impact on the overall functionality of the standard-compliant product.

114.   Accordingly, to facilitate industry-wide adoption of standards, while also mitigating against anti-competitive patent hold-up, standards setting organizations, like IEEE, employ various licensing frameworks to balance the rights of the patent holders with the benefits of standardization.

115.   The IEEE uses a licensing framework that relies on contractual commitments from essential patent holders to license those essential patents on RAND terms.

**(Broadcom Corp.'s and Avago Sales's Letters of Assurance Committing to License all of their 802.3 Essential Patents on RAND Terms)**

116.   To bind essential patent holders to their RAND obligations, the IEEE requires those patent holders to submit letters of assurance ("LOAs") containing, in pertinent part:

> b) A statement that the Submitter will make available a license for Essential Patent Claims to an unrestricted number of Applicants on a worldwide basis without compensation or *under Reasonable Rates, with other reasonable terms and conditions that are demonstrably free of any unfair discrimination* to make… any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard.

IEEE Standards Board Bylaws, § 6.1 (defining "licensing assurance").

117.   Broadcom Corp. and Avago Sales's predecessor-in-interest submitted numerous LOA's publicly declaring and committing themselves to provide licenses to 802.3 essential patents on RAND terms.

118.   On April 30, 2007, Broadcom Corp. submitted an LOA for IEEE 802.3ap ("2007 LOA") whereby it granted a license for "Backplane Ethernet" and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions to comply with the [Proposed] IEEE Standard." A true and correct copy of the 2007 LOA is attached hereto as Exhibit 2.

119. On August 8, 2008, Broadcom Corp. submitted an LOA for IEEE P802.3at whereby it granted a license for "DTE Power via the MDI Enhancements" ("2008 DTE Power LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also states that "this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above…" A true and correct copy of the 2008 DTE Power LOA is attached hereto as Exhibit 3.

120. On August 8, 2008, Broadcom Corp. also submitted an LOA for IEEE P802.3az whereby it granted a license for "Media Access Control Parameters, Physical Layers and Management Parameters for Energy-Efficient Ethernet" ("2008 Ethernet LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2008 Ethernet LOA is attached hereto as Exhibit 4.

121. On March 11, 2009, Broadcom Corp. submitted an LOA for IEEE 802.3aq whereby it granted a license for "10GBASE-LRM" ("March 2009 LOA") and committed to "grant a license under reasonable rates to an unrestricted number

of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the March 2009 LOA is attached hereto as Exhibit 5.

122.   On May 15, 2009, Broadcom Corp. submitted an LOA for IEEE P802.3av whereby it granted a license amending "IEEE 802.3-2008: Physical Layer Specifications and Management Parameters for 10Gb/s Passive Optical Networks" ("May 2009 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the May 2009 LOA is attached hereto as Exhibit 6.

123.   On September 26, 2010, Broadcom Corp. submitted an LOA for IEEE P802.3bf whereby it granted a license for "Media Access Control (MAC) service interface and management parameters to support time synchronization protocols" ("2010 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2010 LOA is attached hereto as Exhibit 7.

124.   On February 6, 2013, Broadcom Corp. submitted an LOA for IEEE P802.3bn whereby it amended its standard for the Ethernet "Physical Layer Specifications and Management Parameters for Ethernet Passive Optical Networks Protocol over Coax" ("February 2013 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the February 2013 LOA is attached hereto as Exhibit 8.

125.   On August 7, 2013, Broadcom Corp. submitted an LOA for IEEE 802.3.1 whereby it granted a license for "Management Information Base (MIB) Definitions for Ethernet" ("MIB 2013 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the MIB 2013 LOA is attached hereto as Exhibit 9.

126.   On August 7, 2013, Broadcom Corp. submitted an LOA for IEEE 802.3bm whereby it granted a license for "Physical Layer Specifications and Management Parameters for 40 Gb/s and 100 Gb/s Operation Over Fiber Optic

38

Cables" ("Fiber Optic Cables 2013 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the Fiber Optic Cable 2013 LOA is attached hereto as Exhibit 10.

127.    On August 7, 2013, Broadcom Corp. submitted an LOA for IEEE 802.3-2012 whereby it granted a license for "Ethernet" ("Ethernet 2013 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the Ethernet 2013 LOA is attached hereto as Exhibit 11.

128.    On September 10, 2014, Broadcom Corp. submitted an LOA for IEEE 802.3bw whereby it amended its Ethernet license grant for "Physical Layer Specifications and Management Parameters for 100 Mb/s Operation Over a Single Balanced Twisted Pair Cable (100Base-T1)" ("September 2014 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of

39

Assurance is a Blanket Letter of Assurance." A true and correct copy of the September 2014 LOA is attached hereto as Exhibit 12.

129.    On November 5, 2014, Broadcom Corp. submitted an LOA for IEEE 802.3br whereby it granted a license amending its Ethernet "Specifications and Management Parameters for Interspersing Express Traffic" ("November 2014 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the November 2014 LOA is attached hereto as Exhibit 13.

130.    On January 21, 2015, Broadcom Corp. submitted an LOA for IEEE 802.3by whereby it granted a license amending its Ethernet "Media Access Control Parameters, Physical Layers and Management Parameters for 25 Gb/s Operation" ("January 2015 LOA") and committed to  "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the January 2015 LOA is attached hereto as Exhibit 14.

131.    On March 20, 2015, Broadcom Corp. submitted an LOA for IEEE 802.3bp whereby it granted a license for "Copper Cable" ("March 2015 LOA") and

committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make....any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified..." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the March 2015 LOA is attached hereto as Exhibit 15.

132.   On February 28, 2017, Broadcom Corp. submitted an LOA for IEEE 802.3bu whereby it granted a license for "Twisted-Pair Ethernet" ("2017 LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make....any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified..." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2017 LOA is attached hereto as Exhibit 16.

133.   On March 30, 2018, Broadcom Corp. submitted an LOA for IEEE P802.3ca whereby it granted a license for "25 Gb/s. 50 Gb/s. and 100 Gb/s Passive Optical Networks" ("March 2018 LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted

number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the March 2018 LOA is attached hereto as Exhibit 17.

134.   On April 24, 2018, "Avago Technologies General IP (Singapore) Pte. Ltd., a wholly owned subsidiary of Broadcom, Inc." submitted an LOA for IEEE P802.3bs whereby it granted a license for "Media Access Control Parameters, Physical Layers and Management Parameters for 200 Gb/s Operation and 400 Gb/s Operation" ("April 2018 LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the April 2018 LOA is attached hereto as Exhibit 18.

135.   On April 24, 2018, Avago Technologies Ltd. submitted an LOA for IEEE P802.3cd whereby it granted a license for "Media Access Control Parameters

for 50 Gb/s and Physical Layers and Management Parameters for 50 Gb/s, 100 Gb/s, and 200 Gb/s Operation" ("2018 MAC LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2018 MAC LOA is attached hereto as Exhibit 19.

136.    On May 1, 2018, Avago Technologies Ltd. submitted an LOA for IEEE P802.3ch whereby it granted a license "for Ethernet Physical Layer Specifications….1 Gb/s Automotive Ethernet" ("2018 Ethernet LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2018 Ethernet LOA is attached hereto as Exhibit 20.

43

137.   On May 1, 2018, Avago Technologies Ltd. submitted an LOA for IEEE P802.3cg whereby it granted a license amending its Ethernet "Physical Layer Specifications and Management Parameters" ("May 2018 LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the May 2018 LOA is attached hereto as Exhibit 21.

**(Broadcom Corp.'s and Avago Sales' Continuing Refusal to License 802.3 Essential Patents to Realtek on RAND Terms)**

138.   Consistent with the repeated representations outlined in the foregoing LOA's, Realtek was led to believe that Defendants would license their 802.3 essential patents on RAND terms.

139.   Unfortunately, Defendants' representations were false.

140.   On July 8, 2015, Realtek requested, █████████████████████
████ ████ ███ ███ ███ ████ ███████ ████ █
██████████████████████████████████
██████████████████████████████████

44

██████████████████████████████████
███████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████

141.  On July 29, 2015, Broadcom Corp. responded, initially ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████

142.  On November 3, 2015, Broadcom Corp. ███████████████████

█████████████████████████████████████████████

143.  Broadcom Corp., however, █████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████

144.  For example, Broadcom Corp. ██████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████

145.  Broadcom Corp. included ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

45

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

146. Further, Broadcom Corp.

147. Ultimately, Broadcom Corp. refused to license its patents on RAND terms.

148. During negotiations,

149.   Avago Sales is now targeting Realtek's customers, including ███ but did not offer a RAND license to Realtek before suing those customers.  Defendants have persisted in their failure to license their standard-essential patents to Realtek on RAND terms.

150.   Defendants' refusal to license 802.3 essential patents on RAND terms demonstrates Defendants' ongoing breach and, at a minimum, creates a current and genuine dispute as to whether such terms are RAND compliant and whether Defendants will abide their commitment to license 802.3 essential patents on RAND terms.

151.   Realtek expects that Defendants will belatedly make a license offer and contend that it is a RAND offer.  Realtek will negotiate in good faith, but Defendants have already breached their RAND obligations, to Realtek's detriment.

152.   Any negotiations that follow the filing of this Complaint are not grounds to deny Realtek the requested injunction.  In fact, in the prior litigation Realtek was forced to bring against Defendants' affiliates LSI and Agere, the court granted Realtek its requested injunction and denied LSI/Agere's request to stay the case to allow negotiations to continue.  The Court recognized that a stay would reward Defendants' affiliates efforts to circumvent their RAND obligations.

## COUNT I

### (Breach of Contract – License Agreement)

153.  Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-152 above.

154.  The License Agreement constitutes a valid and enforceable contract.

155.  Under Section 3.01 of the Licensing Agreement, Realtek ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Ex. 1 § 3.01.

156.  The License Agreement defines "████████ as:



*Id.* at 13.

157.  The License Agreement further defines ████████████" as

████████████████████████████████████████████████████

████████████████████████████████████████████



*Id.* at 14.

158.   At the time of the ███████████████Broadcom Corp. held the rights to European Patents 1 903 733 and 1 770 912.

159.   As a result of the Merger Plan on May 28, 2015, utilizing a Singaporean "scheme of arrangement," after the ████████████████████████ ███████████ere through the string of transactions, pleaded in detail above, BCI's predecessor ultimately became the parent of Broadcom Corp.

160.   It was only after BCI become the successor in interest to Avago Technologies Ltd., through an undisclosed corporate restructuring, that it became an affiliate of Avago Sales.   Therefore, Broadcom Corp. was not ███████████ by Avago General IP or any of its affiliates and is therefore not ██████████████ ████████████████████████

161.   Following these transactions, BCI caused another corporate reorganization where, upon information and belief, Avago Sales was created as a new entity and wholly owned subsidiary of BCI.

████████████████████████████████
      ████████████████████████

162.   Upon information and belief, sometime after late 2017, Avago General IP assigned its rights and obligations under the License Agreement to a newly created entity, Avago Sales, and Avago General IP dissolved.

163.   BCI caused its other wholly owned subsidiary, Broadcom Corp., to assign its Patents to Avago Sales.

164.   The License Agreement provides that ███████████████████ ███████████████████    ███████████████████ ██████████████████████████████ ████████████████████

165.   Avago Sales breached Section 3.01 of the Licensing Agreement by suing ██████ in several courts in Germany alleging patent infringement for using Realtek's integrated circuits in ██████ vehicles, thus frustrating Realtek's license to use Avago Sale's patents.

166.   If on February 20, 2025, ██████ is found to infringe the patents, the resulting injunction will halt ██████ sales in Europe and likely will halt sales in the United States and will also decimate ██████ supply chains.  This will cause immense harm to ██████ and Realtek.

167.   As a direct and proximate result of Avago Sale's breach of the Licensing Agreement, Realtek will be irreparably harmed by, among other things, the loss of its supplier relationship with ██████

168.   Therefore, Realtek has no adequate remedy at law and is entitled to injunctive relief prohibiting Avago Sales from pursuing claims against ▇▇▇ in Germany for infringement by using Realtek's products and/or from enforcing any injunction it obtains in Germany against ▇▇▇ .

## COUNT II

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

169.   Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-168 above.

170.   As is true with all contracts, the License Agreement includes an implied covenant that the parties will exercise their obligations under the contract in good faith, deal fairly with the other parties to the contract, not discriminate against other parties, and refrain from actions that would deprive the contracting parties of the benefits of their bargain.

171.   Under Section 3.01 of the License Agreement, ▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇

172.   To the extent the Court determines that the express language in the Licensing Agreement does not provide Realtek with a license to Broadcom Corp.'s

51

▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇

patents (now owned by Avago Sales), the Licensing Agreement provides Realtek with an implied license.

173.   At the time the parties were negotiating the Licensing Agreement, the parties had intended that, ███████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████

174.   What the parties had not intended was for one party to engage in a complex reorganization in an effort to be able to use one party's patents in their products but prevent the other party from doing the same.

175.   Specifically, at the time the License Agreement was negotiated and executed, Realtek did not contemplate that utilizing a Singaporean "scheme of arrangement," the successor in interest to the License Agreement, Avago Sales would claim the right to sell and procure otherwise infringing products from Broadcom Corp. or BCI—and thereby claim to have a license to Realtek's patents— but simultaneously contend that Realtek's products were not authorized to practice Broadcom Corp.'s or BCI's patents.  That position prevents Realtek from having its bargained for license.

176.   Had the parties known how Defendants would use the carve-out for later acquired companies in the definition of "██████████ to deny Realtek the benefit of its bargain, they would have negotiated for a different definition that

████████████████████████████████████████

███████████████████████████████

would account for the type of reorganization and "scheme of arrangement" that ensued.

177.   Avago Sales, Broadcom Corp.'s, and BCI's failure to act in good faith—by utilizing Avago General IP's (and now Avago Sales') license to Realtek's patents to claim a license to Realtek's patents for all of Broadcom Corp.'s and BCI's products—has precluded Realtek from receiving the benefit of its bargain under the License Agreement and breached Defendants' implied obligations in Section 3.01.

178.   Avago Sales has sued Realtek's customer ███████ in Germany for patent infringement for using Realtek's integrated circuits in ███████ vehicles while simultaneously using Realtek's patented technology for its affiliates Broadcom Corp. and BCI.

179.   As a result, if the Court does not enjoin Avago Sales from pursuing claims against ████ in Germany for infringement by using Realtek's products and/or from enforcing any injunction it obtains in Germany against ████ Realtek will be irreparably harmed by, among other things, the loss of its supplier relationship with ████

180.   Alternatively, if the Court concludes that Realtek is not licensed to Broadcom Corp.'s patents, then the Court should declare that Avago Sales cannot make, use, sell, or have made any product from Broadcom Corp., BCI, or any third party without infringing Realtek's patents.

## COUNT III

**(Declaratory Judgment that Defendants Must Offer a License on RAND Terms Before Obtaining Injunctive Relief Against ▆▆▆ that the Defendants Are Continuing to Breach their RAND Obligations Because the Previously Proposed Licensing Terms Do Not Comply with RAND)**

181.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-180 above.

182.    Avago Sales, individually and as successor-in-interest to the Broadcom Corp. patents, contractually committed itself to license all patents essential to the 802.3 standards, including 802.3bw, on RAND terms pursuant to the LOAs, the IEEE Bylaws, and the IEEE patent policy.

183.    As alleged above, Broadcom Corp. and Avago Sales submitted numerous LOAs promising to license 802.3 essential patents on RAND terms, including patents essential to the specific 802.3bw version at issue in the ▆▆▆ litigation.  These LOAs, and Broadcom Corp.'s and Avago Sales's related conduct, created binding and enforceable contractual agreements under which Broadcom Corp. and Avago Sales irrevocably agreed and are obligated to offer a license to their declared essential patents on RAND terms.

184.    Realtek is an express and implied third-party beneficiary of these contractual commitments. Third-party implementors of IEEE 802.3 Ethernet standards, such as Realtek, have a right to license standards essential patents on RAND terms.

185.    There is a genuine dispute between the parties as to whether Defendants have complied with their obligation to make their 802.3 essential patents available to license on RAND terms, and whether the terms previously offered comply with Defendants' RAND obligations.

186.    This dispute is of sufficient immediacy and reality to warrant a declaratory judgment.

187.    Realtek is entitled to a declaratory judgment that Defendants' proposed licensing terms are not RAND compliant.  Defendants are likewise have, and are continuing to, breach their obligations to offer Realtek a license on RAND terms.

## COUNT IV
### (Tortious Interference with Contractual Relations)

188.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-187 above.

189.    The License Agreement constitutes a valid and enforceable contract between Realtek and Avago Sales.

190.    Because BCI controls the actions of its wholly owned subsidiaries Avago Sales and Broadcom Corp., BCI has been aware of the Licensing Agreement and the contractual relationship between Avago Sales and Realtek, which licensed to Realtek any of Avago Sales' and its █████████ patents in existence prior to the █████████, including European Patents 1 903 733 and 1 770 912.

191.    Realtek had a reasonable expectation that its contractual right under the License Agreement to use any of Avago Sales' and its ███████ patents in existence prior to the ████████████, including European Patents 1 903 733 and 1 770 912 would continue indefinitely and not be impeded.

192.    Despite BCI's knowledge of Realtek's license to European Patents 1 903 733 and 1 770 912, BCI caused Avago Sales to breach the License Agreement by suing ████ in the UPC and in German regional courts for patent infringement for using Realtek's integrated circuits in ██████ vehicles.

193.    BCI's interference has frustrated Realtek's contractual license to utilize Avago Sale's patents.

194.    If on February 20, 2025, █████is found to infringe the patents, the resulting injunction will halt ██████sales in Europe and decimate ███████supply chains.  This will cause immense harm to ██████and destroy Realtek's relationship with ██████

195.    As a direct and proximate cause of BCI's interference, Realtek will be irreparably harmed by, among other things, the loss of its relationship with ██████

196.    Therefore, Realtek has no adequate remedy at law and is entitled to injunctive relief prohibiting Avago Sales from pursuing claims against ██████ in Germany for infringement by using Realtek's products and/or from enforcing any injunction it obtains in Germany against ████████

## COUNT V

**(Declaratory Judgment – Implied License/Equitable Estoppel)**

197.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-196 above.

198.    As outlined above, at least since 2016, Realtek has consistently asserted in the marketplace and in litigation that its products that implement the 802.3 standards are licensed to Broadcom Corp.'s essential patents pursuant to the License Agreement.

199.    Avago Sales and/or Broadcom Corp. have been on actual and/or constructive notice of Realtek's assertion.

200.    Until filing suit against ███ in a foreign jurisdiction 2024, neither Avago Sales nor Broadcom Corp. took any legal action to contest Realtek's assertion that it is licensed to Broadcom Corp.'s patents.

201.    In response to the IEEE's express encouragement to adopt and implement the 802.3 standards, Realtek and its customers relied on Avago Sales' and Broadcom Corp.'s acquiescence and inaction to continue supplying the market with products that comply with the 802.3 standards.

202.    It would be unfairly prejudicial and highly inequitable for Avago Sales and/or Broadcom Corp. to allow Realtek and its customers to supply the market with products that implement the 802.3 standards for 7 years, as expressly encouraged by

the IEEE, before suddenly claiming that Realtek's products infringed on Broadcom Corp.'s 802.3 essential patents.

203.    Realtek is therefore entitled to a declaratory judgment that it has an implied license to the Broadcom Corp. 802.3 essential patents via equitable estoppel.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

A.    A judgment that Avago Sales has breached and continues to breach the License Agreement;

B.    Permanently enjoining Avago Sales from breaching the License Agreement by pursuing claims against ██████ in Germany for infringing SEPs by using Realtek's products;

C.    Permanently enjoining Avago Sales from enforcing any injunction it obtains in Germany against ██████

D.    An order that Broadcom Corp. breached its obligations to the IEEE, for which Realtek is a third-party beneficiary;

E.    An award of damages in favor of Realtek for the fees and costs incurred in defending against the infringement claims Defendants improperly asserted, including prejudgment and post-judgment interest;

58

F.    An award of attorneys' fees and costs in favor of Realtek in bringing

this action; and

G.    Such other relief as this Court deems just and proper.


Dated: October 31, 2024            **K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
600 King Street, Suite 901
Wilmington, DE 19801
Phone:  (302) 416-7000
steve.caponi@klgates.com
megan.hunt@klgates.com

*Counsel for Plaintiff*

59

EFiled:  Nov 07 2024 04:30PM EST
Transaction ID 74967542
Case No. 2024-1127-NAC

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

REALTEK SEMICONDUCTOR
CORPORATION,

               Plaintiff,

     v.

AVAGO TECHNOLOGIES
INTERNATIONAL SALES PTE.
LTD., BROADCOM
CORPORATION, and BROADCOM
INC.,

             Defendants.

C.A. No. 2024-1127-NAC

**PUBLIC VERSION FILED
NOVEMBER 7, 2024**

## PLAINTIFF'S MOTION FOR EXPEDITED PROCEEDINGS

Plaintiff Realtek Semiconductor Corporation ("Realtek"), by and through its undersigned counsel, respectfully seeks an order expediting proceedings in this action (the "Action") against Defendants Avago Technologies International Sales PTE. LTD. ("Avago Sales"), Broadcom Corporation ("Broadcom Corp."), and Broadcom Inc. ("BCI") (collectively, "Defendants").

1

## **INTRODUCTION**[1]

1.      This action involves Defendants' breach of the confidential Settlement and Patent License Agreement ("License Agreement") between Realtek and the predecessor to Avago Sales, Avago Technologies General IP (Singapore) Pte. Ltd. ("Avago General IP"), which, in part, ███████████████████████████████

███████████████████████

2.      Avago Sales—alleged successor to Avago General IP—brought patent infringement claims in Germany against one of Realtek's customers, ████████████ alleging that ███████ use of Realtek-provided technology infringes Avago Sales' patents.  Realtek's products, however, are licensed under the License Agreement, which means that ██████products are authorized under Avago Sales' patents.

3.      Defendants evidently deny that the patents asserted against █████are licensed to Realtek.

4.      Realtek has tried to obtain judicial clarification regarding the scope of the License Agreement, but its prior efforts ended without a resolution on the merits.

5.      In the meantime, Defendants have developed and made large investments in products that use Realtek's patented technology, as Realtek

---

[1] Capitalized terms not otherwise defined have the meaning identified in the Verified Complaint filed contemporaneously ("Complaint" or "Compl.").

██████████████████████████████████

███████████████████████████████

demonstrated (in part) in recent proceedings before the International Trade Commission. In other words, Defendants are using Realtek's patented technology—relying on Realtek's views that the parties are cross-licensed under the License Agreement—while simultaneously suing Realtek's customers under Defendants' view that Realtek products are not authorized. Defendants cannot have it both ways.

6.     Defendants' duplicity has reached a critical point because Avago Sales is seeking an injunction that could likely freeze ███████ sales in Europe (including ███████ manufactured in the United States). The German courts will rule by February 20, 2025. Realtek therefore seeks expedited proceedings to secure an injunction prohibiting Defendants' from causing irreparable harm to Realtek and its customers.

7.     Defendants' misconduct extends beyond the License Agreement. Even if Realtek's and its customers' products were not licensed, Defendants have an obligation to license their patents on a "reasonable and non-discriminatory" ("RAND") basis. Defendants have RAND licensing obligations because they identified the patents asserted against ███████ as essential to the 802.3 standards—related to Ethernet—promulgated by the Institute of Electrical and Electronics Engineers Standards Association ("IEEE"). Specifically, Defendants executed "letters of assurance" pledging to provide RAND licenses to all requesters.

8.    Realtek asked for a RAND license in 2015, but Defendants failed to offer one.  They have persisted in that failure to the present day.

9.    A company that breaches its RAND obligations cannot seek an injunction against an alleged infringer.

10.    Because Defendants are seeking injunctive relief in Germany against Realtek's customers, based on Realtek-supplied technology, Realtek seeks an injunction prohibiting Defendants' ongoing breaches of the License Agreement. Realtek also brings claims for tortious interference, declaratory judgment, and breach of the obligation to offer a RAND license.

## **BACKGROUND**

### A.    **Realtek and Avago General IP Enter into the License Agreement**

11.    On July 27, 2015, the parties executed the Settlement and Patent License Agreement (the "License Agreement").  Compl. ¶ 32, Ex. 1.  In addition to releasing claims in pending infringement actions, the parties granted each other, and each of their ███████████ a mutual license to each other's patents.  *Id.* ¶ 36 (§ 3.01), Ex. 1.

12.    The License Agreement defines "████████████████████

████████████████████████████████████████

4

████████████████████████████████

████████████████████

████████████████████████████████████████████████████ *Id.* ¶

36, Ex. 1 at 13.

13.    The License Agreement defines ██████████████████████

███████  ████████████████  ██████  ██████  ███████  ██████  ██  ██

████████████████████████████████████████████████████████

███████

14.    There is substantial dispute between the parties as to whether Broadcom

Corp. is an ██████████under the License Agreement, such that Realtek has a

license to Broadcom Corp.'s patents.

## B.    Avago Sales Becomes the Successor in Interest Under the License Agreement and Owner of the Patents

15.    At the time of the ██████████████ Realtek alleges that Broadcom

Corp. held the rights to European Patents 1 903 733 and 1 770 912.  Compl. ¶ 158.

16.    About 7 months after the effective date of the License Agreement, a

"Scheme of Arrangement" under Singaporean law took place, where through a

complex set of transactions Avago Technologies Ltd. combined with Broadcom

Corp.  *Id.* ¶ 39.  As detailed in paragraphs 39-59 of the Complaint, pursuant to these

transactions the predecessor to BCI ultimately became the parent of Broadcom Corp.

*Id.* ¶ 58.  Through these transactions Broadcom Corp. was not ██████████ by

████████████████████████████████████████████

██████████████████████████████████████

Avago General IP or any of its affiliates and is therefore not an ███████████ ████████████████████ *Id.* ¶¶ 59, 61.

17.    Following these transactions, BCI caused another corporate reorganization where, upon information and belief, Avago Sales was created as a new entity and wholly owned subsidiary of BCI.  *Id.* ¶ 161.  BCI's annual reports confirm that BCI controls and directs all the activities of Broadcom Corp., Avago Sales, and their affiliates, and all actions that BCI's affiliates (including Avago Sales and Broadcom Corp.) undertake are undertaken jointly and severally with BCI.  *Id.* ¶ 1.

18.    Upon information and belief, sometime after late 2017, Avago General IP (without the consent the License Agreement requires) assigned its rights and obligations under the License Agreement to a newly created entity, Avago Sales, and Avago General IP dissolved.  Following this assignment, BCI caused Broadcom Corp. to assign its Patents to Avago Sales.  *Id.* ¶ 68.  Therefore, as discussed in more detail in paragraphs 63 through 72 of the Complaint, through these assignments Avago Sales became the successor in interest to the License Agreement, and Realtek was licensed to use the Patents.

### C.    Realtek Consistently Claimed a License to the Patents

19.    In 2016, Realtek became aware of the Singaporean scheme of arrangement and discovered that, pursuant to the terms of the License Agreement, it held a license to Broadcom Corp.'s patents.

20.    Accordingly, as of at least August 2016, Realtek began informing its customers, who are believed to have informed Broadcom Corp., that Realtek's products were licensed.

21.    Realtek and its customers relied on that understanding, making purchase and sales decisions, expending significant resources designing their products to include Realtek integrated circuits, and developing supply chains and product strategies.

22.    However, on March 7, 2017, Broadcom Corp. initiated an action in the International Trade Commission alleging that LG Electronics infringed five patents by using Realtek integrated circuits in its products.

23.    Realtek contacted Avago General IP and Broadcom Corp. and

████████████████████████████████████████████████████████████

████████████████████████████████████

24.    Realtek therefore filed, on August 8, 2017, complaints in the U.S. District Court against, respectively, Avago General IP and Broadcom Corp. to affirm its rights under the License Agreement.

7

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

25.     On December 19, 2017, the District Court dismissed both actions for lack of subject matter jurisdiction without resolving the substantive dispute.

26.     Neither Broadcom Corp. nor Avago Sales took any legal action to contest Realtek's assertion until filing suit against ███ 7 years later in 2024, even though they knew: (1) Realtek's products practiced the IEEE 802.3 standards; (2) Realtek contends that its products are licensed to Defendants' patents; and (3) Realtek and its customers had invested, and would continue to invest, immense resources developing products that practiced the standard and include Realtek's integrated circuits.

### D.    Broadcom Corp. Continuously Refuses to License the Patents to Realtek on RAND Terms

27.     Prior to discovering that it held a license to Broadcom Corp.'s patents pursuant to the License Agreement, Realtek requested a RAND license to any Broadcom Corp. patents essential to the IEEE 802.3 standards.

28.     Broadcom Corp. and Avago Sales's predecessor-in-interest submitted numerous Letters of Assurance ("LOAs") to the IEEE, which are binding contractual commitments to license 802.3 essential patents on RAND terms.

29.     On July 8, 2015, Realtek requested a RAND license.

30.     Broadcom Corp., however, engaged in patent hold-up practices by proposing a non-RAND license with unfair and unreasonable terms.

31.     Realtek has, since that time, indicated that it remains open to a RAND license.  But neither Broadcom Corp., nor its successor-in-interest to the patents, Avago Sales, has been willing to provide a RAND license.

### E.     Avago Sales Breaches License Agreement and its RAND obligations By Suing ████ for Patent Infringement on 802.3 Essential Patents

32.     ████uses Realtek's integrated circuits in its ████ Compl. ¶ 73.  In April/May of 2024, Avago Sales sued ████ for patent infringement in the Unified Patent Court ("UPC") in Germany, and in German regional courts.  *Id.* Despite Realtek's license, Avago Sales alleges that ████ infringes by using Realtek integrated circuits.  *Id.* ¶ 75. Avago Sales has breached Section 3.01 of the Licensing Agreement by frustrating Realtek's license to use Avago Sales's patents.  *Id.* ¶ 165. Avago Sales seeks an injunction that will freeze all of ████ sales in Europe (including ████manufactured in the United States). *Id.* ¶ 6.  The German courts will determine whether to grant the requested injunction on February 20, 2025.  *Id.*

33.     If ████is found to infringe the patents, the resulting injunction will halt ████ sales in Europe, could likely halt sales in the United States, and will decimate ████supply chains.  *Id.* ¶ 166.  This will cause immense harm to

Realtek's reputation and will destroy its relationship with █████ resulting in a loss of █████ as a customer. *Id.* ¶ 167.

## **ARGUMENT**

34.    This Court has broad powers to order expedited proceedings.  *See Raymond Revocable Tr. v. MAT Five LLC*, 2008 WL 2673341, at *5 (Del. Ch. June 26, 2008); *Harmony Mill Ltd. P'ship v. Magness*, 1984 WL 21898, at *1 (Del. Ch. Feb. 14, 1984).  The burden on a plaintiff in seeking an expedited proceeding is not high."  *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, 2013 WL 209124,  at *1 (Del. Ch. Jan. 18, 2013).  To obtain an order for expedited proceedings, a plaintiff need only: (1) articulate a sufficiently colorable claim; and (2) show a sufficient possibility of a threatened irreparable injury.  *Balch Hill Partners, L.P. v. Shocking Techs., Inc.*, 2013 WL 588964, at *2 (Del. Ch. Feb. 7, 2013).

35.    In applying this well-settled standard, this Court "traditionally has acted with a certain solicitude for plaintiffs" and "has followed the practice of erring on the side of more [expedited proceedings] rather than fewer." *Giammargo v. Snapple Beverage Corp.*, 1994 WL 672698, at *2 (Del. Ch. Nov. 15, 1994); *see also Box v. Box*, 697 A.2d 395, 398-99 (Del. 1997) ("Delaware courts are always receptive to expediting any type of litigation in the interests of affording justice to the parties,"

and the Court of Chancery in particular is "renowned" for its "expedited decisionmaking."). Realtek's Complaint meets this standard.

## I.    Realtek Has Stated Colorable Claims

36.    To articulate a "colorable claim," a plaintiff need show only "a non-frivolous set of issues," a standard "even lower [than] the 'conceivability' standard applied on a motion to dismiss." *In re BioClinica, Inc. S'holder Litig.*, 2013 WL 5631233, at *1 n.1 (Del. Ch. Oct. 16, 2013). The Court conducts only an "almost superficial factual assessment" of a plaintiff's claims, *Cty. of York Emps.' Ret. Plan v. Merrill Lynch & Co.*, 2008 WL 4824053, at *6 (Del. Ch. Oct. 28, 2008), accepting all well-pleaded allegations as true and with no need to determine whether the claims have a probability of success. *See TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, 2000 WL 1478537, at *2 (Del. Ch. Oct. 2, 2000).

37.    In contract actions, the colorable-claim requirement is satisfied unless the plaintiff's "interpretations of the disputed contractual provisions are frivolous or so lacking in merit as to make it impossible for [p]laintiff[] to prevail on [its] claims at a later stage." *Trilogy Portfolio Co., LLC v. Brookfield Real Estate Fin. Partners, LLC*, 2012 WL 120201, at *5 (Del. Ch. Jan. 13, 2012). Realtek's claims satisfy this standard.

38.    First, Realtek has adequately pleaded a colorable claim for breach of the License Agreement, which should be remedied through a permanent injunction. There is no dispute that the License Agreement is a valid and enforceable contract. Compl. ¶ 154.  Realtek has pleaded that through the series of transactions identified in paragraphs 63 through 72 of the Complaint, Avago Sales was created as a new entity and became the successor in interest to the License Agreement, thereby accepting its rights and obligations. *Id.* ¶¶ 63-72.  Realtek has also pleaded that BCI caused Broadcom Corp. to assign its Patents to Avago Sales.  *Id.*  ¶ 70.  Thus, Realtek has pleaded that Avago Sales' and its affiliates' patents in existence prior to the ▮▮▮▮▮▮▮▮▮▮▮▮▮ were licensed to Realtek upon assignment of the License Agreement. *Id.*

39.    Despite Realtek's license, Avago Sales breached Section 3.01 of the License Agreement by suing ▮▮▮▮▮ in Germany for using Realtek's integrated circuits in ▮▮▮▮▮▮▮▮, thus frustrating Realtek's license. *Id.* ¶ 165.  Realtek has also pleaded, as a result of Avago Sale's breach, Realtek will be irreparably harmed by, among other things, the potential loss of its relationship with ▮▮▮▮ absent a permanent injunction from this Court. *Id.* ¶ 167.

40.    Second, in the alternative, Realtek has pleaded a colorable claim for breach of the implied covenant of good faith and fair dealing because under Section

3.01 of the License Agreement the parties ████████████████████████

████████████████████████████████████████████████████████ The

parties, however, did not intend for one party to engage in a complex reorganization

in an effort to be able to use one party's patents but prevent the other party from

doing the same.

41.    Third, Realtek has pled a colorable claim for tortious interference with

the License Agreement because as the controller of its wholly owned subsidiaries

Avago Sales and Broadcom Corp., BCI has been aware of the Licensing Agreement

and the contractual relationship between Avago Sales and Realtek.  Yet BCI caused

Avago Sales to breach the License Agreement by suing ██████ in the UPC and in

German regional courts, thus frustrating Realtek's license.

42.    Finally, assuming arguendo that Realtek is not licensed, Realtek has

pleaded colorable claims for a declaratory judgment that Broadcom Corp. and/or

Avago Sales are obligated to offer and provide a license to 802.3 essential patents

on RAND terms, and the prior terms are not RAND compliant, meaning that

Defendants breached their obligations.

## II.    Realtek Will Suffer Irreparable Harm Absent Expedition

43.    Under Delaware law, "[i]rreparable harm is generally defined as harm

for which there can be no remedy at law, which is typically taken to mean that an

award of compensatory damages will not suffice." *AM Gen. Hldgs. LLC v. Renco Grp., Inc.*, 2012 WL 6681994, at *4 (Del. Ch. Dec. 21, 2012) (internal quotation marks omitted); *see also State v. Del. State Educ. Ass'n*, 326 A.2d 868, 875 (Del. Ch. 1974) ("It is not necessary that the injury be beyond the possibility of repair by money compensation," but only "be of such a nature that no fair and reasonable redress may be had in a court of law and that to refuse the injunction would be a denial of justice."). A remedy at law is inadequate if it does not "afford the plaintiff full, fair, and complete relief." *El Paso Nat. Gas Co. v. TransAm. Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995). Realtek has alleged sufficient facts to establish that it has and will continue to be irreparably harmed by Defendants' breaches of the License Agreement and RAND obligations.

44.    If Defendants receive an injunction in Germany, ███████sales in Europe may cease. *Id.* ¶ 77. This will cause immense harm to Realtek's reputation, will compromise its relationship with ██████resulting in a loss of the ██████ relationship, and will upend complex supply chains. *Id.*; *see Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC*, 2005 WL 3502054, at *15 (Del. Ch. Dec. 15, 2005) (finding potential lost sales and lost customers sufficient for irreparable harm); *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 358 (Del. 1998) (irreparable harm found where the company would suffer loss of its customer

14

base); *Singh v. Batta Env't Assocs., Inc.*, 2003 WL 21309115, at *10 (Del. Ch. May 21, 2003) (finding irreparable harm because "its goodwill will continue to erode, and it will lose clients, referrals, and other prospective opportunities that cannot be quantified"); *In re Shawe & Elting LLC*, 2015 WL 4874733, at *28 (Del. Ch. Aug. 13, 2015) ( "irreparable harm to a corporation has been found to include harm to a corporation's reputation, goodwill, customer relationships, and employee morale"), *aff'd*, 157 A.3d 152 (Del. 2017).

45.    Accordingly, this motion and the Complaint show the requisite elements for expedited treatment, and Realtek asks the Court to grant this motion, expedite proceedings, and set a trial date for early February 2025, to ensure that Realtek's claims are decided before the German court rules on Avago Sales' injunction. *See Everest Props., Inc. v. Boston Tax Credit Fund II*, 1997 WL 33174420, at * 1 (Del. Ch. Feb. 20, 1997) (entering order "shortening the time for defendants to answer, move or otherwise respond to the complaint, accelerating discovery and setting a reasonably prompt trial date," and scheduling a two-day trial 67 days after date of order); *Pfizer Inc. v. Warner-Lambert Co.*, 1999 WL 33236245, at *1 (Del. Ch. Dec. 3, 1999) (setting prompt trial date in action for breach of contract and declaratory judgment).

15

## **CONCLUSION**

46.     Realtek respectfully asks the Court to grant expedited proceedings and set this matter for a trial to be completed and decision rendered before February 20, 2025.

Dated: October 31, 2024              **K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
600 King Street, Suite 901
Wilmington, DE 19801
Phone:  (302) 416-7000
steve.caponi@klgates.com
megan.hunt@klgates.com

*Counsel for Plaintiff*

Words: 2983/3,000

16