# EXHIBIT A

**EFiled: Oct 31 2024 11:26PM EDT**
**Transaction ID 74924134**
**Case No. 2024-1127-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION, | |
| Plaintiff, | C.A. No. |
| v. | **FILED UNDER SEAL** |
| AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD., BROADCOM CORPORATION, and BROADCOM INC., | |
| Defendants. | |

## <u>VERIFIED COMPLAINT</u>

YOU ARE IN POSSESSION OF A CONFIDENTIAL FILING FROM THE COURT OF CHANCERY OF THE STATE OF DELAWARE.

IF YOU ARE NOT AUTHORIZED TO VIEW THIS DOCUMENT UNDER RULE 5.1 OR BY COURT ORDER, READ NO FURTHER THAN THIS PAGE AND CONTACT THE FOLLOWING PERSON:

Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
K&L GATES LLP
600 King Street, Suite 901
Wilmington, DE 19801
steven.caponi@klgates.com
megan.hunt@klgates.com
*Attorneys for Plaintiff*

Pursuant to Rule 5.1, a public version of this document will be filed on November 7, 2024.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

REALTEK SEMICONDUCTOR
CORPORATION,

        Plaintiff,

    v.

AVAGO TECHNOLOGIES
INTERNATIONAL SALES PTE.
LTD., BROADCOM
CORPORATION, and BROADCOM
INC.,

        Defendants.

C.A. No.

## VERIFIED COMPLAINT

Plaintiff Realtek Semiconductor Corporation ("Realtek" or "Plaintiff"), by way of its Complaint against defendants, Avago Technologies International Sales Pte. Ltd. ("Avago Sales"), Broadcom Corporation ("Broadcom Corp."), and Broadcom Inc. ("BCI," collectively "Defendants") alleges as follows:

## NATURE OF ACTION

1.     This action involves Defendants' breach of the confidential Settlement and Patent License Agreement ("License Agreement") between Realtek and the predecessor to Avago Sales, Avago Technologies General IP (Singapore) Pte. Ltd. ("Avago General IP"). As discussed in detail below, and as BCI's annual reports confirm, BCI controls and directs all the activities of Broadcom Corp., Avago Sales,

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

and their affiliates, and all actions that BCI's affiliates (including Avago Sales and Broadcom Corp.) undertake are undertaken jointly and severally with BCI.

2.    Avago Sales—as successor to Avago General IP—brought patent infringement claims in Germany against one of Realtek's customers, ███, alleging that ███ use of Realtek-provided technology infringes Avago Sales' patents. Realtek's products, however, are licensed under the License Agreement, which means that ███ products are authorized under Avago Sales' patents.

3.    Realtek is informed and believes that Defendants deny that the patents they asserted against ███ are licensed to Realtek.

4.    Realtek has tried to obtain judicial clarification regarding the scope of the License Agreement, but its prior efforts ended without a resolution on the merits.

5.    In the meantime, Defendants have developed and are selling large quantities of products that use Realtek's patented technology, as Realtek demonstrated (in part) in recent proceedings before the International Trade Commission.  In other words, Defendants are using Realtek's patented technology and are authorized under Realtek's views of the License Agreement while suing Realtek's customers under Defendants' view that Realtek products are not authorized under the License Agreement.  Defendants cannot have it both ways.

6.    Defendants' duplicity has reached a critical point because Avago Sales is seeking an injunction that will freeze ███ sales in Europe (███

2

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

███████████████████ The German courts are set to issue a ruling by February 20, 2025. Realtek therefore seeks expedited proceedings aimed at securing an injunction that will prohibit Defendants' from causing irreparable harm to Realtek and its customers.

7.      Defendants' misconduct extends beyond the License Agreement. Even if Realtek's and its customers' products were not licensed (and Realtek's position is that they are licensed), Defendants have an obligation to license their patents on a "reasonable and non-discriminatory" ("RAND") basis. Defendants have RAND licensing obligations because they identified the patents asserted against ███ as essential to the 802.3 standards related to Ethernet, promulgated by the Institute of Electrical and Electronics Engineers Standards Association ("IEEE"). Specifically, they executed "letters of assurance" pledging to provide RAND licenses to all who requested them. Thus far, they have refused.

8.      Realtek asked for a RAND license to Defendants' patents in 2015, but Defendants failed to offer one. They have persisted in that failure to the present day.

9.      A company that breaches its RAND obligations cannot seek an injunction against an alleged infringer. Defendants are aware of this rule because Realtek previously sued LSI Corporation ("LSI") and Agere Systems Inc. ("Agere"), the predecessors and current subsidiaries of BCI, for the same misconduct. Indeed, a jury in the Northern District of California awarded Realtek nearly $4 million in

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

damages due to their breach, and the court also entered a preliminary injunction prohibiting Defendants' affiliates from enforcing any injunctive relief they might receive. It did so because—as here—Defendants' affiliates brought an infringement action and continued to seek injunctive relief after Defendants' affiliates refused to provide a RAND license. It is inexcusable that Defendants continue to engage in the same misconduct.

10.    Because Defendants are seeking injunctive relief in Germany against Realtek's customers, based on Realtek-supplied technology, Realtek seeks an injunction prohibiting Defendants' ongoing breaches of the License Agreement. Realtek also brings claims for tortious interference, declaratory judgment, and breach of the obligation to offer a RAND license.

## PARTIES

11.    Plaintiff Realtek is a corporation organized under the laws of Taiwan with its principal place of business located at No. 2 Innovation Road II, Hsinchu Science Park, Hsinchu 300, Taiwan.

12.    Defendant Avago Sales is a Singapore private limited company with its headquarters located at 1 Yishun Avenue 7, Singapore 768923. Realtek is informed and believes that Avago Sales is a wholly owned subsidiary of defendant BCI and an affiliate of defendant Broadcom Corp. Realtek is informed and believes that Avago Sales is the successor in interest to the counterparty to the License Agreement

4

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

with Realtek.   Avago Sales represents that it is the owner of various patents, including European Patents 1 903 733 and 1 770 912.

13.     Defendant Broadcom Corp. is a corporation organized under the laws of California with its principal place of business located at 3421 Hillview Avenue, Pal Alto, California 94304.   Realtek is informed and believes, and on that basis alleges, that Broadcom Corp. is a wholly owned subsidiary of defendant BCI and under common ownership with Avago Sales.

14.     Defendant BCI is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 1320 Ridder Park Drive, San Jose, California 95131.

## **JURISDICTION**

15.     This Court has subject matter jurisdiction to enter injunctive relief pursuant to 10 *Del. C.* § 341.

16.     This dispute arises out of a breach of the License Agreement, and the License Agreement ███████████████████████████████████████████ ████████████████████████████.   Specifically, Section 8.07 of the License Agreement provides:



THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.



Ex. 1 § 8.07.

17.    This Court has personal jurisdiction over Avago Sales because its predecessor, whose obligations Realtek is informed and believes Avago Sales assumed, agreed to personal jurisdiction in Delaware as a party to the License Agreement.  *See id.*  In addition, Avago Sales is a Singapore entity that operates abroad but has caused harm to Realtek worldwide.  Through the License Agreement, Avago Sales has indicated that it consents to, and is most amenable to, jurisdiction in Delaware.  Avago Sales has minimum contacts with Delaware, which is the home of the corporate parent that controls and directs its activities.

18.    This Court has personal jurisdiction over Broadcom Corp. because it is a third-party beneficiary of the License Agreement, upon which it relies to justify using Realtek's technology.  Broadcom Corp. also has repeatedly availed itself of this Court's jurisdiction, including by bringing actions in this Court, such as *Broadcom Corp. v. Cox*, No. CA4519 and *Broadcom Corp. v. Edwards*, No. CA4577.  Broadcom Corp.'s actions likewise have caused harm to Realtek worldwide.

19.    This Court has general personal jurisdiction over BCI because it is incorporated in Delaware.

6

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

20.     In addition, BCI represents to the public that it acts collectively with its subsidiaries to bring infringement allegations related to the approximately 17,035 U.S. patents it and its affiliates collectively held as of the end of 2022.  Broadcom Inc. 2022 Annual Report at 10.  BCI, when speaking for itself and the affiliates it controls, says:  "Our success depends in part upon our ability to protect our IP."  It likewise reports that "[a] portion of our revenue comes from IP licensing royalty payments and from litigation settlements relating to such IP."  When enforcing IP rights, BCI controls the actions of the other Defendants, acts in concert with them, aids and abets their activities, and is indistinguishable from the other Defendants, which are instrumentalities of BCI and agents/principals of one another.  As discussed in part in this Complaint, Defendants have assumed all relevant obligations of one another and engaged collectively in the actions recited in this Complaint.

## **FACTS**

### **(The Litigation and Negotiations that Led to the License Agreement)**

21.     The litigation that gave rise to the License Agreement arose in response to a complaint that LSI, and its wholly owned subsidiary Agere, filed in the ITC, on March 11, 2012.  LSI and Agere sued Realtek and 8 other companies, alleging infringement of two patents that LSI identified as essential to the IEEE 802.11 Wi-Fi standards.  On March 7, 2012, LSI/Agere sent a letter alleging that Realtek

7

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

products, as incorporated into certain third-party devices, infringed the two patents. Less than a week later, LSI filed a complaint in the ITC alleging that Realtek infringed the two identified patents. In that litigation, LSI/Agere asked the ITC to award an injunction banning all of Realtek's integrated circuits from the U.S. and prohibiting Realtek from selling any integrated circuit already in the United States.

22.     Realtek responded to LSI/Agere's March 7, 2012 letter on May 24, 2012. In its response, it asked LSI/Agere to provide a license on RAND terms. It was not until June 20, 2012, that LSI/Agere purported to provide RAND license terms, but the terms provided exceeded the selling price of Realtek's products. Realtek was informed and believed that LSI/Agere's proposed license was quite different than the license it offered to other component manufacturers.

23.     On June 29, 2012, Realtek sued LSI/Agere alleging that they had failed to license certain patents that were essential to the 802.11 Wi-Fi standards on RAND terms. *See* Original Complaint, Case No. CV-12-3451 (N.D. Cal. June 29, 2012). Specifically, Realtek sued to obtain an injunction preventing LSI and Agere from enforcing any injunction they obtained in the ITC because they failed to offer Realtek a RAND license to their Wi-Fi essential patents before filing a complaint in the ITC.

24.     On May 20, 2013, the District Court granted partial summary judgment in Realtek's favor, concluding that "defendants breached their contractual

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

obligations to IEEE and to Realtek as a third-party beneficiary of that contract by seeking injunctive relief against Realtek before offering Realtek a license. . . . . This conduct is a clear attempt to gain leverage in future licensing negotiations and is improper." Order Granting Plaintiff Realtek Semiconductor Corp.'s Mot. for Partial Summ. Judg. And Denying Defendants' LSI Corp. and Agere Sys. LLC's Mot. to Stay at 11, D.E. 102 (N.D. Cal. May 20, 2013).

25.     The Court further granted Realtek's request for a preliminary injunction preventing defendants from enforcing any exclusion order or other injunctive relief the ITC might issue. *Id.* at 14.

26.     On May 6, 2014, Avago Technologies Limited announced that it had completed its acquisition of LSI Corp.  Thus, the named defendants, LSI and Agere, became part of Avago Technologies Ltd.   (Avago Technologies Ltd. is the predecessor in interest to Defendant BCI.)

27.     The litigation continued, and in February 2014, the U.S. District Court for the N.D. California conducted a jury trial to determine damages for LSI/Avago's breach of its obligations to license its patents on RAND terms.  The jury awarded Realtek almost $4 million in damages and established the reasonable royalty rates for the two patents.  The royalty rates it set for the 802.11 Wi-Fi patents were significantly lower than the rates LSI/Avago requested.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

28.     On June 16, 2014, the court granted Realtek's motion for declaratory relief against LSI and Agere, requiring defendants "upon Realtek's request for a license, to be in compliance with its RAND commitment[s]" and, accordingly, to offer a license to the disputed patents "on RAND terms." Order Den. Permanent Inj. & Granting Decl. Relief at 11-12:21-2 (N.D. Cal. June 16, 2014). The court identified the specific royalty rates that constituted RAND terms for the two patents, as determined by the jury:  0.12% for one patent and 0.07% for the other.

29.     The jury's verdict, the declaratory judgment, Defendants' failure to prove infringement before the ITC, and the pendency of other disputes between the parties, prompted the parties to explore settlement. Those discussions substantively began in approximately August 2014.

30.     █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████

31.     Realtek's counsel and Defendants' counsel held numerous discussions about the scope of the license and their understanding ████████████████████

█████████████████████████

32.     They ultimately entered into an agreement, which included a License Grant through which the parties licensed—████████████████████████████████

████████████████████████████████████████████████

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

33.     Defendants' counsel primarily drafted the agreement and was responsible for the language included in the License Agreement designed to reflect the parties' agreement.

34.     Any ambiguities in the License Agreement are a result of language Defendants' counsel selected.  Realtek is informed and believes that Defendants were aware of the complex "scheme" they planned to use—which is discussed in detail below—when combining with Broadcom Corp.  Realtek is informed and believes that Defendants used their "scheme" to avoid taxes.  Realtek was unaware of the structure of the "scheme" when the parties negotiated and signed the License Agreement.

35.     Thus, Defendants alone bear the risk that their "scheme" to avoid taxation would result in Broadcom Corp. being an ███████ under the License Agreement. Defendants chose—without Realtek's knowledge—to execute a "scheme" to avoid taxation rather than undertaking an acquisition with a structure recognized under U.S. corporate law and as contemplated under the License Agreement.

**(The Terms of the License Agreement)**

36.     Under Section 3.01 of the License Agreement ███████████

███████████████████████████

███████████████████████████

11

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.



Ex. 1 § 3.01.  The License Agreement defines ▮▮▮▮▮▮ as:

*Id.* at 13.

37.    Further the License Agreement defines "Licensed Patents" as



*Id.* at 14.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

38.    The ██████████████████████████████████, the date the

License Agreement was executed.  Finally, the parties agreed that ████████████

██████████████████████████████████████ *Id.* § 8.02(a).

**(Avago Technologies "Scheme of Arrangement" Regarding Broadcom Corp.
and the Relevant License Agreement)**

39.    About 7 months after the effective date of the License Agreement, the

"Scheme of Arrangement" took place.  That "scheme" was a complex set of

transactions through which Avago Technologies Ltd. combined with Broadcom

Corp.

40.    The provisions in the License Agreement define ████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████

41.    Defendants have argued that Defendant Broadcom Corp.—despite

being under common control with Avago Sales—is not an ████████████

42.    It is Defendants' obligation to demonstrate that ████████████

█████████████████████████████████████████████████

*Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).

43.    Defendants will not be able to demonstrate that Broadcom Corp. was

████████████     Instead, Realtek is informed and believes that the complex

"Singaporean Scheme of Arrangement" that Defendants' lawyers concocted for tax

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

and regulatory purposes did not result ████████████████████████████

████████████████████████████████████████████████████

Accordingly, Broadcom Corp. is not an Excluded ██████████████████

██████████████

44.    Defendants have previously argued that Avago Technologies Ltd.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

45.    Realtek does not yet have a complete understanding of all facets of the

transaction, and it needs discovery to confirm its present understanding, but based

on the lengthy transaction documents that are publicly available, Realtek

understands that neither Avago General IP, nor any of its affiliates, ██████████

██████████████████████████████████████ as part of the

"scheme."

46.    To the contrary, those shares (believed to be held by Broadcom Corp.'s

shareholders) were cancelled and replaced with shares of another company, which

was not an ██████████ at the time of the transactions.   Broadcom Corp. only

became affiliated with Avago General IP, and its affiliates, after the "scheme" was

complete, in a transaction that did not involve any separate consideration, which

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

means ████████████████████████████████████████████

████████████████. As a result, Broadcom Corp. is not an ████████████████.

47.    On May 28, 2015, a group of companies entered into an "Agreement and Plan of Merger" ("Merger Plan") which detailed a Singaporean "scheme of arrangement."

48.    The "scheme of arrangement," among other things, sets forth the timing of certain future events that comprise the subject combination:

> At the Avago Effective Time . . . all of the issued Avago Ordinary Shares will be transferred from the holders of such issued Avago Ordinary Shares . . . to Finance Holdco. *Id.*, § 2.1.
>
> At or immediately after the Avago Effective Time, Avago shall cause Holdco to, and Holdco shall, deposit . . . for the account and benefit of the former holders of Avago Ordinary Shares . . . shares representing the full number of Holdco Ordinary Shares issuable pursuant to Section 2.1 in exchange for outstanding Avago Ordinary Shares, *id.*, §2.10(a), thereby providing each former owner of Avago Ordinary Shares with Holdco Ordinary Shares, and immediately cancelling all received shares, *id*.
>
> At the Cash/Stock Effective Time . . . Cash/Stock Merger Sub shall be merged with and into Broadcom [Corp.] . . . the separate corporate existence of Cash/Stock Merger Sub shall cease and Broadcom [Corp.] shall continue as the surviving corporation and as an indirect wholly-owned Subsidiary of Holdco and a direct, wholly-owned Subsidiary of Lower Holdco." *Id.,* § 2.2.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

At the Unit Effective Time . . . Unit Merger Sub shall be merged with and into Broadcom . . . the separate corporate existence of Unit Merger Sub shall cease and Broadcom shall continue as the surviving corporation and as a wholly owned subsidiary of Lower Holdco." *Id.,* § 2.3.

49.    After these transactions, Broadcom Corp. existed as the surviving entity of the Cash/Stock and Unit Mergers, and it was to operate "as a wholly owned subsidiary of Lower Holdco." *Id.*, § 2.2.  On information and belief, Broadcom Corp.'s ***stockholders*** ultimately could elect to receive cash or ordinary shares in Holdco.  Upon information and belief, there are no public records of any exchange of consideration.

50.    Before the Cash/Stock Effective Time (and before there had been any swap of Broadcom Corp. shares), Realtek is informed and believes that the following was the corporate structure of the relevant merger-created entities, with none of those entities ███████████████████████████████████████

███████████████████████████████████

16

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.



51.    After the Unit Effective Time, which occurred after the ████████

████████████████████████, and which is the final event in the merger chain,

Realtek is informed and believes that Unit Merger Sub and Cash/Stock Merger Sub

merged into Broadcom Corp.  Realtek is informed and believes that the corporate

structure was transformed to the following, with Broadcom Corp. becoming a

subsidiary, albeit indirect, of Holdco, i.e., Pavonia Ltd., resulting in the new

corporate structure set forth below:

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.



52.    Again, Realtek is informed and believes that, as of the Unit Effective

Time, not one of these companies was an █████████████████████████

53.    The "business combination" addressed above was completed—and

thus the various "Effective Time[s]" discussed above—were all completed no earlier

than February 1, 2016.  As the merger documents state, the business combination

was completed on February 1, 2016.

54.    Realtek is informed and believes that this scheme of arrangement

caused shareholders of Avago Technologies Ltd. to have their ordinary shares

cancelled, and they received shares of Pavonia (aka Holdco), and there is no

18

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

evidence that either Avago Technologies Ltd. or Avago General IP ███████████

of any of the entities listed above as of the Unit Effective Time.

55.    Realtek is informed and believes that only ***after*** the completion of all

of the transactions above, including the Unit Effective Time, did Broadcom Limited

become the successor in interest to Avago Technologies Ltd., through an

undisclosed corporate restructuring.

56.    Realtek is informed and believes that such restructuring did not involve

any consideration between Avago Technologies Ltd. and Pavonia (aka Holdco).

Indeed, Realtek is informed and believes that ***no such consideration was reported***

***in any annual report***.  Without any consideration, and as part of a corporate

restructuring, the "scheme of arrangement" ████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████ The transaction that

led to the affiliation between Broadcom Corp., on the one hand, and Avago General

IP and its affiliates, on the other hand, ████████████████████

█████████████████████

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

57.     Realtek is informed and believes that Pavonia (Holdco) ultimately changed its name to Broadcom Limited, which Realtek is informed and believes became the successor in interest to Avago Technologies Ltd. through the $0 corporate reorganization discussed above.  Realtek is informed and believes that, in 2018, Broadcom Ltd. changed its name to Broadcom Inc., which is Defendant BCI.

58.     In sum, although BCI, as the successor to Avago Technologies Ltd., did indeed become the ultimate parent of Broadcom Corp., it was not via an ████████████ of Broadcom Corp. by Avago Technologies Ltd. (or any ██████████ thereof) as the timeline below shows:



59.     Broadcom Corp. was not ████████ by Avago General IP or an ██████████ thereof.

60.     Because LSI/Avago/Broadcom chose to utilize a complicated Singaporean "scheme of arrangement" that created a gap in mutual ownership during

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

the combination, evidently to avoid U.S. and foreign taxes and regulatory requirements, Realtek is informed and believes that ███████████████████

████████████████████████████████████████████

█████████████████████████ Instead, the License Agreement excludes acquisitions conducted under U.S. corporate procedures rather than a complex transaction executed under a Singaporean "scheme of arrangement" that occurred between shareholders likely to avoid U.S. and international taxes.

61.    Accordingly, Defendants will not be able to show that this complex foreign scheme renders Broadcom Corp. an ████████████████████

██████████████ between Realtek, on the one hand, and Avago General IP and its affiliates, on the other hand, pursuant to the License Agreement.  Broadcom Corp. ██████████████████████████████████

██████████████ after the Unit Effective Time, through a transaction that the █████████████████████████████████

██████████ to Broadcom Corp.

62.    The negotiation history of the License Agreement confirms this conclusion. ████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████.

Discovery will reveal the discussions between the parties regarding the various

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

██████████████████████████████.  Discovery will also

identify the ████████████████████████████████████

███████████████████

**(Avago Sales is Created and Accepts Assignment of the License Agreement)**

63.    There is a second, and separate reason that Broadcom Corp. is a

████████████ under the License Agreement.

64.    Following the Singaporean scheme of arrangement, and the subsequent

transaction through which Broadcom Corp. and Avago Technologies Ltd. (later

BCI) became affiliated, BCI went through another reorganization.

65.    Realtek lacks the details of such reorganization, but on information and

belief, the reorganization involved the creation of a new entity, Avago Sales, as a

wholly owned subsidiary of BCI, and the dissolution of Avago General IP.

66.    Realtek does not know when Avago Sales was created, and when (on

information and belief) BCI chose to dissolve Avago General IP.  But Avago

General IP filed briefs in U.S. District Court in Delaware in late 2017, which

suggests that it was still a going concern at that time.

67.    Upon information and belief, after late 2017, Avago General IP

assigned its rights and obligations, including various patents and—on information

and belief—the License Agreement to the newly created entity, Avago Sales.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

68.    As part of the reorganization, or sometime afterward, Realtek is informed and believes that BCI caused its other wholly owned subsidiary, Broadcom Corp., to assign its Patents to Avago Sales.  Realtek is informed and believes that ███████████████████████████████████████████████████████████

69.    The License Agreement provides ██████████████████████████████ ██████████████████████████    Accordingly, all of their (and their ██████████████ patents in existence ███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████

70.    Thus, even if Broadcom Corp. was an █████████████ with respect to Avago General IP, it was *not* an ████████████ of Avago Sales.  Broadcom Corp. was a ███████████████ at the time BCI caused the assignment of the License Agreement to Avago Sales, which means that Avago Sales' patents and Broadcom Corp.'s patents all were licensed to Realtek as of the date BCI caused Avago General IP to assign the License Agreement to Avago Sales.

71.    Realtek is informed and believes that Defendants caused this assignment through a joint, knowing, and concerted decision to have Avago Sales

23

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

accept—on all of their behalf—the terms of the License Agreement as of the date of assignment.

72.     As of the time of the assignment, Defendants had actual knowledge of Realtek's position that it holds a license to all patents that Broadcom Corp. originally owned, which now on information and belief, Avago Sales owns.  Realtek explained that position during litigation brought in U.S. District Court for the District of Delaware in 2017, which is discussed below, and in proceedings Realtek initiated before the ITC in 2022, which also are discussed below.

**(Avago Sales Sues ▮▮▮ for Patent Infringement)**

73.     ▮▮▮ is a Realtek customer that uses Realtek's integrated circuits in its ▮▮▮ In April/May of 2024, Avago Sales sued ▮▮▮ in the Unified Patent Court ("UPC") in Germany, and in German courts, for patent infringement.  The basis for ▮▮▮ alleged infringement is ▮▮▮ use of Realtek integrated circuits in ▮▮▮ vehicles.

74.     Avago Sales has requested injunctions, and the German courts will determine whether to grant the requested injunctions on February 20, 2025.

75.     As indicated, Avago Sales' infringement claims are improper because Realtek has a license to the asserted patents.  Avago Sales inappropriately sued ▮▮▮ in the UPC despite Realtek's valid license.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

76. Realtek is informed and believes that ▓▓▓ informed Avago Sales that the allegedly infringing technology comes from Realtek and is licensed. Realtek is informed and believes that Avago Sales never contacted Realtek to dispute the assertion of a license or—if it believed Realtek's technology was not licensed—to offer a license Realtek a license on RAND terms.

77. If ▓▓▓ is found to infringe the patents, the consequences will be severe. The resulting injunction could likely halt ▓▓▓ sales in Europe and decimate ▓▓▓ supply chains that involve Realtek's products. This could likely cause immense harm to ▓▓▓ and destroy Realtek's relationship with ▓▓▓ and ▓▓▓ supply chain.

**(Prior Proceedings Before the U.S. District Court for the District of Delaware Involving the License Agreement)**

78. Realtek previously attempted to obtain judicial clarification of the scope of the License Agreement when Defendants threatened (as they are again threatening) Realtek's customers.

79. For example, in May and June 2016, Avago General IP, Avago Sales, and/or Broadcom Corp. communicated with Realtek's customers ▓▓▓ and ▓▓▓ and accused them of infringing Broadcom Corp.'s patents by selling and using products that include integrated circuits provided by Realtek.

---

[1] ▓▓▓▓▓▓▓▓▓▓▓▓▓

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

80.    Upon investigation, Realtek learned of the Singaporean "scheme of arrangement" and discovered that it held a license to Broadcom Corp.'s patents pursuant to the terms of the License Agreement.

81.    Accordingly, as of at least August 2016, Realtek began informing its customers that Realtek's products were licensed.

82.    Upon information and belief, Realtek's customers informed Broadcom Corp. (and later Avago Sales) of Realtek's position that its products are licensed. Broadcom Corp. was also aware, due to its discussions directly with Realtek, that Realtek's integrated circuits practiced various 802.3 standards.

83.    Realtek and its customers relied on their understanding that Realtek's products were licensed to the Broadcom Corp. patents pursuant to the License Agreement.  Realtek and its customers made purchase and sales decisions, expended significant resources designing their products to include Realtek integrated circuits, and developed supply chains and product strategies based on those decisions.

84.    On March 7, 2017, Avago General IP and/or Broadcom Corp. initiated an action in the ITC alleging that LG Electronics infringed five patents by using Realtek integrated circuits in its products.

85.    After it learned that Defendants were continuing to threaten Realtek's customers, Realtek contacted Avago General IP and Broadcom Corp. and explained

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

that the accused products were licensed, and they should drop the asserted infringement claims, but Broadcom Corp. disagreed.

86.    Realtek therefore filed, on August 8, 2017, complaints in the U.S. District Court against, respectively, Avago General IP and Broadcom Corp. to affirm its rights under the License Agreement.  Realtek alleged breach of contract, breach of the implied duty of good faith and fair dealing, tortious interference with contract and business relations, and Realtek also sought declaratory judgment.

87.    In its complaints, Realtek again made clear its belief that its products were licensed to the Broadcom Corp. products pursuant to the License Agreement.

88.    On December 19, 2017, the District Court dismissed both actions for lack of subject matter jurisdiction without resolving the substantive dispute on Realtek's rights under the License Agreement.  Regardless, Defendants were again on notice of Realtek's belief that its products were licensed, that it was informing its customers that its products were licensed, and that Realtek and its customers were acting accordingly.

89.    Neither Broadcom Corp. nor Avago Sales took any legal action to contest Realtek's assertion until filing suit against ███ 7 years later in 2024, even though they knew that Realtek's products practiced the IEEE 802.3 standards, and Realtek's position was that its products were licensed to Defendants' patents, and Realtek and its customers had invested, and would continue to invest, immense

27

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

resources developing products that practiced the standard and working with customers to allow Realtek's integrated circuits to be used in their products.

**(Prior Proceedings Before the International Trade Commission Involving the License Agreement)**

90.    On December 12, 2022, Realtek filed a complaint with the ITC against Advanced Micro Devices Inc. ("AMD").  The complaint alleged that AMD infringed three of Realtek's patents.

91.    Realtek's complaint also contained allegations regarding the License Agreement because Realtek relied on Defendants' licensed use of Realtek's technology to satisfy the "Domestic Industry" requirement.    In particular, Defendants alleged that BCI, as Realtek's licensee, was using Realtek's patented technology pursuant to its rights under the License Agreement.

92.    An Administrative Law Judge ("ALJ") ultimately determined that Broadcom Corp. *was* using Realtek's patented technology.  For example, in the public version of the Initial Determination issued on January 19, 2024, the ALJ found (on pages 43-45) that Broadcom Corp.'s BCM4387 and BCM4389 chips practice claims 1, 2, and 8 of Realtek's U.S. Patent No. 7,935,245 ("the '245 patent").  He likewise found (on pages 115-22) that those products practice claims 12, 13, and 15-18 of Realtek's U.S. Patent No. 8,006,218 ("the '218 patent").  In addition, he found (on pages 193-197) that Broadcom Corp.'s products practice claims 1-3 of Realtek's U.S. Patent No. 9,590,582 ("the '582 patent").

28

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

93.    On information and belief, Defendants use not only the patented technology in the '245, '218, and '582 patents, but also make, use, and sell a wide range of products that use Realtek's technology protected by other Realtek patents.

94.    Realtek has consistently taken the position that Defendants' products are licensed pursuant to the License Agreement.

95.    The ALJ adopted Realtek's arguments in part, concluding that some of Broadcom Corp.'s products are licensed, and others are not.  Specifically, the ALJ ruled that BCI and Broadcom Corp. do not have licenses to Realtek's patents, but Avago Sales does have a license.  Thus, when Avago Sales' sells products that BCI and Broadcom Corp. design, make, or use, those sales are licensed.

96.    Upon information and belief, that conclusion is contrary to Defendants' views regarding the scope of the License Agreement.  Realtek is informed and believes, and on that basis alleges, that Defendants do not agree with the ALJ's conclusions about the scope of the License Agreement.

97.    Realtek likewise disagrees with the ALJ's conclusions.  For example, the ALJ's conclusions could create the untenable and irrational situation in which BCI and Broadcom Corp.—if not ████████████████—are infringing Realtek's patents but can circumvent that infringement by using ██████████████████ ████████████████████████████████████ ██████████████████████████

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

98.    The ALJ's interpretation of the License Agreement has no preclusive effect because the ITC determined that it would review the ALJ's conclusions and holdings regarding the scope of the License Agreement.  And while the review process was ongoing, AMD and Realtek reached a settlement.  The ITC therefore terminated the Investigation.

99.    In an abundance of caution, however, Realtek intends to appeal the ALJ's rulings regarding the scope of the license, among other issues.

100.    The dispute between Realtek and Broadcom Corp. regarding the scope of the License Agreement remains unresolved despite repeated efforts to address it. The pending litigation against ███ is at least the third occasion in which Realtek and Defendants have been involved in a dispute regarding the scope of the parties' rights under the License Agreement.

101.    As outlined above, since at least 2016, Realtek has repeatedly asserted its rights to the Broadcom Corp. patents pursuant to the License Agreement both in communications to Realtek's' customers, which are believed to have been communicated to Broadcom Corp., and in its 2017 lawsuit. For at least 7 years, neither Broadcom Corp. nor Avago Sales had taken any legal action to contest Realtek's assertion, even as they encouraged (through their inaction) Realtek to expend resources working with customers to incorporate Realtek's integrated

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

circuits that conform to IEEE standards into their products and to create a supply chain that would satisfy their customers' needs.

102.   This Court's assistance is needed to bring clarity because (on information and belief) Defendants, Realtek, and the ITC ALJ have all reached different conclusions regarding the scope of the License Agreement.

103.   Resolution is urgent because Realtek and its customers, including ██████, are threatened with irreparable harm in the form of disruptions to their supply chains, elimination of their ability to sell products in Europe, and Realtek's loss of a beneficial relationship with ██████

**(Broadcom Corp.'s and Avago Sales's Refusal to Comply with its RAND Obligations – Overview of Standards Setting Organizations, the IEEE and the 802.3 Standards)**

104.   Defendants made contractual commitments to license their patents that are essential to the IEEE's 802.3 standards on RAND terms.

105.   The IEEE is a standards setting organization (also known as a standards development organization) for a broad range of technologies, including electric power and energy, telecommunications, and consumer electronics.  It "is the world's largest technical professional organization dedicated to advancing technology for the benefit of humanity" and its "core purpose is to foster technological innovation

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

and excellence for the benefit of humanity."  The IEEE "has a global presence with seven offices internationally."[2]

106.   Standards, such as the 802.3 standards at issue here, are essential to guarantying interoperability across different companies' products, while also enabling product differentiation and industry competition.

107.   The IEEE's 802.3 standards relate to Ethernet, which is a family of wired, as opposed to wireless, computer networking technologies commonly used in local area networks, metropolitan area networks and wide area networks.  The 802.3 standards define the physical layer and data link layer's media access control ("MAC") of wired Ethernet.   Wired technologies are generally considered less valuable than wireless standards under 802.11, but they are nonetheless important in several industries.

108.   As discussed below, Ethernet has become an important technology in the automotive industry as it offers various benefits compared to traditional automotive networking protocols.

109.   The original 802.3 standards were released in 1983, with numerous subsequent updated versions (denoted alphanumerically as 802.3a, 802.3b, 802.3c, etc.) up to the most recent version, 802.3df in 2024.

---

[2] https://www.ieee.org/about/vision-mission.html.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

110.    On the importance of standards, such as the 802.3 standards, the IEEE has explained:

> Providing a common global language for product development, standards make it possible for cell phones to communicate with each other anywhere in the world, for bank cards to fit into any cash machine, for consumers to buy a light bulb for just about any lamp in any store, and for them to be able to plug that lamp into an electrical outlet.[3]

111.    However, standards often require the use of patented intellectual property to implement.  Those patents are referred to as "essential" patents because the patented technology is essential to implementing the standard.  There is a risk, then, that the holders of those essential patents can engage in what is known as "patent holdup."

112.    Patent holdup occurs where, after a standard is adopted and compliant products are produced, a patent holder asserts rights over technology covered by the standard.  Generally, the royalties a patent holder can charge are constrained by the availability of alternative technical solutions for performing the same function.  However, once a standard mandates the use of a particular patented technology, other technical options are no longer feasible alternatives, giving the patent holder

---

[3]                    https://innovationatwork.ieee.org/why-technical-standards-are-essential-in-productdevelopment/.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

near monopolistic leverage to demand excessive royalties that do not reflect the true value of the technology.

113.   This issue is compounded for companies like Realtek that invest heavily in creating innovative products that align with the technical standard. Even if an alternative standard were available, the expense and disruption of transitioning to it often make switching impractical, leading to "lock-in," where companies are bound to produce and sell products that meet the existing standard. The public's reliance on standards-compliant products further solidifies this lock-in effect, as moving to alternative, non-infringing options becomes costly and difficult. This high switching cost applies across all elements of the standard, even for those components with minimal impact on the overall functionality of the standard-compliant product.

114.   Accordingly, to facilitate industry-wide adoption of standards, while also mitigating against anti-competitive patent hold-up, standards setting organizations, like IEEE, employ various licensing frameworks to balance the rights of the patent holders with the benefits of standardization.

115.   The IEEE uses a licensing framework that relies on contractual commitments from essential patent holders to license those essential patents on RAND terms.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

**(Broadcom Corp.'s and Avago Sales's Letters of Assurance Committing to License all of their 802.3 Essential Patents on RAND Terms)**

116.  To bind essential patent holders to their RAND obligations, the IEEE requires those patent holders to submit letters of assurance ("LOAs") containing, in pertinent part:

> b) A statement that the Submitter will make available a license for Essential Patent Claims to an unrestricted number of Applicants on a worldwide basis without compensation or *under Reasonable Rates, with other reasonable terms and conditions that are demonstrably free of any unfair discrimination* to make… any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard.

IEEE Standards Board Bylaws, § 6.1 (defining "licensing assurance").

117.  Broadcom Corp. and Avago Sales's predecessor-in-interest submitted numerous LOA's publicly declaring and committing themselves to provide licenses to 802.3 essential patents on RAND terms.

118.  On April 30, 2007, Broadcom Corp. submitted an LOA for IEEE 802.3ap ("2007 LOA") whereby it granted a license for "Backplane Ethernet" and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide, non-discriminatory basis with reasonable terms and conditions to comply with the [Proposed] IEEE Standard." A true and correct copy of the 2007 LOA is attached hereto as Exhibit 2.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

119.   On August 8, 2008, Broadcom Corp. submitted an LOA for IEEE P802.3at whereby it granted a license for "DTE Power via the MDI Enhancements" ("2008 DTE Power LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also states that "this Letter of Assurance is a Blanket Letter of Assurance. As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated above…" A true and correct copy of the 2008 DTE Power LOA is attached hereto as Exhibit 3.

120.   On August 8, 2008, Broadcom Corp. also submitted an LOA for IEEE P802.3az whereby it granted a license for "Media Access Control Parameters, Physical Layers and Management Parameters for Energy-Efficient Ethernet" ("2008 Ethernet LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2008 Ethernet LOA is attached hereto as Exhibit 4.

121.   On March 11, 2009, Broadcom Corp. submitted an LOA for IEEE 802.3aq whereby it granted a license for "10GBASE-LRM" ("March 2009 LOA") and committed to "grant a license under reasonable rates to an unrestricted number

36

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the March 2009 LOA is attached hereto as Exhibit 5.

122.   On May 15, 2009, Broadcom Corp. submitted an LOA for IEEE P802.3av whereby it granted a license amending "IEEE 802.3-2008: Physical Layer Specifications and Management Parameters for 10Gb/s Passive Optical Networks" ("May 2009 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the May 2009 LOA is attached hereto as Exhibit 6.

123.   On September 26, 2010, Broadcom Corp. submitted an LOA for IEEE P802.3bf whereby it granted a license for "Media Access Control (MAC) service interface and management parameters to support time synchronization protocols" ("2010 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2010 LOA is attached hereto as Exhibit 7.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

124.   On February 6, 2013, Broadcom Corp. submitted an LOA for IEEE P802.3bn whereby it amended its standard for the Ethernet "Physical Layer Specifications and Management Parameters for Ethernet Passive Optical Networks Protocol over Coax" ("February 2013 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the February 2013 LOA is attached hereto as Exhibit 8.

125.   On August 7, 2013, Broadcom Corp. submitted an LOA for IEEE 802.3.1 whereby it granted a license for "Management Information Base (MIB) Definitions for Ethernet" ("MIB 2013 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the MIB 2013 LOA is attached hereto as Exhibit 9.

126.   On August 7, 2013, Broadcom Corp. submitted an LOA for IEEE 802.3bm whereby it granted a license for "Physical Layer Specifications and Management Parameters for 40 Gb/s and 100 Gb/s Operation Over Fiber Optic

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

Cables" ("Fiber Optic Cables 2013 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the Fiber Optic Cable 2013 LOA is attached hereto as Exhibit 10.

127.    On August 7, 2013, Broadcom Corp. submitted an LOA for IEEE 802.3-2012 whereby it granted a license for "Ethernet" ("Ethernet 2013 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the Ethernet 2013 LOA is attached hereto as Exhibit 11.

128.    On September 10, 2014, Broadcom Corp. submitted an LOA for IEEE 802.3bw whereby it amended its Ethernet license grant for "Physical Layer Specifications and Management Parameters for 100 Mb/s Operation Over a Single Balanced Twisted Pair Cable (100Base-T1)" ("September 2014 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

Assurance is a Blanket Letter of Assurance." A true and correct copy of the September 2014 LOA is attached hereto as Exhibit 12.

129. On November 5, 2014, Broadcom Corp. submitted an LOA for IEEE 802.3br whereby it granted a license amending its Ethernet "Specifications and Management Parameters for Interspersing Express Traffic" ("November 2014 LOA") and committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the November 2014 LOA is attached hereto as Exhibit 13.

130. On January 21, 2015, Broadcom Corp. submitted an LOA for IEEE 802.3by whereby it granted a license amending its Ethernet "Media Access Control Parameters, Physical Layers and Management Parameters for 25 Gb/s Operation" ("January 2015 LOA") and committed to  "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination." It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the January 2015 LOA is attached hereto as Exhibit 14.

131. On March 20, 2015, Broadcom Corp. submitted an LOA for IEEE 802.3bp whereby it granted a license for "Copper Cable" ("March 2015 LOA") and

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the March 2015 LOA is attached hereto as Exhibit 15.

132.    On February 28, 2017, Broadcom Corp. submitted an LOA for IEEE 802.3bu whereby it granted a license for "Twisted-Pair Ethernet" ("2017 LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2017 LOA is attached hereto as Exhibit 16.

133.    On March 30, 2018, Broadcom Corp. submitted an LOA for IEEE P802.3ca whereby it granted a license for "25 Gb/s. 50 Gb/s. and 100 Gb/s Passive Optical Networks" ("March 2018 LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the March 2018 LOA is attached hereto as Exhibit 17.

134.    On April 24, 2018, "Avago Technologies General IP (Singapore) Pte. Ltd., a wholly owned subsidiary of Broadcom, Inc." submitted an LOA for IEEE P802.3bs whereby it granted a license for "Media Access Control Parameters, Physical Layers and Management Parameters for 200 Gb/s Operation and 400 Gb/s Operation" ("April 2018 LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the April 2018 LOA is attached hereto as Exhibit 18.

135.    On April 24, 2018, Avago Technologies Ltd. submitted an LOA for IEEE P802.3cd whereby it granted a license for "Media Access Control Parameters

42

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

for 50 Gb/s and Physical Layers and Management Parameters for 50 Gb/s, 100 Gb/s, and 200 Gb/s Operation" ("2018 MAC LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2018 MAC LOA is attached hereto as Exhibit 19.

136.   On May 1, 2018, Avago Technologies Ltd. submitted an LOA for IEEE P802.3ch whereby it granted a license "for Ethernet Physical Layer Specifications….1 Gb/s Automotive Ethernet" ("2018 Ethernet LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the 2018 Ethernet LOA is attached hereto as Exhibit 20.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

137.    On May 1, 2018, Avago Technologies Ltd. submitted an LOA for IEEE P802.3cg whereby it granted a license amending its Ethernet "Physical Layer Specifications and Management Parameters" ("May 2018 LOA") and committed to "make available a license for Essential Patent Claims under Reasonable Rates to an unrestricted number of Applicants on a worldwide basis with other reasonable terms and conditions that are demonstrably free of unfair discrimination to make….any Compliant Implementation that practices the Essential Patent Claims for use in conforming with the IEEE Standard identified…" It also indicates that "this Letter of Assurance is a Blanket Letter of Assurance." A true and correct copy of the May 2018 LOA is attached hereto as Exhibit 21.

**(Broadcom Corp.'s and Avago Sales' Continuing Refusal to License 802.3 Essential Patents to Realtek on RAND Terms)**

138.    Consistent with the repeated representations outlined in the foregoing LOA's, Realtek was led to believe that Defendants would license their 802.3 essential patents on RAND terms.

139.    Unfortunately, Defendants' representations were false.

140.    On July 8, 2015, Realtek requested, █████████████████████████

██████  ██████  █████  █████  ████  █████  ███████  ████  █

██████████████████████████████████████████████████

██████████████████████████████████████████████████

44

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

141.   On July 29, 2015, Broadcom Corp. responded, initially ████

142.   On November 3, 2015, Broadcom Corp. ████

143.   Broadcom Corp., however, ████

144.   For example, Broadcom Corp. ████

145.   Broadcom Corp. included ████

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

146.   Further, Broadcom Corp. █████████████████████████████████

147.   Ultimately, Broadcom Corp. refused to license its patents on RAND terms.

148.   During negotiations, ████████████████████████████████

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

149.   Avago Sales is now targeting Realtek's customers, including ▮▮▮, but did not offer a RAND license to Realtek before suing those customers.  Defendants have persisted in their failure to license their standard-essential patents to Realtek on RAND terms.

150.   Defendants' refusal to license 802.3 essential patents on RAND terms demonstrates Defendants' ongoing breach and, at a minimum, creates a current and genuine dispute as to whether such terms are RAND compliant and whether Defendants will abide their commitment to license 802.3 essential patents on RAND terms.

151.   Realtek expects that Defendants will belatedly make a license offer and contend that it is a RAND offer.  Realtek will negotiate in good faith, but Defendants have already breached their RAND obligations, to Realtek's detriment.

152.   Any negotiations that follow the filing of this Complaint are not grounds to deny Realtek the requested injunction.  In fact, in the prior litigation Realtek was forced to bring against Defendants' affiliates LSI and Agere, the court granted Realtek its requested injunction and denied LSI/Agere's request to stay the case to allow negotiations to continue.  The Court recognized that a stay would reward Defendants' affiliates efforts to circumvent their RAND obligations.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

## COUNT I

### (Breach of Contract – License Agreement)

153.   Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-152 above.

154.   The License Agreement constitutes a valid and enforceable contract.

155.   Under Section 3.01 of the Licensing Agreement, Realtek ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ ” Ex. 1 § 3.01.

156.   The License Agreement defines "████████ as:



*Id.* at 13.

157.   The License Agreement further defines "████████" as

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.



*Id.* at 14.

158.   At the time of the ███████████████ Broadcom Corp. held the rights to European Patents 1 903 733 and 1 770 912.

159.   As a result of the Merger Plan on May 28, 2015, utilizing a Singaporean "scheme of arrangement," after the ████████████████████ ███████████ were through the string of transactions, pleaded in detail above, BCI's predecessor ultimately became the parent of Broadcom Corp.

160.   It was only after BCI become the successor in interest to Avago Technologies Ltd., through an undisclosed corporate restructuring, that it became an affiliate of Avago Sales. Therefore, Broadcom Corp. was not ████████████ by Avago General IP or any of its affiliates and is therefore not an ████████████ ████████████████████.

161.   Following these transactions, BCI caused another corporate reorganization where, upon information and belief, Avago Sales was created as a new entity and wholly owned subsidiary of BCI.

49

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

162. Upon information and belief, sometime after late 2017, Avago General IP assigned its rights and obligations under the License Agreement to a newly created entity, Avago Sales, and Avago General IP dissolved.

163. BCI caused its other wholly owned subsidiary, Broadcom Corp., to assign its Patents to Avago Sales.

164. The License Agreement provides that



165. Avago Sales breached Section 3.01 of the Licensing Agreement by suing ██████ in several courts in Germany alleging patent infringement for using Realtek's integrated circuits in ██████ vehicles, thus frustrating Realtek's license to use Avago Sale's patents.

166. If on February 20, 2025, ██████ is found to infringe the patents, the resulting injunction will halt ██████ sales in Europe and likely will halt sales in the United States and will also decimate ██████ supply chains. This will cause immense harm to ██████ and Realtek.

167. As a direct and proximate result of Avago Sale's breach of the Licensing Agreement, Realtek will be irreparably harmed by, among other things, the loss of its supplier relationship with ██████.

50

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

168.   Therefore, Realtek has no adequate remedy at law and is entitled to injunctive relief prohibiting Avago Sales from pursuing claims against ███ in Germany for infringement by using Realtek's products and/or from enforcing any injunction it obtains in Germany against ███.

## COUNT II

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

169.   Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-168 above.

170.   As is true with all contracts, the License Agreement includes an implied covenant that the parties will exercise their obligations under the contract in good faith, deal fairly with the other parties to the contract, not discriminate against other parties, and refrain from actions that would deprive the contracting parties of the benefits of their bargain.

171.   Under Section 3.01 of the License Agreement, ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████

172.   To the extent the Court determines that the express language in the Licensing Agreement does not provide Realtek with a license to Broadcom Corp.'s

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

patents (now owned by Avago Sales), the Licensing Agreement provides Realtek with an implied license.

173.   At the time the parties were negotiating the Licensing Agreement, the parties had intended that, ███████████████████████████████

███████████████████████████████████████████

███████████████████

174.   What the parties had not intended was for one party to engage in a complex reorganization in an effort to be able to use one party's patents in their products but prevent the other party from doing the same.

175.   Specifically, at the time the License Agreement was negotiated and executed, Realtek did not contemplate that utilizing a Singaporean "scheme of arrangement," the successor in interest to the License Agreement, Avago Sales would claim the right to sell and procure otherwise infringing products from Broadcom Corp. or BCI—and thereby claim to have a license to Realtek's patents—but simultaneously contend that Realtek's products were not authorized to practice Broadcom Corp.'s or BCI's patents.  That position prevents Realtek from having its bargained for license.

176.   Had the parties known how Defendants would use the carve-out for later acquired companies in the definition of "███████████" to deny Realtek the benefit of its bargain, they would have negotiated for a different definition that

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

would account for the type of reorganization and "scheme of arrangement" that ensued.

177.    Avago Sales, Broadcom Corp.'s, and BCI's failure to act in good faith—by utilizing Avago General IP's (and now Avago Sales') license to Realtek's patents to claim a license to Realtek's patents for all of Broadcom Corp.'s and BCI's products—has precluded Realtek from receiving the benefit of its bargain under the License Agreement and breached Defendants' implied obligations in Section 3.01.

178.    Avago Sales has sued Realtek's customer ▮▮▮ in Germany for patent infringement for using Realtek's integrated circuits in ▮▮▮ vehicles while simultaneously using Realtek's patented technology for its affiliates Broadcom Corp. and BCI.

179.    As a result, if the Court does not enjoin Avago Sales from pursuing claims against ▮▮▮ in Germany for infringement by using Realtek's products and/or from enforcing any injunction it obtains in Germany against ▮▮▮ Realtek will be irreparably harmed by, among other things, the loss of its supplier relationship with ▮▮▮

180.    Alternatively, if the Court concludes that Realtek is not licensed to Broadcom Corp.'s patents, then the Court should declare that Avago Sales cannot make, use, sell, or have made any product from Broadcom Corp., BCI, or any third party without infringing Realtek's patents.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

## COUNT III

**(Declaratory Judgment that Defendants Must Offer a License on RAND Terms Before Obtaining Injunctive Relief Against ▆▆▆▆ that the Defendants Are Continuing to Breach their RAND Obligations Because the Previously Proposed Licensing Terms Do Not Comply with RAND)**

181. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-180 above.

182. Avago Sales, individually and as successor-in-interest to the Broadcom Corp. patents, contractually committed itself to license all patents essential to the 802.3 standards, including 802.3bw, on RAND terms pursuant to the LOAs, the IEEE Bylaws, and the IEEE patent policy.

183. As alleged above, Broadcom Corp. and Avago Sales submitted numerous LOAs promising to license 802.3 essential patents on RAND terms, including patents essential to the specific 802.3bw version at issue in the ▆▆▆▆ litigation. These LOAs, and Broadcom Corp.'s and Avago Sales's related conduct, created binding and enforceable contractual agreements under which Broadcom Corp. and Avago Sales irrevocably agreed and are obligated to offer a license to their declared essential patents on RAND terms.

184. Realtek is an express and implied third-party beneficiary of these contractual commitments. Third-party implementors of IEEE 802.3 Ethernet standards, such as Realtek, have a right to license standards essential patents on RAND terms.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

185.   There is a genuine dispute between the parties as to whether Defendants have complied with their obligation to make their 802.3 essential patents available to license on RAND terms, and whether the terms previously offered comply with Defendants' RAND obligations.

186.   This dispute is of sufficient immediacy and reality to warrant a declaratory judgment.

187.   Realtek is entitled to a declaratory judgment that Defendants' proposed licensing terms are not RAND compliant.  Defendants are likewise have, and are continuing to, breach their obligations to offer Realtek a license on RAND terms.

## COUNT IV
### (Tortious Interference with Contractual Relations)

188.   Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-187 above.

189.   The License Agreement constitutes a valid and enforceable contract between Realtek and Avago Sales.

190.   Because BCI controls the actions of its wholly owned subsidiaries Avago Sales and Broadcom Corp., BCI has been aware of the Licensing Agreement and the contractual relationship between Avago Sales and Realtek, which licensed to Realtek any of Avago Sales' and its ▇▇▇▇▇ patents in existence prior to the ▇▇▇▇▇, including European Patents 1 903 733 and 1 770 912.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

191.   Realtek had a reasonable expectation that its contractual right under the License Agreement to use any of Avago Sales' and its ████████████' patents in existence prior to the ████████████, including European Patents 1 903 733 and 1 770 912 would continue indefinitely and not be impeded.

192.   Despite BCI's knowledge of Realtek's license to European Patents 1 903 733 and 1 770 912, BCI caused Avago Sales to breach the License Agreement by suing ████ in the UPC and in German regional courts for patent infringement for using Realtek's integrated circuits in ████ vehicles.

193.   BCI's interference has frustrated Realtek's contractual license to utilize Avago Sale's patents.

194.   If on February 20, 2025, ████ is found to infringe the patents, the resulting injunction will halt ████ sales in Europe and decimate ████ supply chains.  This will cause immense harm to ████ and destroy Realtek's relationship with ████

195.   As a direct and proximate cause of BCI's interference, Realtek will be irreparably harmed by, among other things, the loss of its relationship with ████

196.   Therefore, Realtek has no adequate remedy at law and is entitled to injunctive relief prohibiting Avago Sales from pursuing claims against ████ in Germany for infringement by using Realtek's products and/or from enforcing any injunction it obtains in Germany against ████

56

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

## COUNT V

### (Declaratory Judgment – Implied License/Equitable Estoppel)

197.    Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-196 above.

198.    As outlined above, at least since 2016, Realtek has consistently asserted in the marketplace and in litigation that its products that implement the 802.3 standards are licensed to Broadcom Corp.'s essential patents pursuant to the License Agreement.

199.    Avago Sales and/or Broadcom Corp. have been on actual and/or constructive notice of Realtek's assertion.

200.    Until filing suit against ███ in a foreign jurisdiction 2024, neither Avago Sales nor Broadcom Corp. took any legal action to contest Realtek's assertion that it is licensed to Broadcom Corp.'s patents.

201.    In response to the IEEE's express encouragement to adopt and implement the 802.3 standards, Realtek and its customers relied on Avago Sales' and Broadcom Corp.'s acquiescence and inaction to continue supplying the market with products that comply with the 802.3 standards.

202.    It would be unfairly prejudicial and highly inequitable for Avago Sales and/or Broadcom Corp. to allow Realtek and its customers to supply the market with products that implement the 802.3 standards for 7 years, as expressly encouraged by

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

the IEEE, before suddenly claiming that Realtek's products infringed on Broadcom Corp.'s 802.3 essential patents.

203.    Realtek is therefore entitled to a declaratory judgment that it has an implied license to the Broadcom Corp. 802.3 essential patents via equitable estoppel.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

A.    A judgment that Avago Sales has breached and continues to breach the License Agreement;

B.    Permanently enjoining Avago Sales from breaching the License Agreement by pursuing claims against ███ in Germany for infringing SEPs by using Realtek's products;

C.    Permanently enjoining Avago Sales from enforcing any injunction it obtains in Germany against ███;

D.    An order that Broadcom Corp. breached its obligations to the IEEE, for which Realtek is a third-party beneficiary;

E.    An award of damages in favor of Realtek for the fees and costs incurred in defending against the infringement claims Defendants improperly asserted, including prejudgment and post-judgment interest;

58

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

F.    An award of attorneys' fees and costs in favor of Realtek in bringing

this action; and

G.    Such other relief as this Court deems just and proper.


Dated: October 31, 2024          **K&L GATES LLP**

                                  */s/ Steven L. Caponi*
                                  Steven L. Caponi (No. 3484)
                                  Megan E. Hunt (No. 6569)
                                  600 King Street, Suite 901
                                  Wilmington, DE 19801
                                  Phone:  (302) 416-7000
                                  steve.caponi@klgates.com
                                  megan.hunt@klgates.com

                                  *Counsel for Plaintiff*

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

EFiled: Oct 31 2024 11:26PM EDT
Transaction ID 74924134
Case No. 2024-1127-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION, | |
| Plaintiff, | C.A. No. |
| v. | **FILED UNDER SEAL** |
| AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD., BROADCOM CORPORATION, and BROADCOM INC., | |
| Defendants. | |

## <u>EXHIBIT 1 TO VERIFIED COMPLAINT</u>

YOU ARE IN POSSESSION OF A CONFIDENTIAL FILING FROM THE COURT OF CHANCERY OF THE STATE OF DELAWARE.

IF YOU ARE NOT AUTHORIZED TO VIEW THIS DOCUMENT UNDER RULE 5.1 OR BY COURT ORDER, READ NO FURTHER THAN THIS PAGE AND CONTACT THE FOLLOWING PERSON:

Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
K&L GATES LLP
600 King Street, Suite 901
Wilmington, DE 19801
steven.caponi@klgates.com
megan.hunt@klgates.com
*Attorneys for Plaintiff*

Pursuant to Rule 5.1, a public version of this document is not required.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

# Exhibit 1

## REDACTED IN ITS ENTIRETY

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

EFiled: Oct 31 2024 11:26PM EDT
Transaction ID 74924134
Case No. 2024-1127-

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION, | |
| Plaintiff, | C.A. No. |
| v. | **FILED UNDER SEAL** |
| AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD., BROADCOM CORPORATION, and BROADCOM INC., | |
| Defendants. | |

## PLAINTIFF'S MOTION FOR EXPEDITED PROCEEDINGS

YOU ARE IN POSSESSION OF A CONFIDENTIAL FILING FROM THE COURT OF CHANCERY OF THE STATE OF DELAWARE.

IF YOU ARE NOT AUTHORIZED TO VIEW THIS DOCUMENT UNDER RULE 5.1 OR BY COURT ORDER, READ NO FURTHER THAN THIS PAGE AND CONTACT THE FOLLOWING PERSON:

Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
K&L GATES LLP
600 King Street, Suite 901
Wilmington, DE 19801
steven.caponi@klgates.com
megan.hunt@klgates.com
*Attorneys for Plaintiff*

Pursuant to Rule 5.1, a public version of this document will be filed on November 7, 2024.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION, | |
| Plaintiff, | C.A. No. |
| v. | |
| AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD., BROADCOM CORPORATION, and BROADCOM INC., | |
| Defendants. | |

**<u>PLAINTIFF'S MOTION FOR EXPEDITED PROCEEDINGS</u>**

Plaintiff Realtek Semiconductor Corporation ("Realtek"), by and through its undersigned counsel, respectfully seeks an order expediting proceedings in this action (the "Action") against Defendants Avago Technologies International Sales PTE. LTD. ("Avago Sales"), Broadcom Corporation ("Broadcom Corp."), and Broadcom Inc. ("BCI") (collectively, "Defendants").

1

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

**INTRODUCTION**[1]

1.    This action involves Defendants' breach of the confidential Settlement and Patent License Agreement ("License Agreement") between Realtek and the predecessor to Avago Sales, Avago Technologies General IP (Singapore) Pte. Ltd. ("Avago General IP"), which, in part, ███████████████████████

████████████████████

2.    Avago Sales—alleged successor to Avago General IP—brought patent infringement claims in Germany against one of Realtek's customers, ██████████ alleging that ███████ use of Realtek-provided technology infringes Avago Sales' patents.  Realtek's products, however, are licensed under the License Agreement, which means that ███████ products are authorized under Avago Sales' patents.

3.    Defendants evidently deny that the patents asserted against ███████ are licensed to Realtek.

4.    Realtek has tried to obtain judicial clarification regarding the scope of the License Agreement, but its prior efforts ended without a resolution on the merits.

5.    In the meantime, Defendants have developed and made large investments in products that use Realtek's patented technology, as Realtek

---

[1] Capitalized terms not otherwise defined have the meaning identified in the Verified Complaint filed contemporaneously ("Complaint" or "Compl.").

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

demonstrated (in part) in recent proceedings before the International Trade Commission. In other words, Defendants are using Realtek's patented technology—relying on Realtek's views that the parties are cross-licensed under the License Agreement—while simultaneously suing Realtek's customers under Defendants' view that Realtek products are not authorized. Defendants cannot have it both ways.

6.    Defendants' duplicity has reached a critical point because Avago Sales is seeking an injunction that could likely freeze ███ sales in Europe (including ███ manufactured in the United States). The German courts will rule by February 20, 2025. Realtek therefore seeks expedited proceedings to secure an injunction prohibiting Defendants' from causing irreparable harm to Realtek and its customers.

7.    Defendants' misconduct extends beyond the License Agreement. Even if Realtek's and its customers' products were not licensed, Defendants have an obligation to license their patents on a "reasonable and non-discriminatory" ("RAND") basis. Defendants have RAND licensing obligations because they identified the patents asserted against ███ as essential to the 802.3 standards—related to Ethernet—promulgated by the Institute of Electrical and Electronics Engineers Standards Association ("IEEE"). Specifically, Defendants executed "letters of assurance" pledging to provide RAND licenses to all requesters.

3

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

8.    Realtek asked for a RAND license in 2015, but Defendants failed to offer one.  They have persisted in that failure to the present day.

9.    A company that breaches its RAND obligations cannot seek an injunction against an alleged infringer.

10.    Because Defendants are seeking injunctive relief in Germany against Realtek's customers, based on Realtek-supplied technology, Realtek seeks an injunction prohibiting Defendants' ongoing breaches of the License Agreement. Realtek also brings claims for tortious interference, declaratory judgment, and breach of the obligation to offer a RAND license.

## BACKGROUND

### A.    Realtek and Avago General IP Enter into the License Agreement

11.    On July 27, 2015, the parties executed the Settlement and Patent License Agreement (the "License Agreement").  Compl. ¶ 32, Ex. 1.  In addition to releasing claims in pending infringement actions, the parties granted each other, and each of their ██████████ a mutual license to each other's patents.  *Id.* ¶ 36 (§ 3.01), Ex. 1.

12.    The License Agreement defines ████████████████████

████████████████████████████████████████

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

 *Id.* ¶

36, Ex. 1 at 13.

13.    The License Agreement defines ████████████████

████████ ████████████ ██ █████ █████ █████ ████████ ███ ██

████████████████████████████

████████

14.    There is substantial dispute between the parties as to whether Broadcom

Corp. is an ████████████ under the License Agreement, such that Realtek has a

license to Broadcom Corp.'s patents.

## B.    Avago Sales Becomes the Successor in Interest Under the License Agreement and Owner of the Patents

15.    At the time of the ████████████ Realtek alleges that Broadcom

Corp. held the rights to European Patents 1 903 733 and 1 770 912.  Compl. ¶ 158.

16.    About 7 months after the effective date of the License Agreement, a

"Scheme of Arrangement" under Singaporean law took place, where through a

complex set of transactions Avago Technologies Ltd. combined with Broadcom

Corp.  *Id.* ¶ 39.  As detailed in paragraphs 39-59 of the Complaint, pursuant to these

transactions the predecessor to BCI ultimately became the parent of Broadcom Corp.

*Id.* ¶ 58.  Through these transactions Broadcom Corp. was not ████████████ by

5

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED
EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

Avago General IP or any of its affiliates and is therefore not an ██████████ ████████████████████████ *Id.* ¶¶ 59, 61.

17.    Following these transactions, BCI caused another corporate reorganization where, upon information and belief, Avago Sales was created as a new entity and wholly owned subsidiary of BCI.  *Id.* ¶ 161.  BCI's annual reports confirm that BCI controls and directs all the activities of Broadcom Corp., Avago Sales, and their affiliates, and all actions that BCI's affiliates (including Avago Sales and Broadcom Corp.) undertake are undertaken jointly and severally with BCI.  *Id.* ¶ 1.

18.    Upon information and belief, sometime after late 2017, Avago General IP (without the consent the License Agreement requires) assigned its rights and obligations under the License Agreement to a newly created entity, Avago Sales, and Avago General IP dissolved.  Following this assignment, BCI caused Broadcom Corp. to assign its Patents to Avago Sales.  *Id.* ¶ 68.  Therefore, as discussed in more detail in paragraphs 63 through 72 of the Complaint, through these assignments Avago Sales became the successor in interest to the License Agreement, and Realtek was licensed to use the Patents.

## C.    Realtek Consistently Claimed a License to the Patents

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

19.     In 2016, Realtek became aware of the Singaporean scheme of arrangement and discovered that, pursuant to the terms of the License Agreement, it held a license to Broadcom Corp.'s patents.

20.     Accordingly, as of at least August 2016, Realtek began informing its customers, who are believed to have informed Broadcom Corp., that Realtek's products were licensed.

21.     Realtek and its customers relied on that understanding, making purchase and sales decisions, expending significant resources designing their products to include Realtek integrated circuits, and developing supply chains and product strategies.

22.     However, on March 7, 2017, Broadcom Corp. initiated an action in the International Trade Commission alleging that LG Electronics infringed five patents by using Realtek integrated circuits in its products.

23.     Realtek contacted Avago General IP and Broadcom Corp. and

███████████████████████████████████████████████████

████████████████████████████████

24.     Realtek therefore filed, on August 8, 2017, complaints in the U.S. District Court against, respectively, Avago General IP and Broadcom Corp. to affirm its rights under the License Agreement.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

25.    On December 19, 2017, the District Court dismissed both actions for lack of subject matter jurisdiction without resolving the substantive dispute.

26.    Neither Broadcom Corp. nor Avago Sales took any legal action to contest Realtek's assertion until filing suit against ███ 7 years later in 2024, even though they knew: (1) Realtek's products practiced the IEEE 802.3 standards; (2) Realtek contends that its products are licensed to Defendants' patents; and (3) Realtek and its customers had invested, and would continue to invest, immense resources developing products that practiced the standard and include Realtek's integrated circuits.

### D.    Broadcom Corp. Continuously Refuses to License the Patents to Realtek on RAND Terms

27.    Prior to discovering that it held a license to Broadcom Corp.'s patents pursuant to the License Agreement, Realtek requested a RAND license to any Broadcom Corp. patents essential to the IEEE 802.3 standards.

28.    Broadcom Corp. and Avago Sales's predecessor-in-interest submitted numerous Letters of Assurance ("LOAs") to the IEEE, which are binding contractual commitments to license 802.3 essential patents on RAND terms.

29.    On July 8, 2015, Realtek requested a RAND license.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

30.    Broadcom Corp., however, engaged in patent hold-up practices by proposing a non-RAND license with unfair and unreasonable terms.

31.    Realtek has, since that time, indicated that it remains open to a RAND license.  But neither Broadcom Corp., nor its successor-in-interest to the patents, Avago Sales, has been willing to provide a RAND license.

**E.    Avago Sales Breaches License Agreement and its RAND obligations By Suing ▮▮▮ for Patent Infringement on 802.3 Essential Patents**

32.    ▮▮▮ uses Realtek's integrated circuits in its ▮▮▮ Compl. ¶ 73.  In April/May of 2024, Avago Sales sued ▮▮▮ for patent infringement in the Unified Patent Court ("UPC") in Germany, and in German regional courts.  *Id.* Despite Realtek's license, Avago Sales alleges that ▮▮▮ infringes by using Realtek integrated circuits. *Id.* ¶ 75. Avago Sales has breached Section 3.01 of the Licensing Agreement by frustrating Realtek's license to use Avago Sales's patents.  *Id.* ¶ 165. Avago Sales seeks an injunction that will freeze all of ▮▮▮ sales in Europe (including ▮▮▮ manufactured in the United States). *Id.* ¶ 6.  The German courts will determine whether to grant the requested injunction on February 20, 2025.  *Id.*

33.    If ▮▮▮ is found to infringe the patents, the resulting injunction will halt ▮▮▮ sales in Europe, could likely halt sales in the United States, and will decimate ▮▮▮ supply chains.  *Id.* ¶ 166.  This will cause immense harm to

9

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

Realtek's reputation and will destroy its relationship with ███ resulting in a loss of ███ a customer.  *Id.* ¶ 167.

## ARGUMENT

34.    This Court has broad powers to order expedited proceedings.  *See Raymond Revocable Tr. v. MAT Five LLC*, 2008 WL 2673341, at *5 (Del. Ch. June 26, 2008); *Harmony Mill Ltd. P'ship v. Magness*, 1984 WL 21898, at *1 (Del. Ch. Feb. 14, 1984).  The burden on a plaintiff in seeking an expedited proceeding is not high."  *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, 2013 WL 209124,  at *1 (Del. Ch. Jan. 18, 2013).  To obtain an order for expedited proceedings, a plaintiff need only: (1) articulate a sufficiently colorable claim; and (2) show a sufficient possibility of a threatened irreparable injury.  *Balch Hill Partners, L.P. v. Shocking Techs., Inc.*, 2013 WL 588964, at *2 (Del. Ch. Feb. 7, 2013).

35.    In applying this well-settled standard, this Court "traditionally has acted with a certain solicitude for plaintiffs" and "has followed the practice of erring on the side of more [expedited proceedings] rather than fewer." *Giammargo v. Snapple Beverage Corp.*, 1994 WL 672698, at *2 (Del. Ch. Nov. 15, 1994); *see also Box v. Box*, 697 A.2d 395, 398-99 (Del. 1997) ("Delaware courts are always receptive to expediting any type of litigation in the interests of affording justice to the parties,"

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

and the Court of Chancery in particular is "renowned" for its "expedited decisionmaking."). Realtek's Complaint meets this standard.

## I.    Realtek Has Stated Colorable Claims

36.    To articulate a "colorable claim," a plaintiff need show only "a non-frivolous set of issues," a standard "even lower [than] the 'conceivability' standard applied on a motion to dismiss." *In re BioClinica, Inc. S'holder Litig.*, 2013 WL 5631233, at *1 n.1 (Del. Ch. Oct. 16, 2013). The Court conducts only an "almost superficial factual assessment" of a plaintiff's claims, *Cty. of York Emps.' Ret. Plan v. Merrill Lynch & Co.*, 2008 WL 4824053, at *6 (Del. Ch. Oct. 28, 2008), accepting all well-pleaded allegations as true and with no need to determine whether the claims have a probability of success. *See TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, 2000 WL 1478537, at *2 (Del. Ch. Oct. 2, 2000).

37.    In contract actions, the colorable-claim requirement is satisfied unless the plaintiff's "interpretations of the disputed contractual provisions are frivolous or so lacking in merit as to make it impossible for [p]laintiff[] to prevail on [its] claims at a later stage." *Trilogy Portfolio Co., LLC v. Brookfield Real Estate Fin. Partners, LLC*, 2012 WL 120201, at *5 (Del. Ch. Jan. 13, 2012). Realtek's claims satisfy this standard.

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

38.     First, Realtek has adequately pleaded a colorable claim for breach of the License Agreement, which should be remedied through a permanent injunction. There is no dispute that the License Agreement is a valid and enforceable contract. Compl. ¶ 154.  Realtek has pleaded that through the series of transactions identified in paragraphs 63 through 72 of the Complaint, Avago Sales was created as a new entity and became the successor in interest to the License Agreement, thereby accepting its rights and obligations. *Id.* ¶¶ 63-72.  Realtek has also pleaded that BCI caused Broadcom Corp. to assign its Patents to Avago Sales.  *Id.*  ¶ 70.  Thus, Realtek has pleaded that Avago Sales' and its affiliates' patents in existence prior to the ███████████████ were licensed to Realtek upon assignment of the License Agreement. *Id.*

39.     Despite Realtek's license, Avago Sales breached Section 3.01 of the License Agreement by suing ██████ in Germany for using Realtek's integrated circuits in ████████████, thus frustrating Realtek's license. *Id.* ¶ 165.  Realtek has also pleaded, as a result of Avago Sale's breach, Realtek will be irreparably harmed by, among other things, the potential loss of its relationship with ██████ absent a permanent injunction from this Court. *Id.* ¶ 167.

40.     Second, in the alternative, Realtek has pleaded a colorable claim for breach of the implied covenant of good faith and fair dealing because under Section

12

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

3.01 of the License Agreement the parties ████████████████████████ ████████████████████████████████████████████ The parties, however, did not intend for one party to engage in a complex reorganization in an effort to be able to use one party's patents but prevent the other party from doing the same.

41.    Third, Realtek has pled a colorable claim for tortious interference with the License Agreement because as the controller of its wholly owned subsidiaries Avago Sales and Broadcom Corp., BCI has been aware of the Licensing Agreement and the contractual relationship between Avago Sales and Realtek.  Yet BCI caused Avago Sales to breach the License Agreement by suing ██████ in the UPC and in German regional courts, thus frustrating Realtek's license.

42.    Finally, assuming arguendo that Realtek is not licensed, Realtek has pleaded colorable claims for a declaratory judgment that Broadcom Corp. and/or Avago Sales are obligated to offer and provide a license to 802.3 essential patents on RAND terms, and the prior terms are not RAND compliant, meaning that Defendants breached their obligations.

## II.    Realtek Will Suffer Irreparable Harm Absent Expedition

43.    Under Delaware law, "[i]rreparable harm is generally defined as harm for which there can be no remedy at law, which is typically taken to mean that an

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

award of compensatory damages will not suffice." *AM Gen. Hldgs. LLC v. Renco Grp., Inc.*, 2012 WL 6681994, at *4 (Del. Ch. Dec. 21, 2012) (internal quotation marks omitted); *see also State v. Del. State Educ. Ass'n*, 326 A.2d 868, 875 (Del. Ch. 1974) ("It is not necessary that the injury be beyond the possibility of repair by money compensation," but only "be of such a nature that no fair and reasonable redress may be had in a court of law and that to refuse the injunction would be a denial of justice."). A remedy at law is inadequate if it does not "afford the plaintiff full, fair, and complete relief." *El Paso Nat. Gas Co. v. TransAm. Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995). Realtek has alleged sufficient facts to establish that it has and will continue to be irreparably harmed by Defendants' breaches of the License Agreement and RAND obligations.

44.     If Defendants receive an injunction in Germany, ███ sales in Europe may cease. *Id.* ¶ 77. This will cause immense harm to Realtek's reputation, will compromise its relationship with ███ resulting in a loss of the ███ relationship, and will upend complex supply chains. *Id.*; *see Penn Mart Supermarkets, Inc. v. New Castle Shopping LLC*, 2005 WL 3502054, at *15 (Del. Ch. Dec. 15, 2005) (finding potential lost sales and lost customers sufficient for irreparable harm); *Kirpat, Inc. v. Del. Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 358 (Del. 1998) (irreparable harm found where the company would suffer loss of its customer

14

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

base); *Singh v. Batta Env't Assocs., Inc.*, 2003 WL 21309115, at *10 (Del. Ch. May 21, 2003) (finding irreparable harm because "its goodwill will continue to erode, and it will lose clients, referrals, and other prospective opportunities that cannot be quantified"); *In re Shawe & Elting LLC*, 2015 WL 4874733, at *28 (Del. Ch. Aug. 13, 2015) ( "irreparable harm to a corporation has been found to include harm to a corporation's reputation, goodwill, customer relationships, and employee morale"), *aff'd*, 157 A.3d 152 (Del. 2017).

45.    Accordingly, this motion and the Complaint show the requisite elements for expedited treatment, and Realtek asks the Court to grant this motion, expedite proceedings, and set a trial date for early February 2025, to ensure that Realtek's claims are decided before the German court rules on Avago Sales' injunction. *See Everest Props., Inc. v. Boston Tax Credit Fund II*, 1997 WL 33174420, at * 1 (Del. Ch. Feb. 20, 1997) (entering order "shortening the time for defendants to answer, move or otherwise respond to the complaint, accelerating discovery and setting a reasonably prompt trial date," and scheduling a two-day trial 67 days after date of order); *Pfizer Inc. v. Warner-Lambert Co.*, 1999 WL 33236245, at *1 (Del. Ch. Dec. 3, 1999) (setting prompt trial date in action for breach of contract and declaratory judgment).

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.

## <u>CONCLUSION</u>

46.    Realtek respectfully asks the Court to grant expedited proceedings and set this matter for a trial to be completed and decision rendered before February 20, 2025.


Dated: October 31, 2024             **K&L GATES LLP**

                                    */s/ Steven L. Caponi*
                                    Steven L. Caponi (No. 3484)
                                    Megan E. Hunt (No. 6569)
                                    600 King Street, Suite 901
                                    Wilmington, DE 19801
                                    Phone:  (302) 416-7000
                                    steve.caponi@klgates.com
                                    megan.hunt@klgates.com

                                    *Counsel for Plaintiff*

                                    Words: 2983/3,000

THIS DOCUMENT IS A CONFIDENTIAL FILING. ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY RULE 5.1 OR BY COURT ORDER.