# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REALTEK SEMICONDUCTOR CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD, BROADCOM CORP., and BROADCOM INC.,<br><br>　　　　Defendants. | C.A. No. 24-1235-UNA<br><br>▉<br><br>**PUBLIC VERSION FILED NOVEMBER 19, 2024** |

### PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO REMAND THE CASE TO THE COURT OF CHANCERY OF THE STATE OF DELAWARE OR <u>ALTERNATIVELY TO SET A SCHEDULE FOR AN ANTISUIT INJUNCTION</u>

 

**K&L GATES LLP**
Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
600 King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steve.caponi@klgates.com
megan.hunt@klgates.com

Dated: November 11, 2024　　　　　　*Counsel for Plaintiff*

**TABLE OF CONTENTS**

                                                  **Page**

I.    Introduction and Summary of the Argument ............................................................................1

II.    Factual Background .................................................................................................................3

III.    Argument ...................................................................................................................................6

        A.    Legal Standard .................................................................................................................6

        B.    Defendants' Allegation that Realtek Sued them for Patent Infringement Is Frivolous ...........................................................................................................................7

        C.    Removal Was Improper Because Realtek's Claims Do Not "Necessarily Raise" Any Issue of U.S. Patent Law or Identify that Any Such Issue Is "Actually Disputed." ......................................................................................................................8

                1.    Defendants Cannot Satisfy the First Gunn Factor Because Realtek's Claims Do Not "Necessarily Raise" an Issue of U.S. Patent Law ...............9

                2.    Essentiality Is Not "Actually Disputed" ......................................................11

        D.    If the Court Somehow Finds Subject Matter Jurisdiction, Then Realtek Respectfully Asks the Court to Set an Expedited Briefing Schedule for an Antisuit Injunction ...........................................................................................................12

IV.    Conclusion ..............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*,
   779 F.3d 214 (3d Cir. 2015)......................................................................................................6

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987).............................................................................................................6, 7

*Consolidated World Housewares, Inc. v. Finkle*,
   831 F.2d 261, 265 (Fed. Cir. 1987).........................................................................................10

*Dow Chem. Co. v. Exxon Corp.*,
   139 F.3d 1470 (Fed. Cir. 1998)................................................................................................10

*Exxon Mobil Corp. v. Allapattah Servs.*,
   545 U.S. 546 (2005)..................................................................................................................6

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*,
   463 U.S. 1 (1983)......................................................................................................................7

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007)......................................................................................................6

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
   967 F.3d 1380 (Fed. Cir. 2020)................................................................................................10

*Gunn v. Minton*,
   568 U.S. 251 (2013)..................................................................................................................8

*Huawei Technologies, Co. Ltd. v. Samsung Electronics Co., Ltd.*,
   340 F. Supp. 3d 934 (N.D. Cal. 2018) ....................................................................................10

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
   No. 3:16-cv-02797-WHO, 2018 WL 1784065 (C.D. Cal. Apr. 13, 2018) ..........................3, 13

*Intellisoft Ltd. v. Acer Am. Corp.*,
   955 F.3d 927 (Fed Cir. 2020)......................................................................................... passim

*Microsoft Corp. v. Motorola, Inc.*,
   871 F. Supp. 2d 1029 (W.D. Wash. 2012)................................................................................3

*Realtek Semiconductor Corp. v. LSI Corp.*,
   946 F. Supp.2d 998 (N.D. Cal. 2013) .....................................................................................12

*Russo v. Ballard Medical Products*,
 550 F.3d 1004 (Fed. Cir. 2008)..............................................................................................10

*Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*,
 __ F.4th __, 2024 WL 4558664 (Fed. Cir. Oct. 24, 2024) ...........................................3, 12, 13

*Uroplasty, Inc. v. Advanced Uroscience*,
 239 F. 3d 1277 (Fed. Cir. 2001)..............................................................................................10

*Vaden v. Discover Bank*,
 556 U.S. 49 (2009)....................................................................................................................7

**Statutes**

28 U.S.C. § 1338(a) ............................................................................................................1, 3, 8

28 U.S.C § 1441(a) ........................................................................................................................6

35 U.S.C. § 271..............................................................................................................................9

## I.      Introduction and Summary of the Argument

Plaintiff Realtek Semiconductor Corp. ("Realtek") respectfully asks the Court to remand this case to the Court of Chancery because the Court lacks subject matter jurisdiction. Indeed, this Court previously held—in cases involving the same License Agreement and the same parties— that it lacked subject matter jurisdiction. *See* Exs. A & B (reproducing dismissal order and transcript of arguments before, and ruling of, Judge Sleet).

On October 31, 2024, Realtek filed its complaint in the Court of Chancery and moved for expedited proceedings. Realtek asserted claims for breach of contract, declaratory judgment, and tortious interference. ***All claims arise under state law***.[1] Realtek did not assert a claim under U.S. patent law or any other federal law. To the contrary, Realtek's complaint centers on two issues: (1) whether defendants breached a July 2015 confidential Settlement and Patent License Agreement; and (2) whether defendants breached their contractual obligations to license specific patents to Realtek, on a reasonable and non-discriminatory ("RAND") basis. The specific patents at issue are European Patents 1 903 733 and 1 770 912, which Defendants have identified (in proceedings before German courts) as essential to certain standards adopted by the Institute of Electrical and Electronics Engineers ("IEEE"). The are *no* U.S. Patents at issue.

These are not federal causes of action, and they do not fall anywhere near the "special and small" category of state court actions that nonetheless "aris[e] under any Act of Congress related to patents." *Intellisoft Ltd. v. Acer Am. Corp.*, 955 F.3d 927, 932 (Fed Cir. 2020); 28 U.S.C. § 1338(a). In fact, as mentioned, this Court previously heard two actions involving some of the same parties, the same counsel for Defendants, and the same License Agreement. There, the Court

---

[1] The parties agreed, in the License Agreement at issue, that "California commercial law" would govern their dispute. Complaint Ex. 1 at 10 § 8.07.

1

held that it *lacked* subject-matter jurisdiction over essentially the same claims, in response to motions to dismiss filed by *Defendants*. It is frivolous and sanctionable for Defendants to now argue that there is federal jurisdiction over the same types of claims.

Realtek's state law claims do not assert or allege patent infringement and do not otherwise raise any substantial issue of patent or other federal law. Courts apply the four-factor test the Supreme Court articulated in *Intellisoft*: A state court claim only arises under federal law if Defendants prove that a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Id.* at 932. Here, Realtek's claims do not satisfy at least the first two factors. The only patents at issue in Realtek's complaint are *European* patents, which, by definition, cannot "necessarily raise[]" any issue of U.S. patent law. Moreover, in *Intellisoft*, the Federal Circuit held that comparing a patent to a standard does not necessarily raise a question of patent law. *Id.* Finally, the alleged federal issue that Defendants identify—whether the two European patents are essential to the IEEE standards—is not "actually disputed" because, in Germany, Defendants contend that those two patents are essential to the standard. Their position before this Court is, at best, a complete reversal. Any one of these infirmities independently requires remand.

Defendants alternatively argue that Realtek sued Defendants for patent infringement. A simple reading of the complaint demonstrates the falsity of that argument. Realtek therefore respectfully asks the Court to order expedited briefing on this motion, and to remand this case to the Court of Chancery on an expedited basis.

Alternatively, if this Court determines that the "essentiality" of two European patents to an IEEE standard—being addressed in Germany—is a question of U.S. patent law which 28 U.S.C.

2

§ 1338(a) requires a federal court to resolve, then protecting this Court's jurisdiction requires the Court to enter an antisuit injunction prohibiting Defendants from enforcing any injunction the German courts might issue. *See generally Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*, __ F.4th __, 2024 WL 4558664, at *8-10 (Fed. Cir. Oct. 24, 2024) (reversing district court's denial of an antisuit injunction and relying upon cases holding that an antisuit injunction is appropriate when—as here—the patent owner failed to offer a RAND license to essential patents before filing suit outside the United States). Realtek therefore respectfully requests, in the alternative, that the Court enter an expedited discovery and briefing schedule for Realtek's motion for an immediate antisuit injunction.[2]

## II.     Factual Background

On October 31, 2024, Realtek filed a complaint in the Court of Chancery. Realtek's lawsuit arises from litigation Defendants filed in Germany against Realtek's customer based on the customer's use of Realtek's chips. Complaint ¶ 10. There, Defendants allege that the '733 and '912 European patents are essential to one of the 802.3 standards (involving automotive Ethernet), and that Realtek's customer, ▬▬▬ is infringing those two patents because ▬▬▬ uses Realtek products that implement the relevant 802.3 standard. *Id.* ¶¶ 7, 12, 192.

Pursuant to the 2015 License Agreement, Realtek already has a license to Defendants' patents, meaning ▬▬▬ has the right to utilize Realtek's products that implement the relevant IEEE 802.3 standard. *Id.* ¶ 148. Even if Realtek did not have such a license, Defendants were required

---

[2] An antisuit injunction requires the Court to consider specific, identified factors that are similar to but distinct from the traditional *Winter* factors that govern preliminary injunctions. *See, e.g.*, *Huawei Techs., Co. v. Samsung Elecs. Co.*, No. 3:16-cv-02797-WHO, 2018 WL 1784065, at *4 (C.D. Cal. Apr. 13, 2018) ("[T]he Third Circuit explicitly replaced all four *Winter* factors with the three-part *Gallo* test."); *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1029, 1097 n.10 (W.D. Wash. 2012) (examining Third Circuit authority regarding antisuit injunctions).

3

to offer a license to Realtek on RAND terms, which Realtek requested long ago in an abundance of caution. *Id*. Defendants refused to offer a license to its patents essential to the 802.3 standards despite Realtek's repeated requests, over multiple years. *Id*. ¶¶ 7, 12.

Realtek's complaint seeks to hold Defendants responsible for breaching their contractual obligations. Realtek asserts three counts related to Defendants' breach of the Settlement and Patent License Agreement (Counts I-II, IV) and, alternatively, two counts (Counts III, V) related to the breach of Defendants' contractual obligations to offer Realtek a license to the '733 and '912 European patents on RAND terms. *See* Complaint ¶¶ 153-203.

The German court will decide whether to enjoin the sale of ▬▬▬▬ on February 20, 2025. *Id*. ¶ 6. Realtek must protect itself, its customer, ▬▬▬ and U.S. manufacturing, against the potentially enormous consequences of such an injunction. *Id*. Realtek therefore filed, concurrently with the complaint, a Motion for Expedited Proceedings, and asked the Court of Chancery to conclude proceedings and enter an injunction by February 20, 2025. Specifically, Realtek seeks a ruling that it has a license to the European patents at issue and, alternatively, that Defendants cannot enforce any injunction entered in Germany because they failed to offer Realtek a RAND license.

This is not the first dispute between the parties related to the scope of the License Agreement. Realtek previously tried to obtain judicial clarification regarding the scope of the License Agreement, but its prior efforts ended without a resolution on the merits. On August 8, 2017, Realtek filed two complaints in this Court against the predecessor of Defendant Avago Technologies International Sales Pte. Ltd. and Defendants Broadcom Corp. Complaint ¶¶ 78-85; Appx. A-B. Defendants, however, ***successfully*** argued that there was no subject matter

4

jurisdiction because the case was essentially a contractual licensing dispute.[3] Incredibly, Defendants (and the same counsel for Defendants) are now taking the exact opposite position, arguing that Realtek's same contractual claims that were successfully dismissed for lack of subject matter jurisdiction suddenly raise federal questions of patent law this time around.

Defendants' sudden change in position, and their frivolous arguments for removal, can only be interpreted as a deliberate delay tactic. When Realtek filed its action on October 31, 2024, it immediately contacted Defendants, including their counsel, seeking availability for the hearing on the motion to expedite. Despite repeated attempts, no one responded. Then, on Friday afternoon, November 9, 2024, Defendants filed a baseless Notice of Removal, stripping the Court of Chancery of jurisdiction.

Immediately after the Notice of Removal was filed, on November 9, 2024, Realtek sent a detailed letter to Defendants' counsel explaining that the removal was baseless and clearly frivolous, and requesting a stipulation to remand by 3:00 pm ET on Monday, November 11, 2024. Realtek asked Defendants to meet and confer in hopes of resolving this dispute without wasting judicial resources with unnecessary motions practice. Defendants responded by letter, on November 11, 2024, and they simply repeated their frivolous arguments. They also offered incorrect arguments on the merits, but those arguments are irrelevant to this Court's jurisdiction.

---

[3] In the prior litigation, Defendants successfully argued that the U.S. District Court lacks subject matter jurisdiction over breach of contract, tortious interference, and declaratory judgment claims arising from the same License Agreement at issue now. *See* Ex. A at 3-4. This Court accepted those arguments and dismissed all claims for lack of subject matter jurisdiction. *See* Ex. B at 12-13. Indeed, Defendants sought sanctions in that case, and Judge Sleet stated: "[I]t's an action for contract, for breach of contract. That's what it is. You plead three California state law claims. This is not a case that's dependent upon a substantial question of patent law." *See* Ex. A at 12-13. Indeed, Judge Sleet suggested that alleging that a federal question exists in these circumstances was so unfounded that lawyers asserting such a position would need to "dial up [their] malpractice carrier." *Id.* at 13.

### III. Argument

#### A. Legal Standard

Section 1441 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States…" 28 U.S.C § 1441(a). "When a plaintiff brings only a state law claim, as here, the district court will have original jurisdiction 'over [the] state law claim ... if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Intellisoft*, 955 F.3d at 932 (*quoting Gunn v. Minton*, 568 U.S. 251, 258 (2013)). "The Supreme Court has explained that only a 'special and small category' of cases would meet all four requirements." *Id*. (*quoting Gunn*, 568 U.S. at 258).

Federal courts are "courts of limited jurisdiction" in that "[t]hey possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). "The federal removal statute" is therefore "strictly construed, requiring remand if any doubt exists over whether removal was proper." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). Critically, "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). Defendants cannot satisfy their burden here.

Under the "well-pleaded complaint rule," "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (quotations omitted). "The rule makes the plaintiff the master of the claim" because, in drafting the complaint, the plaintiff may choose to "avoid federal

6

jurisdiction by exclusive reliance on state law." *Id.* It is a "powerful doctrine" that "severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court..." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 9-10 (1983). "Federal jurisdiction cannot be predicated on an actual or anticipated defense" based in federal law, whether anticipated by the plaintiff in the complaint, or asserted by the defendants in the notice of removal. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).

### B. Defendants' Allegation that Realtek Sued them for Patent Infringement Is Frivolous

Defendants argue Realtek sued them in Court of Chancery for patent infringement. Notice of Removal at 2-3. That argument is frivolous for two reasons. First, Realtek's Complaint *identifies no U.S. patent* that Defendants allegedly infringed *and identifies no products* that allegedly infringe any patent. Defendants do not, and cannot, cite any allegation to the contrary.

Second, Realtek pleads that Defendants have a license to Realtek's patents, which is the opposite of infringement. Defendants cite paragraphs 92, 93, 97, 175, and 180 of the Complaint. *Id*. But there, Realtek pleaded that Defendants have been using Realtek's technology *under license*. Complaint ¶¶ 91-94. Specifically, Realtek pleaded that the International Trade Commission determined that Defendants are using Realtek's technology under license. *See* Complaint ¶¶ 92-94. Realtek also explained (in ¶¶ 97 and 175 of the Complaint) that its interpretation of the License Agreement must be correct because the contrary view would lead to an absurd result—that Realtek and Defendants do not enjoy the full scope of their license. Thus, Realtek seeks a declaration that Broadcom Corp. and Broadcom, Inc. ("BCI") *are* licensed under the License Agreement, or alternatively, if they are not licensed, that the terms of the License Agreement do not apply asymmetrically—giving Broadcom Corp. and BCI a license to Realtek's

7

patents but not giving Realtek a license to their patents. *Id.* ¶ 180. As Realtek points out, Defendants cannot have it both ways. This is undeniably an issue of contract interpretation, not an allegation of patent infringement.

The Court will search in vain for any allegation of patent infringement. The complaint identifies no Realtek patent allegedly infringed and no allegedly infringing product. To the contrary, it pleads that Broadcom's Corp.'s and BCI's products are *licensed* and seeks an interpretation of the License Agreement. The argument that Realtek pleaded a claim for patent infringement is frivolous.

### C. Removal Was Improper Because Realtek's Claims Do Not "Necessarily Raise" Any Issue of U.S. Patent Law or Identify that Any Such Issue Is "Actually Disputed."

Alternatively, Defendants argue that Realtek's claims are somehow within the "special and small" category of state court actions that "aris[e] under any Act of Congress related to patents…" *Intellisoft*, 955 F.3d at 932; 28 U.S.C. § 1338(a). That argument, too, is frivolous. There is federal question jurisdiction over a state law claim related to patents only if an issue of *U.S. patent law* is at least (1) "necessarily raised" and (2) "actually disputed." *Gunn*, 568 U.S. at 258. Defendants' argument that two *European* patents "necessarily raise" a substantial question of *U.S. patent law* under *Gunn* factor (1) is baseless. In addition, even if U.S. patents were at issue, Federal Circuit authority directly rejects Defendants' argument that comparing claims of a patent to a standard necessarily raises a question of U.S. patent law. *See Intellisoft*, 955 F.3d at 932. Defendants' arguments under *Gunn* factor (2) are worse. They rest upon a misrepresentation of the assertions Defendants have made to the German courts. Defendants are speaking out of both sides of their mouths.

### 1. Defendants Cannot Satisfy the First *Gunn* Factor Because Realtek's Claims Do Not "Necessarily Raise" an Issue of U.S. Patent Law.

Defendants incorrectly argue that any claim for breach of RAND obligations necessarily raises U.S. patent law because "[d]etermination of whether any patent claim is standard-essential requires an analysis of whether the patent 'claim elements read onto mandatory portions of a standard that standard-compliant devices must incorporate.'" Notice of Removal at 2 (citing *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020)). And to make that determination, a "qualified expert" must examine the patents and compare them to the standard, which is "akin to an infringement analysis." *Id.* (citations omitted). That argument is frivolous for two reasons.

First, Defendants ignore the obvious—that the patents at issue are two *European* Patents asserted against Realtek's customer in litigation in Germany. Whether the '733 and '912 European Patents are essential to an international standard cannot, by definition, "necessarily raise[]" a question of *U.S.* patent law, as required for federal jurisdiction. *Intellisoft*, 955 F.3d at 932.

Second, even if the patents at issue were U.S. patents (which they are not), the Federal Circuit has explicitly held that comparing a patent's claims to a standard does *not* "necessarily raise" any question of U.S. patent law. In *Intellisoft, Ltd. v. Acer America Corp.*, 955 F.3d 927 (Fed. Cir. 2020), the Court held that comparing the "'713 patent family, and ACPI standard" does not require "construction of the patent claims or proof that [anyone's] products 'infringed' the '713 patent family under 35 U.S.C. § 271." *Id.* at 932. Thus, the court held comparing a patent to a standard does not necessarily raise a question of U.S. patent law and removal jurisdiction was improper. *Id.*

Moreover, the Federal Circuit has consistently held in a variety of different contexts that breach of contract claims, such as Realtek's, do not necessarily raise issues of patent law just

9

because a patent may be used as evidence of the breach. *See, e.g.*, *Uroplasty, Inc. v. Advanced Uroscience*, 239 F. 3d 1277, 1279-80 (Fed. Cir. 2001) ("The '406 patent may be evidence in support of Uroplasty's allegations [of, *inter alia*, breach of contract], but the mere presence of the patent does not create a substantial issue of patent law."); *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1478 (Fed. Cir. 1998) ("[S]tate law governs the maintenance of orderly contractual relations and this function is not preempted merely because patents and patent issues are presented in the substance of those contracts."); *Consolidated World Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987) ("That a contract action may involve a determination of the true inventor does not convert that action into one 'arising under' the patent laws."); *see also Russo v. Ballard Medical Products*, 550 F.3d 1004, 1010 (Fed. Cir. 2008) ("the fact that Ballard used Mr. Russo's ideas to secure patents is surely relevant evidence suggesting a breach [of contract] occurred, but it does not implicate any question of federal patent law.").

The two cases Defendants cite are inapposite. There, the courts did *not* hold that a dispute about whether a patent is standard essential raises a federal question. Instead, those courts possessed subject matter jurisdiction because the plaintiff actually alleged *patent infringement*. In *Godo Kaisha IP Bridge 1 v. TCL Communication Technology Holdings Ltd*., 967 F.3d 1380 (Fed Cir. 2020), the court explained: "This appeal arises from a *patent infringement action* filed in the United States District Court for the District of Delaware." *Id*. at 1381 (emphasis added). Likewise, in *Huawei Technologies, Co. Ltd. v. Samsung Electronics Co., Ltd.*, 340 F. Supp. 3d 934 (N.D. Cal. 2018), plaintiff Huawei "assert[ed] claims for . . . *patent infringement*" of 11 patents. *Id*. at 942. Here, there are no claims for patent infringement, and as discussed below, Defendants' suggestion to the contrary is frivolous.

Moreover, Defendants misrepresent *Godo Kaisha*. There, the Federal Circuit explained that the determination of whether a patent is essential to a standard is "more akin to an infringement analysis . . . than to a claim construction analysis." 967 F.3d at 1385. The *Godo Kaisha* court made that statement to emphasize that the issue is "a fact question" in which the fact-finder determines "whether the claim elements read onto mandatory portions of a standard." *Id.* As *Intellisoft* explains, that factual inquiry is neither a claim construction exercise nor an infringement exercise and therefore does ***not*** "necessarily raise" any question of U.S. patent law. 955 F.3d at 932. Because Defendants' arguments regarding the first *Gunn* factor are frivolous, there is no subject matter jurisdiction.

### 2. Essentiality Is Not "Actually Disputed"

Even if Defendants could satisfy the first *Gunn* factor, they cannot satisfy the second *Gunn* factor. That factor requires Defendants to show that essentiality is "actually disputed." In suggesting that Defendants are disputing essentiality, Defendants misrepresent the positions that they have taken in the German litigation. There, Defendants expressly represented that the two European patents at issue are essential to the relevant 802.3 standards:

> Broadcom created the first-ever automotive Ethernet standard, BroadR-Reach, and produced the first ever BroadR-Reach Ethernet PHY chip in 2011. In fact, the name "BroadR-Reach" is a play on words with the name "Broadcom." BroadR-Reach was later *adopted by IEEE (with some changes) as 802.3bw* (100Base-T1). *This is the standard we are talking about here.*

Ex. C. at 40 ¶ 2 (reproducing Defendants' arguments regarding the '733 European patent) (emphasis added).[4] Defendants further stated:

> Broadcom or the plaintiff made a significant contribution to the development of Automotive Ethernet with the invention on which the patent in suit is based.

---

[4] Exhibit C is a machine translation. Realtek's counsel has commissioned a certified translation and will submit it to the Court, if needed, as soon as it is available.

11

> Accordingly, the patent-in-suit *claims an important part of the standard* with technical advantages that have led to the introduction and *acceptance of the standard* over other technologies.

*Id.* at 43 ¶ 9 (emphasis added).

Likewise, Defendants' complaint for infringement regarding the European '912 patent (Ex. D) explains that Defendants' infringement allegation is based on use of the "802.3bp (1000Base-T) standard." Ex. D at 34 ¶ 70; *see also* id. at 27 ¶ 59 ("[T]here are a number of relevant Ethernet communication connections between different hardware components of the [redacted] computer."); *id*. at 29 ¶ 65 ("The 1000Base-T1 interface was specifically designed for use in Vehicles").

After receiving Defendants' Notice of Removal, Realtek asked Defendants if they were abandoning the positions they took in the German litigation. Defendants did not respond to that query. Thus, Defendants have *not* repudiated their position that these patents are essential to the relevant 802.3 standards. Defendants do not dispute that their European patents are essential to the 802.3 standards, which means the second *Gunn* factor is not satisfied, and this Court lacks subject matter jurisdiction. *Id.* at 932.[5]

### D. If the Court Somehow Finds Subject Matter Jurisdiction, Then Realtek Respectfully Asks the Court to Set an Expedited Briefing Schedule for an Antisuit Injunction

If this Court determines that Realtek's claims necessarily raise any issue of U.S. patent laws, that is actually disputed, then protecting this Court's jurisdiction to resolve those issues

---

[5] In the German litigation, ▇▇▇ may dispute whether these two European patents are essential to the Standard, but ▇▇▇ is not a party to this case, and Defendants are bound by their positions in that litigation. Defendants contend that their European patents are essential to the identified IEEE 802.3 standards. Defendants have committed to licensing essential patents on RAND terms but have refused to do so despite Realtek's repeated requests. That decision precludes an action for injunctive relief.

requires the Court immediately to enjoin Defendants' enforcement of any injunction the German courts might issue. *See generally Telefonaktiebolaget LM Ericsson v. Lenovo (United States), Inc.*, __ F.4th __, 2024 WL 4558664, at *8-10 (Fed. Cir. Oct. 24, 2024) (reversing district court's denial of an antisuit injunction and citing numerous cases holding that an antisuit injunction is appropriate when a party violates its RAND obligations).

Here, the evidence will show that in 2014, Realtek asked Defendants for a license to all patents essential to the 802.3 standards. Realtek will show that it reiterated that request for more than two years, but Defendants only offered terms that undeniably are inconsistent with their RAND obligations. The Federal Circuit recently held that a party that makes a RAND commitment "must have complied with the commitment's obligation to negotiate in good faith over a license to its SEPs before it pursues injunctive relief based on those SEPs." *Id.* at ___, 2024 WL 4558664, at *9. Here, the evidence will show that Defendants did not negotiate in good faith with Realtek before seeking injunctive relief against Realtek's products. That failure is especially egregious because, as Realtek's Complaint explains, Defendants' affiliates did the same thing to Realtek years ago. Their misconduct led to an antisuit injunction and nearly $4 million in damages awarded to Realtek. Complaint ¶ 9. The Federal Circuit cited that prior case, *Realtek Semiconductor Corp. v. LSI Corp.*, 946 F. Supp.2d 998, 1008 (N.D. Cal. 2013) with approval in its recent opinion in *Ericsson*, __ F.4th at __, 2024 WL 4558664, at *9. It cited numerous other cases, both in the U.S. and abroad, granting such injunctions. Accordingly, if Defendants are correct that this Court must determine essentiality, and essentiality necessarily raises a substantial question under U.S. patent law, then this Court—as the U.S. tribunal—must decide that question and must protect against actions by foreign tribunals that prevent this Court from deciding the

issue. In such cases, an antisuit injunction is justified and required. *See, e.g.*, *Huawei*, 2018 WL 1784065, at *8-10.

### IV. Conclusion

For the reasons set forth above, Realtek respectfully requests that the Court remand this case to the Court of Chancery. Alternatively, Realtek respectfully asks the Court to set an expedited discovery and briefing schedule for an antisuit injunction, as set forth in attached alternative proposed order.

Dated: November 11, 2024                                          **K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Megan E. Hunt (No. 6569)
600 King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steve.caponi@klgates.com
megan.hunt@klgates.com

*Counsel for Plaintiff*

14