# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REALTEK SEMICONDUCTOR
CORPORATION,

      PLAINTIFF,

V.

AVAGO TECHNOLOGIES
INTERNATIONAL SALES PTE. LIMITED;
BROADCOM CORPORATION; AND
BROADCOM INC.,

      DEFENDANTS.

C.A. No. 24-1235-GBW

**REDACTED
PUBLIC VERSION**

## AVAGO'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE

*Of counsel:*

Kristopher L. Reed
Richard L. Wynne, Jr.
Adrienne E. Dominguez
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214-969-1700
Facsimile: 214-969-1751

Kelly E. Farnan (#4395)
Blake Rohrbacher (#4750)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
 (302) 651-7700

*Attorneys for Defendants Avago Technologies
International Sales Pte. Ltd., Broadcom
Corporation, and Broadcom Inc.*

Dated: November 26, 2024

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................................1

SUMMARY OF ARGUMENT .................................................................................................1

INTRODUCTION AND STATEMENT OF FACTS ....................................................................2

ARGUMENT........................................................................................................................6

    I.       Realtek has not properly served Avago Sales. ............................................................6

    II.     Realtek has not demonstrated a need for alternative service under Rule 4(f)(3). ..........7

        A.     Realtek simply seeks to end-run Hague Convention procedures mere days after initiating them. ......................................................................................7

        B.     Even if Realtek had offered evidence that Hague Convention service would result in any considerable delay, any purported urgency for service is illusory. ...................................................................................................10

CONCLUSION AND PRAYER ..............................................................................................12

i

RLF1 31961952v.1

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bravetti v. Liu*,
  No. 3:12-CV-7492-MAS-TJB, 2013 WL 6501740 (D.N.J. Dec. 11, 2013)..............................8

*Brookstone Partners Acquisition XVI, LLC v. Tanus*,
  No. CIV.A. 7533-VCN, 2012 WL 3711410 (Del. Ch. Aug. 22, 2012 ...................................11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  27 F. Supp. 3d 1002 (N.D. Cal. 2014) ...................................................................................9

*DUSA Pharm., Inc. v. Biofrontera Inc.*,
  No. CV 23-20601 (RK)(JBD), 2024 WL 4151169 (D.N.J. Sept. 11, 2024) ........................8, 9

*Forum Fin. Group, LLC v. President, Fellows of Harvard Coll.*,
  199 F.R.D. 22 (D. Me. 2001)..................................................................................................9

*Graphic Styles/Styles Intern. LLC v. Men's Wear Creations*,
  99 F. Supp. 3d 519 (E.D. Pa. 2015) ...................................................................................9, 10

*In GLG Life Tech Corp. Sec. Litig.*,
  287 F.R.D. 262 (S.D.N.Y. 2012) ............................................................................................9

*Intrepid Investments, LLC v. Selling Source, LLC*,
  No. CIV.A. 8261-VCN, 2013 WL 494355 (Del. Ch. Feb. 8, 2013)......................................11

*Knit With v. Knitting Fever, Inc.*,
  No. CIV.A. 08-4221, 2010 WL 4977944 (E.D. Pa. Dec. 7, 2010)..........................................9

*Mark Productions, Ltd. v. Stuffit of Long Island*,
  No. C.A. 18982, 2002 WL 244861 (Del. Ch. Feb. 4, 2002)..................................................11

*Oliver Press Partners, LLC v. Decker*,
  No. 1817-N, 2005 WL 3441364 (Del. Ch. Dec. 6, 2005).......................................................11

*Realtek Semiconductor Corp. v. Avago Techs. Gen. IP (Singapore) Pte. Ltd.*,
  No. 17–1114 (D. Del. filed Aug. 8, 2017) ..............................................................................2

*Realtek Semiconductor Corp. v. Broadcom Corp.*,
  No. 17–1115 (D. Del. filed Aug. 8, 2017) ..............................................................................2

*Rio Properties, Inc. v. Rio Intern. Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ................................................................................................8

RLF1 31961952v.1

*RSM Prod. Corp. v. Fridman*,
  No. 06 CIV. 11512(DLC), 2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007) ..............................9

*Union Pac. Corp. v. Santa Fe Pac. Corp.*,
  No. CIV. A. 13587, 1995 WL 54428 (Del. Ch. Jan. 30, 1995) ................................................12

*United States Sec. & Exch. Comm'n v. One or More Unknown Traders in Sec. of Fortress*
  *Inv. Group, LLC*,
  No. 2:17-CV-01287, 2018 WL 4676043 (D.N.J. Sept. 27, 2018)............................................8

*Vanderhoef v. China Auto Logistics Inc.*,
  No. 218CV10174CCCSCM, 2019 WL 6337908 (D.N.J. Nov. 26, 2019)................................8

STATUTES & RULES

Fed. R. Civ. P. 4(f)(3) .................................................................................................1, 7, 9

## NATURE AND STAGE OF THE PROCEEDINGS

Realtek Semiconductor Corporation ("Realtek") sued Avago Technologies International Sales Pte. Ltd. ("Avago Sales"), Broadcom Corporation ("Broadcom Corp."), and Broadcom Inc. ("BCI") (collectively, "Defendants") in the Delaware Court of Chancery on October 31, 2024.[1] Although they had not yet been served, Defendants timely removed the case to this Court on November 8, 2024, expressly reserving all defenses, including defenses under Rule 12(b) related to proper service.[2] Realtek received summonses from the Court on November 15, 2024.[3] Just four days later, Realtek filed a Motion for Alternative Service Under Fed. R. Civ. P. 4(f)(3) and Brief in support thereof (together, "Motion").[4] Realtek asks the Court to allow it to serve counsel for Avago Sales—a Singapore entity—rather than serving Avago Sales through the Hague Convention, as it acknowledges is generally the proper way to serve a foreign defendant that is domiciled in a signatory country.[5] In accordance with the parties' agreed briefing schedule for the Motion,[6] Avago Sales timely files this Response.[7]

## SUMMARY OF ARGUMENT

Contrary to its assertion, Realtek could not properly serve Avago Sales with legal process by simply mailing the summons and Complaint to an address at which an affiliate of Avago Sales,

---

[1] D.I. 2 at Exh. A.

[2] D.I. 2.

[3] *See* D.I. 23.

[4] D.I. 27–28.

[5] D.I. 28 at 4, 6.

[6] D.I. 24.

[7] Avago Sales reserves all defenses, and waives none, by filing this Response, including defenses under Fed. R. Civ. P. 12(b).

RLF1 31961952v.1

Avago Technologies General IP (Singapore) Pte. Limited ("Avago General IP"), consented to receive notices under a 2015 license agreement. Avago Sales is a Singapore entity, and Singapore is a Hague Convention signatory for service of process, meaning that proper service on Avago Sales should be effected through the Hague Convention procedures. Indeed, Realtek appears to recognize this, as it alleges that it has initiated such service. Days after doing so, however, Realtek filed this Motion seeking alternative service. Realtek does not explain or provide evidence supporting the need for alternative service. And there is none. In the name of a baseless "urgency," Realtek simply wants to side-step the Hague Convention procedures without having tried in earnest to effect proper service through them. There is nothing urgent about this dispute—of which Realtek has been aware for at least seven years—and the Court should deny Realtek's Motion.

## INTRODUCTION AND STATEMENT OF FACTS

In 2015, Realtek and Avago General IP entered into a Settlement and Patent License Agreement ("License Agreement").[8] In 2017, Realtek sued Avago General IP and Broadcom Corp. in this Court alleging that they had breached the License Agreement by asserting Broadcom Corp.'s patents against Realtek products (the "2017 Case").[9] The crux of the dispute was whether Broadcom Corp.'s patents are covered by the License Agreement, and thus whether Realtek has a license to them. Judge Sleet dismissed the 2017 Case for lack of jurisdiction because Realtek asserted only state-law claims dependent on an interpretation of the License Agreement.

---

[8] D.I. 2, Exh. A at Exh. 1.

[9] The 2017 Case involved two separate actions: *Realtek Semiconductor Corp. v. Avago Techs. Gen. IP (Singapore) Pte. Ltd.*, No. 17–1114 (D. Del. filed Aug. 8, 2017); and *Realtek Semiconductor Corp. v. Broadcom Corp.*, No. 17–1115 (D. Del. filed Aug. 8, 2017). Although not consolidated, the Court considered overlapping issues between the cases in tandem.

The License Agreement contains a venue-selection clause that specifies that the "█████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

. . . ."[10]

Despite the License Agreement's express contemplation that a ████████████████████

████████████████████████████████████████, Realtek elected not

to pursue its claims in state court after the 2017 Case was dismissed. Seven years passed.

Earlier this year, Avago Sales sued ████████ in Germany for patent infringement due to

████ use of certain ethernet products from various suppliers, including ████████████████

██. On May 3, 2024, the German court set a February 20, 2025 hearing date for the infringement

suit. The German litigation is well underway, and ████ has been actively defending itself in the

litigation. The defenses ████ has asserted involve the same issues that Realtek asks the Court to

adjudicate here. In particular, ████ has asserted a defense of patent exhaustion as to Realtek

products, arguing that Realtek products incorporated into ████████████ are covered by the

License Agreement in dispute here. And ████ has further alleged that the asserted patents are

subject to an obligation to be licensed on reasonable and non-discriminatory ("RAND") terms.

Realtek is not named as a defendant in the German litigation, nor has it made any effort to intervene

in the German litigation. Realtek maintains, however, that the infringement allegations in the

German litigation implicate Realtek's products. Realtek's Complaint in this case, though, admits

that Realtek has known about the German litigation since at least May 2024—five months before

Realtek filed this action demanding expedited determination.[11]

---

[10] D.I. 2, Exh. A at Exh. 1 at 10.

[11] D.I. 2, Exh. A ¶ 73.

On October 31, 2024—nearly six months after the German court set a final hearing date and less than four months before that hearing date—Realtek brought this action asserting two classes of claims: (1) claims purportedly stemming from Defendants' alleged breach of the License Agreement by asserting patents that Realtek contends are covered by the License Agreement against Realtek's products,[12] and (2) claims purportedly arising from an alleged breach by Defendants of an obligation to license patents that are essential to IEEE 802.3 Ethernet standards on RAND terms.[13] The first class of claims are asserted on the same grounds as the claims that were asserted seven years ago in the 2017 Case but abandoned after this Court determined there was no federal jurisdiction. Indeed, Realtek asserts that the 2017 Case involved "nearly identical issues."[14] And the Complaint here alleges that Defendants breached the alleged obligation to license standard-essential patents on RAND terms way back in 2015—nine years ago.[15]

Notwithstanding its knowledge of the License Agreement and RAND disputes for seven and nine years, respectively, and its knowledge of the German litigation since at least May, Realtek incredibly argues that the merits of this case must be decided on an expedited basis—within the next three months.[16] It seeks to impose considerable hardship on both this Court and Defendants to adjudicate in a matter of months disputes of which it has had knowledge for many years. Realtek points to the German litigation between Avago and ▮▮▮▮, a purported Realtek customer, to justify its request for expedited determination.[17] It asks the Court to grant it an antisuit injunction to stop

---

[12] D.I. 2, Exh. A at Counts I, II, and IV.

[13] D.I. 2, Exh. A at Counts III and V.

[14] D.I. 28 at 3.

[15] D.I. 2, Exh. A, ¶¶ 8, 140–147.

[16] D.I. 8 at 12–14; D.I. 24 at 2–4.

[17] D.I. 8 at 12–14; D.I. 24 at 2–4.

– 4 –

that litigation, to which it is not a party, and which involves a number of suppliers' products that are wholly distinct from Realtek.[18]

Under this misguided belief that there is any urgency here to adjudicate its claims, Realtek also hopes to avoid its service obligations. In support of its attempts to bypass the Hague Convention and other laws regarding service on foreign companies, Realtek first asserts that its mailing of the summons and Complaint to an address in ███████████████ constituted effective service on Avago Sales—a Singapore entity.[19] It relies on a notice provision in the License Agreement titled ███████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████.[20] Despite this plain language, Realtek attempts to transform this standard notice provision in the License Agreement into an agreement to be served at that address with a lawsuit because of its proximity within the ███████████████████

████████████████████████████████████████████████████████████

██████."[21] But the ███████████████ article, as its name implies, contains a number of miscellaneous provisions, including provisions relating to ███████████████.[22]

Second, in direct contradiction of its "belief" that the miscellaneous notice provision was somehow a consent-to-service provision, Realtek represents that it has also initiated service pursuant to the Hague Convention, to which Singapore is a signatory.[23] While Realtek provides no

---

[18] D.I. 8 at 12–14; D.I. 24 at 2–4.

[19] D.I. 28 at 4.

[20] D.I. 2, Exh. A at Exh. 1 at 9.

[21] D.I. 2, Exh. A at Exh. 1 at 10.

[22] D.I. 2, Exh. A at Exh. 1 at 8, 10.

[23] D.I. 28 at 4.

detail as to how or when it has supposedly "initiated service through the Hague Convention," any such efforts necessarily began after receiving the summonses on November 15. Four days later, on November 19, Realtek filed the instant Motion requesting that the Court authorize alternative service on Avago Sales's counsel.[24] Realtek makes no representation nor provides any evidence that the Hague Convention procedures will be inadequate to effect proper service. Instead, it opaquely argues that it has made "good faith efforts" to serve Avago Sales through Hague Convention procedures and should therefore be granted alternative service mere days after those procedures were initiated.[25]

## ARGUMENT

### I.    Realtek has not properly served Avago Sales.

The notice provision in the License Agreement in no way alters Realtek's obligation to properly serve Avago Sales. Realtek quotes a venue-selection clause in the underlying License Agreement and an unrelated notice provision therein in an attempt to conflate them and assert that Avago Sales has consented to service at an address to which notices are to be sent under the License Agreement. The notice provision, ███████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████[26] The notice provision say nothing about service of a lawsuit. The unrelated venue-selection clause in ████████████████████████████████

███████████████████████████████████████████████████████████████████.

It, too, says nothing about service. Realtek's attempt to juxtapose these provisions and assert that

---

[24] D.I. 28.

[25] D.I. 28 at 2.

[26] D.I. 2, Exh. A at Exh. 1.

it properly effected service by mailing the summons and Complaint to ███████████████ represents a misreading of the license, at best. Avago Sales never agreed to accept service of the lawsuit at that address, and any attempt at service there is ineffectual.

## II.     Realtek has not demonstrated a need for alternative service under Rule 4(f)(3).

Alternative service under Federal Rule of Civil Procedure 4(f)(3) is not warranted here. Realtek represents that it has initiated service through the proper channel—the Hague Convention. Rather than wait any reasonable time for such service to be effected, four days after receiving the summons, Realtek seeks to bypass the procedures without offering any evidence as to why such alternative service is warranted or necessary here. To the extent Realtek relies on any purported urgency in adjudicating this case, as BCI has explained in the parties' Joint Letter Pursuant to D.I. 17, resolution of this matter is not urgent; rather, any sense of urgency is the result of Realtek's dilatory actions.[27]

### A.     Realtek simply seeks to end-run Hague Convention procedures mere days after initiating them.

Although Realtek (perhaps strategically) does not indicate the day on which it initiated proper service pursuant to the Hague Convention, it could not have been sooner than November 15, 2024, when it received the summonses in this matter.[28] Without demonstrating—or even alleging—any difficulty in effecting service through the Hague Convention, four days later Realtek moved the Court to allow it to ignore the Hague Convention's procedures and serve Avago Sales through its counsel. This is improper and unwarranted.

---

[27] *See* D.I. 24 at 4–6.

[28] *See* D.I. 23.

In support of its request, Realtek cites a number of cases for the general proposition that a court *may* authorize service under Rule(f)(3) notwithstanding the existence of the Hague Convention. But none of the cases on which Realtek relies support its request under these circumstances. If anything, the cases on which Realtek relies demonstrate that alternative service is *not warranted* here—that is, Realtek has in fact initiated service under the Hague Convention and has presented no evidence that such service will be ineffectual. *See Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002) (authorizing alternative service where "the facts and circumstances of the present case necessitated the district court's intervention" because the defendant was "elusive" and evading service, and the foreign country at issue not a signatory to Hague Convention); *DUSA Pharm., Inc. v. Biofrontera Inc.*, No. CV 23-20601 (RK)(JBD), 2024 WL 4151169, at *7 (D.N.J. Sept. 11, 2024) (denying request for alternative service because plaintiffs had not waited a sufficient time for service under the Hague Convention to be effectuated); *Vanderhoef v. China Auto Logistics Inc.*, No. 218CV10174CCCSCM, 2019 WL 6337908, at *3 (D.N.J. Nov. 26, 2019) ("Here, the He Plaintiffs have established they have made efforts to serve the China Defendants personally, by having an investigator research potential addresses and by attempting to serve them at the addresses associated with them. The He Plaintiffs have actually attempted to comply with the Hague with respect to the Chinese Defendants and Defendant Barth, both to no avail."); *United States Sec. & Exch. Comm'n v. One or More Unknown Traders in Sec. of Fortress Inv. Group, LLC*, No. 2:17-CV-01287, 2018 WL 4676043, at *7 (D.N.J. Sept. 27, 2018) (holding alternative service was proper where serving through the Hague Convention would have required the SEC to "encounter undue delay" in prosecuting insider-trading case); *Bravetti v. Liu*, No. 3:12-CV-7492-MAS-TJB, 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013) (holding alternative service may be warranted by the "the particularities and

– 8 –

necessities of a given case" and authorizing such service where the Hague Convention did not

apply because the address of the person to be served was unknown); *In GLG Life Tech Corp. Sec.*

*Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (authorizing alternative service where defendant had

been concealing service address and evidence was provided that service under the Hague

Convention would take "approximately six to eight months"); *Knit With v. Knitting Fever, Inc.*,

No. CIV.A. 08-4221, 2010 WL 4977944, at *5 (E.D. Pa. Dec. 7, 2010) (authorizing service under

Rule 4(f)(3) where plaintiff had made "numerous attempts" to properly serve defendants, including

unsuccessful attempted service through the Hague Convention months earlier); *RSM Prod. Corp.*

*v. Fridman*, No. 06 CIV. 11512(DLC), 2007 WL 2295907, at *4 (S.D.N.Y. Aug. 10, 2007) ("In

this case, where plaintiffs have been unable, despite diligent efforts, to serve the defendant in the

Russian Federation according to Hague Service Convention procedures, substituted service on

Fridman through Pees accomplishes the goals of service while respecting the requirements of both

due process and Rule 4(f)(3)."); *Forum Fin. Group, LLC v. President, Fellows of Harvard Coll.*,

199 F.R.D. 22, 24 (D. Me. 2001) (granting alternative service under Rule 4(f)(3) because defendant

was evading service in Russia, including by living under an assumed named that prevented local

Russian counsel from locating him).[29]

Realtek has offered no evidence, as existed in the cases on which it relies, that alternative

service is warranted by the facts and circumstances here, and its request is improper. *See, e.g.*,

*DUSA Pharm.*, 2024 WL 4151169, at *7; *Graphic Styles/Styles Intern. LLC v. Men's Wear*

*Creations*, 99 F. Supp. 3d 519, 524 (E.D. Pa. 2015) ("Graphic Styles has not made any such

---

[29] Realtek also cites a case involving personal jurisdiction, which is not at issue here. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1010 (N.D. Cal. 2014) (denying motion to dismiss for lack of personal jurisdiction because service was proper pursuant to court's Rule4(f)(3) order).

showing of the need to resort to alternative means of service at this time. … If, ultimately, the only

workable means of effecting service is through the Hague Convention, then Plaintiff should take

that route rather than attempting, as it does here, to short circuit the rules for international service

of process. And it should do so speedily. If Hong Kong's Central Authority does not accomplish

service within six months, Graphic Styles may return to the Court to seek authority for alternative

service.").

> **B.      Even if Realtek had offered evidence that Hague Convention service would result in any considerable delay, any purported urgency for service is illusory.**

First, Realtek delayed *for several years* in bringing the current action, and thus, any

urgency regarding service has been occasioned solely by Realtek's dilatory pursuit of its claims.

The basis for Realtek's extraordinary request that this case proceed to final judgment in less than

three months is its allegation that Defendants allegedly breached an obligation to license certain

patents on RAND terms, requiring "the Court [to] immediately enjoin Defendants' enforcement

of any injunction the German courts might issue."[30] Realtek's demand, however, is quite

remarkable in that the very next paragraph states the "evidence will show that in 2014, Realtek

asked Defendants for a license to all patents essential to the 802.3 standards" and that the parties

discussed such a license for "more than two years." *Id.* So at the latest, Realtek's Motion admits

that it knew of the facts supporting its breach-of-RAND claim no later than 2016—eight years

before this suit was filed. Similarly, Realtek admits that it knew about the German litigation against

███ in April/May 2024—more than five months before filing suit.[31]

---

[30] D.I. 9 at 13.

[31] D.I. 2 ¶ 73.

– 10 –

Notably, in the Court of Chancery, where Realtek fervently wants to litigate this case, Realtek would not be entitled to expedited consideration due to its delay. *See Intrepid Investments, LLC v. Selling Source, LLC*, No. CIV.A. 8261-VCN, 2013 WL 494355, at *2 (Del. Ch. Feb. 8, 2013) ("'If parties fail to act promptly, they may find that they have lost their expectation for expedited treatment. Delay imposes unnecessary burdens on the Court and opposing parties and may impair the ability of the Court 'to adjudicate the matter fairly.' Here, Intrepid had knowledge of its claim five months ago; without any good reason, it delayed in asserting its claims; and it wants to address complex tax and accounting issues in an unnecessarily and unreasonably short period. The delay is of Intrepid's own making, and, for that reason, its motion to expedite, at this late date, should be denied." (citations and footnotes omitted)); *Brookstone Partners Acquisition XVI, LLC v. Tanus*, No. CIV.A. 7533-VCN, 2012 WL 3711410, at *2–3 (Del. Ch. Aug. 22, 2012) ("Brookstone was aware of the facts that caused it to move to expedite at least five months before October 15, 2012. … When time exigencies cannot be avoided, everyone involved must, and can, move quickly, but, when one of the parties creates the time exigency, it is not clear why everyone else should be forced to bear the burden."); *Oliver Press Partners, LLC v. Decker*, No. 1817-N, 2005 WL 3441364, at *1 (Del. Ch. Dec. 6, 2005) (denying motion for expedited treatment because the movant's "delay wasted nearly half of the time potentially available to prepare, hear and decide this case before [the requested trial date]. This extensive delay is unquestionably prejudicial to the defendants' ability to present their defense. Similarly, while this court (and counsel) can act quickly when circumstances warrant prompt action, the plaintiffs' delay in filing undoubtedly imposes additional burdens on the court and could prejudice the court's ability to adjudicate the matter fairly."); *Mark Productions, Ltd. v. Stuffit of Long Island*, No. C.A. 18982, 2002 WL 244861, at *1 (Del. Ch. Feb. 4, 2002) (holding plaintiffs failed to establish sufficient threat of

– 11 –

imminent and irreparable injury where they sought expedited consideration "more than six months" after plaintiffs had knowledge of the defendants' alleged "activity in violation of the License Agreement" at issue); *Union Pac. Corp. v. Santa Fe Pac. Corp.*, No. CIV. A. 13587, 1995 WL 54428, at \*3 (Del. Ch. Jan. 30, 1995) (holding unjustified delay in seeking expedited consideration warranted denying motion). Realtek's delay in seeking relief from the courts undermines Realtek's demand to forego the requirements of the Hague Convention in effecting service on Avago Sales.

## CONCLUSION AND PRAYER

For all of the foregoing reasons, Avago respectfully requests that the Court deny Realtek's motion for alternative service.

OF COUNSEL:

Kristopher L. Reed
  kris.reed@hklaw.com
Richard L. Wynne, Jr.
  richard.wynne@hklaw.com
Adrienne E. Dominguez
  adrienne.dominguez@hklaw.com
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214-969-1700

 */s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
Blake Rohrbacher (#4750)
Sara M. Metzler (#6509)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
rohrbacher@rlf.com
metzler@rlf.com

*Attorneys for Defendants*

Dated: November 26, 2024

– 12 –

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2024, true and correct copies of the foregoing

document were caused to be served on the following counsel of record as indicated:

> **<u>BY E-MAIL</u>**
> Steven L. Caponi
> Megan E. Hunt
> K&L GATES LLP
> 600 King Street, Suite 901
> Wilmington, DE 19801

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com

RLF1 31961952v.1