RICHARDS
LAYTON &
FINGER
125 YEARS

Kelly E. Farnan
302-651-7705
Farnan@RLF.com

November 26, 2024

**BY CM/ECF AND HAND DELIVERY**

The Honorable Gregory B. Williams
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801-3555

**REDACTED - PUBLIC VERSION**

Re: *Realtek Semiconductor Corporation v. Avago Technologies International Sales PTE. Ltd.*, et al., C.A. No. 24-1235

Dear Judge Williams:

We represent Defendants Avago Technologies International Sales Pte. Limited ("Avago Sales"), Broadcom Corp., and Broadcom Inc. (collectively, "Defendants") in this action. In its Oral Order of November 20, 2024 (D.I. 31), the Court ordered each side to file a supplemental letter brief addressing: (1) any material similarities or differences between the operative complaint in this action and the operative complaint in C.A. No. 17–1115 (the "2017 Complaint") that are relevant to the "arising under any Act of Congress relating to patents" inquiry; and (2) assuming that the Court finds that there are no such material differences, whether precedent compels granting Plaintiff Realtek Semiconductor Corp.'s motion to remand.

**1. Realtek's Complaint in this action contains numerous allegations arising under the Patent Act that were not asserted in the 2017 Complaint.**

To be sure, some of Realtek's allegations in this action are duplicative of the 2017 Complaint. But not all. And it is those differences that provide this Court with exclusive federal jurisdiction under 28 U.S.C. § 1338.

*a. Material Differences from 2017 Complaint*

In the 2017 Complaint, Realtek asserted that Avago Technologies General IP (Singapore) Pte. Limited ("Avago General IP"), a predecessor to Avago Sales, and Broadcom Corp. breached a 2015 Settlement and Patent License Agreement (the "2015 License Agreement") by asserting claims of patent infringement against LG Electronics ("LGE"), Hewlett-Packard ("HP"), and Toshiba, which Realtek asserted were Realtek customers. *See* 2017 Complaint ¶¶ 22–27, 32, 39–40, Count I. Realtek also asserted that Defendants' actions in asserting its patents against alleged Realtek customers constituted tortious interferences with contract and business relations and breached an implied covenant of good faith and fair dealing. *See* 2017 Complaint Counts II and III, ¶¶ 43–46, 49–51. Finally, Realtek sought a declaration that "all Realtek integrated circuit

The Honorable Gregory B. Williams
Page **2** of **7**

products . . . are licensed" to the patents Defendants asserted against LGE, HP, and Toshiba. *See* 2017 Complaint, Count IV, ¶¶ 54–55.

The 2017 Complaint was solely focused on whether Realtek's products were licensed to patents owned by Broadcom Corp. before the effective date of the 2015 License Agreement, even though patents of companies that are ███████████████████████████████████████████████
███████████████████████████████████████████████████████████████. The allegations in Realtek's 2017 Complaint were so frivolous that the defendants filed a Rule 11 motion against Realtek. As far as Realtek reasserts the same claims here—regardless of whether Avago Sales has now sued a different alleged customer on different patents that were also excluded from the 2015 License Agreement—those claims are still frivolous (in addition to being time-barred).

It is not Realtek's repeated allegations from 2017, however, that give rise to federal subject-matter jurisdiction over this case. In the current Complaint, Realtek has invoked federal-court jurisdiction by asserting claims that arise under the patent laws of the United States, separate and apart from any alleged breach of the 2015 License Agreement. In particular, Realtek asserts two categories of claims that arise under the U.S. patent laws: (1) it asserts that Defendants have infringed certain Realtek patents, and it seeks a declaration of such infringement; and (2) it seeks declarations that Defendants have refused to license standard-essential patents on reasonable and non-discriminatory ("RAND") terms.

Realtek did not assert either of those classes of claims in the 2017 Complaint. Instead, the 2017 Complaint was related solely to whether Realtek had a license to Broadcom Corp. patents that had been asserted against Realtek products. In that case, Realtek made no allegations and sought no relief relating to any alleged infringement of *Realtek* patents by any Broadcom products. Likewise, the 2017 Complaint has no discussion of, and asserts no claims based on, Defendants' alleged failure to license standard-essential patents on RAND terms.

    **b.**    ***Realtek's new claims arise under the U.S. patent laws.***

In *Gunn v. Minton*, 568 U.S. 251 (2013), the Supreme Court discussed the two ways that claims may "arise under" federal law. First, "a case arises under federal law when federal law creates the cause of action asserted." 568 U.S. at 257. Second, federal jurisdiction will lie where a purported state-law claim is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258. Here, Realtek's Complaint asserts claims falling into each category.

    *(1)*    *Realtek seeks a ruling that Defendants infringe Realtek's patents.*

Realtek's Complaint in this action includes numerous allegations that Defendants products infringe Realtek's patents. For example, Realtek's Complaint alleges:

93.    On information and belief, Defendants use not only the patent technology in the [Realtek] [7,935, 245], [8,006,218], and [9,590,582] patents, but also make, use, and sell a wide range of products that use Realtek's technology protected by other Realtek patents.

Complaint ¶ 93; *see also id.* ¶¶ 92, 97, 175. As part of its Count II, Realtek's Complaint goes further, and asks the Court for a declaration that Defendants' products infringe Realtek's patents:

> [I]f the Court concludes that Realtek is not licensed to Broadcom Corp.'s patents, then the Court **should declare that Avago Sales cannot make, use, sell, or have made any product from Broadcom Corp, BCI, or any third party without infringing Realtek's patents**.

Complaint ¶ 180 (emphasis added). This cause of action—a declaration of infringement—is created by the Patent Act. *See* 35 U.S.C. § 271(a) ("Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."). In fact, the Federal Circuit has expressly stated that "actions seeking declaration of infringement" "arise[] under the patent law" for purposes of federal jurisdiction. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 943 (Fed. Cir. 1993) (citing *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 763–64 (Fed. Cir. 1990)).

Realtek's infringement assertions extend to an unspecified number of Realtek patents, but at a minimum, they include at least the three U.S. patents (the Realtek '245, '218, and '582 patents) that Realtek previously asserted covered certain of Defendants' products. *See* Complaint ¶¶ 91–93. Because Realtek's request for a declaration of infringement is created by the Patent Act, it arises under the patent laws of the United States, and this Court has jurisdiction. *Genentech*, 998 F.2d at 943. The allegations contained in ¶¶ 91-93, 97, 175, and 180 of the Complaint before this Court are not analogous to any allegations in the 2017 Complaint.

(2)     *Realtek asserts claims relating to Defendants' alleged standard-essential patents.*

Realtek's request for a declaration that Defendants infringe Realtek's patents is, in and of itself, sufficient to confer federal jurisdiction. Nevertheless, Counts III and V of the Complaint also arise under the U.S. patent laws because they, too, satisfy the *Gunn* test. Specifically, these Counts, which relate to alleged failure to license standard-essential patents on RAND terms, involve federal issues that are: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. The 2017 Complaint does not contain any allegations that are equivalent or similar to Counts III and V.

It is settled law that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 22 (1983). Thus, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Despite Realtek's attempts to artfully plead and recast its RAND claims in its remand briefing, this is one of those cases that falls under "the commonplace notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id.*

The Southern District of New York has addressed the removability of purported state-law claims in the context of standard-essential patents, similar to the case here. In *MPEG LA, LLC v. Toshiba*

*America Information Systems, Inc.*, No. 15–CV–3997 (JMF), 2015 WL 6685523 (S.D.N.Y. Oct. 29, 2015), MPEG—a licensing administrator for pools of standard-essential patents—sued Toshiba in state court for unjust enrichment, alleging that Toshiba, which was a member of one of MPEG's patent pools, had "'underreported and underpaid . . . millions in royalties' for television units manufactured and sold in Mexico." 2015 WL 6685523, at *2. Toshiba removed the case, asserting that MPEG's unjust-enrichment claim arose under patent law. *Id.*

The *MPEG* court analyzed its jurisdiction by applying the *Gunn* factors, and determined that they supported federal jurisdiction. *Id.* at *3. Critical to the court's analysis was that MPEG was required to prove that Toshiba "used (and therefore infringed) a patent in the pool." *Id.* This fact distinguished "MPEG's claim from breach of contract cases found not to raise federal patent questions because the claims turned on interpretation or application of a term in the contract, and infringement or non-infringement was not the determining factor." *Id.* at *4.

Moreover, in the context of allegedly standard-essential patents, a party may prove infringement by comparing the patent claims to all implementations of the standard. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) ("If a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement. . . . [I]f an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product."). This is the same analysis that Realtek must apply to establish that Defendants' patents are standard-essential. *See Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1385 (Fed. Cir. 2020) (holding that determining essentiality is "akin to an infringement analysis" requiring determination of whether the patent "claim elements read onto mandatory portions of a standard that standard-compliant devices must incorporate."). Thus, applying *MPEG*, Realtek's claims based on alleged standards-compliance arise under patent law.

Defendants' Answering Brief in Opposition to Realtek's Motion to Remand further demonstrates how Realtek's standard-essential-patent-based claims meet the four *Gunn* requirements. *See* D.I. 19, at 8–12. Realtek's Reply attempts to obfuscate the Complaint's allegations by repeatedly making the same inaccurate assertion that Realtek's RAND claims relate only to two European patents rather than Defendants' U.S. patents. *See, e.g.*, (D.I. 32) Reply on Motion to Remand, at 1 ("the only patents at issue are European patents"); *id.* at 4 ("the only essentiality issue is whether the two European patents . . . are essential"), *id.* at 5 ("Even if the essentiality of the two European patents . . .").

Tellingly, while Realtek repeatedly makes these and similar statements in its attempt to avoid this Court's jurisdiction, it has not amended its Complaint to limit Counts III and V to the two European patents asserted against ▮▮▮▮ Those Counts have passing references to the ▮▮▮▮ litigation, but the requested relief applies to ***all*** of Defendants' standard-essential patents. *See, e.g.*, Complaint ¶ 182 ("Avago Sales . . . contractually committed itself to license all patents essential to the 802.3 standards . . . on RAND terms . . . ."); *id.* ¶ 183 ("Broadcom Corp. and Avago Sales irrevocably agreed and are obligated to offer a license to their declared essential patents on RAND terms"); *id.* ¶ 185 ("There is a genuine issue between the parties as to whether Defendants have complied with their obligation to make their 802.3 essential patent available to license on RAND terms"); *id.* ¶ 198 ("Realtek has consistently asserted . . . that its products that implement the 802.3 standards

are licensed to Broadcom Corp.'s essential patents"); *id.* ¶ 203 ("Realtek is therefore entitled to a declaratory judgment that it has an implied license to the Broadcom Corp. 802.3 essential patents via equitable estoppel"). Realtek further protests that the two European patents place only a single 802.3 standard in issue. (D.I. 9) Opening Brief in Support of Motion to Remand, at 3 ("Defendants allege that the . . . European patents are essential to one of the 802.3 standards . . ..") But the Complaint contains 20 paragraphs spanning over nine pages—with 20 related exhibits—detailing the multitude of 802.3 standards for which it contends Defendants owe a RAND obligation. Complaint at ¶¶ 118-137, Exs. 2-21. Realtek's failure to amend serves to underscore that Realtek is attempting to artfully plead to avoid federal jurisdiction.

Realtek's continuing attempt to obtain worldwide relief relating to Defendants' standard-essential patents, including United States patents, while now arguing that only European patents are at issue presents the type of issue that would benefit from uniform federal jurisdiction under Gunn's third and fourth criteria. While those criteria were not met in the "backward-looking nature of [the] legal malpractice claim" at issue in *Gunn* (586 U.S. at 261), if the Court concludes that Realtek can obtain a worldwide ruling about standard-essential patents while avoiding federal jurisdiction by claiming that no U.S. patents are in dispute, it will provide a roadmap for the type of artful pleading that the Supreme Court has held does not defeat federal jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 22.

In sum, Realtek is incorrect in its assertions that this case is just like the 2017 case and therefore must be remanded. Realtek prepared and filed its Complaint in the Court of Chancery and included within that Complaint two classes of claims that were not present in the 2017 Complaint. Those new claims confer federal jurisdiction, and the Court should deny Realtek's Motion to Remand.

**2.     The differences between the Complaint in this action and the 2017 Complaint are material.**

The Court's second question asks that the parties "assum[e] that the Court finds there are no material differences between the operative complaint in this case and" the 2017 Complaint. D.I. 31. But as discussed above, there are significant differences between the cases, including Realtek's request for a declaration that Defendants infringe Realtek patents and Counts III and V, which relate to alleged standard-essential patents. Because these differences are central to the relief requested by Realtek in this case, the differences are necessarily material.

Nevertheless, if the Court were to determine that Realtek's claims in this action were limited to those asserted in the 2017 Complaint, namely those claims involving Realtek's assertion that it is licensed to patents, applications, and patent families owned by Broadcom Corp. as of the effective date of the 2015 License Agreement, then Defendants agree that federal jurisdiction would not be present. For the reasons stated above and in Defendants' Answering Brief in Opposition to Realtek's Motion to Remand, however, Realtek's claims are not so limited.

Respectfully,

*/s/ Kelly E. Farnan*

Kelly E. Farnan (#4395)

cc: All Counsel of Record (By e-mail)

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2024, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY E-MAIL**
Steven L. Caponi
Megan E. Hunt
K&L GATES LLP
600 King Street, Suite 901
Wilmington, DE 19801

                                                  */s/ Kelly E. Farnan*
                                                  Kelly E. Farnan (#4395)
                                                  farnan@rlf.com